**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

**DEIRDRE MACNAMARA, et al.,**

**Plaintiffs,**

**-against-** **04 CV 9216 (KMK) (JCF)**

**THE CITY OF NEW YORK, et al.,**

**Defendants.**

---------------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 72 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Special Federal Litigation Division
Attorney for Defendants
100 Church Street, Third Floor
New York, New York 10007
212-676-1395

Of Counsel
Curt P. Beck (CB 1766)

April 17, 2007

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in opposition to the motion of Plaintiffs Deirdre MacNamara et al. ("Plaintiffs") for relief pursuant to Federal Rule of Civil Procedure 72 ("Plaintiffs' Motion"). Defendants rely upon and incorporate all their prior submissions to Judge Francis in the proceedings below. Defendants respectfully request that the Court deny Plaintiff's Motion and affirm Magistrate James C. Francis IV's March 14, 2007 Order (the "March 14th Order" or "Opinion"), which denied Plaintiffs' attempt to undermine Defendants' attorney-client privilege based on Plaintiffs' completely unsupported allegations that the entire NYPD Legal Bureau conspired with literally hundreds and hundreds of police officers to commit crimes and frauds. Plaintiffs have failed to satisfy the standard of review for Rule 72 motions because the March 14th Order is neither clearly erroneous nor contrary to law. To the contrary, the March 14th Order is entirely consistent with all case law in the Second Circuit as well as in all other Circuits. Plaintiffs fail to cite a single case in which a court found the crime-fraud exception to the attorney-client privilege applied on facts such as those before this Court and Defendants are aware of none. In addition, as Judge Francis properly determined, Plaintiffs provided "no evidence" for their allegations of crime or fraud. Accordingly, Plaintiffs' Motion should be denied.

## PROCEDURAL AND FACTUAL HISTORY

In this proposed class action, Plaintiffs alleges, *inter alia*, that they were falsely arrested during the Republican National Convention (the "RNC") in New York City. Plaintiffs also allege that they were subjected to false imprisonment, excessive detention, and unreasonable conditions of confinement at the RNC Post Arrest Staging Site ("PASS") located at Pier 57 in New York City. Plaintiffs seek class action status, substantial compensatory money damages for their alleged injuries, punitive damages, declaratory and injunctive relief.

During over two years of discovery, Defendants have produced to Plaintiffs many tens of thousands of pages of documents, hundreds of hours of videotape, thousands of still pictures, and produced dozens of witnesses for depositions. As part of Defendants' document production, Defendants listed certain documents on logs detailing the basis for the privileges Defendants were asserting to withhold certain documents. March 14th Order at 15-17. Defendants also instructed certain police officers not to answer specific questions on the grounds that doing so would violate the attorney-client privilege.

On October 30, 2006, Plaintiffs[1] filed a letter motion, challenging Defendants' right to assert the attorney-client privilege with respect to communications containing legal advice from NYPD attorneys in the NYPD Legal Bureau to NYPD personnel, claiming that the Legal Bureau of the NYPD was engaged in "systematic crimes and frauds" such that the crime-fraud exception to the attorney-client privilege applied. See March 14th Order at 21 (citations omitted).

On January 9, 2007 Defendants responded, submitting, *inter alia*, the Declaration of Thomas P. Doepfner (hereinafter, the "Doepfner Declaration" or "Doepfner Decl. at ¶ __"). Mr. Doepfner is a NYPD Assistant Deputy Commissioner, a lawyer, and the Commanding Officer of the NYPD Legal Bureau. (Doepfner Decl. at ¶ 1). (Contained in Declaration of Rachel Kleinman (hereinafter "Kleinman Decl. at __") at Ex. B.

As the Doepfner Declaration sets forth, the NYPD Legal Bureau is the "NYPD's 'in-house' counsel" whose job is to provide legal advice to NYPD personnel. That was the role

---

1 The motion was originally filed by counsel for the MacNamara plaintiffs. Subsequently Mike Spiegel, Esq., counsel for plaintiffs in several other, non-MacNamara RNC actions , purported to "join in" Plaintiffs' Motion by filing additional briefs

the Legal Bureau performed during the RNC with respect to the documents being challenged by Plaintiffs. Doepfner Decl. at ¶ 2. The Doepfner Declaration clearly demonstrated all the elements for maintenance of Defendants' attorney-client privilege. Id. at ¶¶ 4-6. After doing so, the Doepfner Declaration addressed Plaintiffs' most outrageous claim as follows: "I am also informed that plaintiffs claim that Legal Bureau attorneys encouraged arresting officers to falsify paperwork at Pier 57. *That claim is patently false and without factual basis.*" Id. at ¶ 7 (emphasis added).

The Doepfner Declaration also details the Legal Bureau's role during the RNC, including the facts that Legal Bureau attorneys "screened out defective arrests with an eye to speeding up, not slowing down arrest processing" and that the Legal Bureau's "goal was to help prevent persons from being in custody if the facts did not warrant their arrests," and when the Legal Bureau determined that "a person had been taken into custody without probable cause" that person would be "released from custody immediately." Id. at ¶ 10. Finally, the Doepfner Declaration made clear that "[i]t is absurd to suggest that members of my staff would have advised [NYPD] officers to state or document in arrest paperwork that they had observed facts that did not occur . . . . For plaintiffs to allege, without factual basis, that members of [the Legal Bureau] engaged in such clearly unethical and possibly criminal behavior is outrageous. Such conduct simply did not occur." Id.

On January 30, 2007, counsel for the Plaintiffs in MacNamara filed a Reply and, Mr. Spiegel, once again, filed a separate Reply, which again purported to "join in" Plaintiffs' Motion, but which actually requested relief that had never before been raised with, or even sought from, Defendants. In support of Plaintiffs' Motion's most outrageous allegation, Mr. Spiegel submitted a veritable sea of documents the relevance of most of which Mr. Spiegel never

bothered to explain. Apparently, Mr. Spiegel included these documents in support of his "argument" that because the narrative portion of the documents were similar, they "must have been" perjured.

Because of Mr. Spiegel's submission of new materials, new allegations and new requests for relief, Defendants were permitted to file a sur-reply. On February 11, 2007 Defendants submitted their sur-reply letter addressing Mr. Spiegel's January 30, 2007 "reply" and his never-before-raised requests for relief. By that time the motion was finally fully submitted and Defendants had forwarded the contested documents to Judge Francis for *in camera* inspection.

**The March 14th Order**

On March 14, 2007 Judge Francis issued his ruling on Plaintiffs' Motion. In that ruling, Judge Francis, after having reviewed the documents at issue *in camera,* explicitly ruled that the documents were attorney-client privileged, stating:

> Having reviewed the disputed documents *in camera*, I find they consist of communications between the Legal Bureau, the Legal Subcommittee, and various NYPD officials regarding policies and procedures being considered for the RNC, the legal implications of these policies, and possible alternatives . . . so that the Legal Bureau could render legal advice regarding these policies, *and nothing in the documents is inconsistent with . . . the purpose of seeking or rendering legal advice. . . .*

Opinion at 20 (emphasis added).

Judge Francis then addressed Plaintiffs second claim that "these documents are not protected by the attorney-client privilege because they fall within the crime-fraud exception, which removes the privilege from those attorney-client communications that are 'related to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'"

Opinion at 20-21 (citing United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (quoting In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1994)). After quoting the appropriate legal standard from In re Omnicom Group Inc. Securities Litig., 233 F.R.D. 400, 404 (S.D.N.Y. 2006) (quoting Jacobs, 117 F.3d at 87), Judge Francis analyzed Plaintiffs' second contention in detail:

> The plaintiffs claim that the documents at issue contain communication made in furtherance of a scheme in which Legal Bureau attorneys "aid[ed] in *the systematic falsification* of affidavits by arresting officers" when they met with them at Pier 57. (Moore 1/30/7 Letter at 8). The plaintiffs concede that "[o]n the face of it, assuming that the articulated probable cause is a true account of the officers observations, there is nothing improper about Legal Bureau/officer consultation . . . ."

Opinion at 21 (emphasis added).

Judge Francis then went out of his way to substantively[2] address Plaintiffs' most far-fetched arguments, correctly noting that *even if one assumed that* some narrative accounts were not accurate, "*plaintiffs point to no evidence to support their claim* that these 'false narratives were created at Legal Bureau direction'" aside from the fact that they were created *after* meeting with lawyers from the NYPD Legal Bureau. Opinion at 22 (emphasis added) (citing Mr. Spiegel's January 30, 2007 Letter at 7). The Court held that that fact alone was insufficient to support an inference of attorney involvement in any crime or fraud, stating:

> plaintiffs have not articulated probable cause to believe that the [NYPD] Legal Bureau encouraged

---

[2] Defendants in their February 11, 2007 sur-reply to Mr. Spiegel's January 30, 2007 "reply" provided Judge Francis with several alternative procedural grounds for the Court to "disregard or reject" Plaintiffs' arguments. Among those reasons were that (i) Mr. Spiegel had violated Fed. R. Civ. P. 37(a)(2)(A) by seeking relief from the Court that had never been requested from or raised with Defendants, (ii) sought relief that had never been sought in Plaintiffs' [original] Motion, and (iii) raised new arguments for the first time in a "reply" brief.

> officers to perjure themselves when filling out the OLBS Worksheets. Furthermore, having reviewed the documents, I find that they provide *no support whatsoever for the plaintiffs claim that Legal Bureau attorneys engaged in fraudulent conduct during the RNC.* The crime-fraud exception is inapplicable, and the City need not disclose the documents.

Opinion at 22 (emphasis supplied).

Thus, despite all the evidence submitted to Judge Francis by Defendants, despite the total absence of *any* evidence submitted by Plaintiffs to support their baseless claims, and despite Judge Francis' clear and correct application of the law, Plaintiffs move for Rule 72 relief with respect to Judge Francis' March 14th Order. For the reasons set forth herein, Defendants respectfully request that the Court overrule Plaintiffs' objections to the March 14th Order and adopt the Order as an Order of the Court.

## ARGUMENT

### THE COURT SHOULD AFFIRM THE MARCH 14TH ORDER BECAUSE IT IS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW

### A. The Standard of Review For Rule 72 Motions

This Court should affirm Magistrate Francis' March 14th Order because it is neither clearly erroneous nor contrary to law. Rule 72(a) of the Federal Rules of Civil Procedure, and the Federal Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A), establish the standard of review of a Magistrate's discovery order. As to non-dispositive matters such as the March 14th Order, a district court shall reverse a Magistrate Judge's order only where it has been shown that the order is clearly erroneous or contrary to law. See, e.g., Fed. R. Civ. P. 72(a); 28 U.S.C. §§ 636(b)(1)(A); Lyondell-Citgo Ref., LP v. Petroles De Venezuela, S.A., 02-CV-0795, 2005 U.S. Dist. LEXIS 3635, *3-5 (S.D.N.Y. Mar. 9, 2005).

An order is contrary to law when it fails to apply or misapplies relevant statues, case law, or rules of procedure. Tribune Co. v. Purcigliotti, 93-CV-7222, 1998 U.S. Dist. LEXIS 5155, *12 (S.D.N.Y 1998). The Supreme Court has held that a finding is "clearly erroneous" only if the reviewing court is "left with the definite and firm conviction that a mistake has committed." See Lyondell-Citgo Ref. 02-CV-0795, 2005 U.S. Dist. LEXIS 3635, *4 (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001) (internal citation omitted). Pursuant to this highly deferential standard of review, a Magistrate Judge is afforded broad discretion in resolving discovery disputes and reversal is appropriate only if his or her discretion is abused. See id. In the instant matter, Plaintiffs have not established that the March 14th Order is inconsistent with any legal authority in the Second Circuit or evidence before Magistrate Francis.

**B. The March 14th Order Correctly Held That Plaintiffs Failed To Establish The Prerequisites Of The Crime Fraud Exception**

The crime-fraud exception is a narrow exception to the attorney-client privilege which cannot be invoked, as Plaintiffs did, based on sheer innuendo and speculation. Rather, a party seeking to overcome the attorney-client privilege on this basis must do so "through a showing of probable cause establishing a belief that a crime or fraud had been committed and that the communications were in furtherance thereof." See In re John Doe Corp., 675 F.2d 482, 491 (2d Cir. 1982); see also Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 2006 U.S. Dist. LEXIS 24519, *30-*31 (S.D.N.Y. May 3, 2006) (mere allegations of fraud would not satisfy the requirements of the crime-fraud exception); In Re Omnicom Group Inc., Securities Litig., 2006 U.S. Dist. LEXIS 7617, *29 (S.D.N.Y. Feb. 28, 2006) (absent a record of key facts indicating that defendants engaged in fraudulent conduct, plaintiffs could not demonstrate probable cause sufficient to invoke the crime-fraud exception).

In the instant case, Plaintiffs' offered absolutely no *evidence* that any crime or fraud even occurred, let alone that the communications at issue were *in furtherance* thereof. Indeed, plaintiffs' original moving papers conceded this fact. See Moving Letter of Beldock Levine & Hoffman, dated October 30, 2006 at p. 12 (admitting that Plaintiffs "***can only surmise*** that Bureau attorneys were involved in what appears to be the systematic falsification" of Criminal Court affidavits) (emphasis added). Subsequently, Plaintiffs attempted to remedy this fatal defect by attaching masses of irrelevant new material (e.g., snippets of deposition testimony taken out of context, mischaracterizations of a Court ruling, and volumes of OLBSes and criminal court complaints). See Spiegel Letter dated January 30, 2007 (and Exhibits thereto). As Judge Francis noted, despite the reams of paper Plaintiffs wasted on their Motion, Plaintiffs failed to set forth a single *fact* that supported their allegation that a crime or fraud occurred. See Opinion at 21-22 (Judge Francis finding "plaintiffs have not articulated probable cause to believe the Legal Bureau encouraged officers to perjure themselves" and that *after reviewing the challenged documents themselves* finding "that they provide no support whatsoever" for Plaintiffs' claims). Just as significantly, Plaintiffs failed to cite a single case to Judge Francis from any jurisdiction in the United States where a court has held the crime-fraud exception applied to pierce the government's assertion of attorney-client privilege. Nor have they done so on this appeal And Defendants are aware of none.

The only case that Defendants' counsel could find that was *remotely* analogous was Jink-Umstead v. England, 233 F.R.D. 49 (D.C. Cir. 2006). In that case, a plaintiff actually alleged that government lawyers with the United States Navy engaged in misconduct sufficient to trigger the crime-fraud exception. The court dismissed that argument because plaintiff had not presented evidence that the Navy consulted with its attorneys with the intent to commit a crime

or fraud -- "all she has shown, if believed by a trier of fact, is that the Navy made statements in discovery that were incorrect." Id. at 51. Not surprisingly, given the outrageousness of the claim in Jink-Umstead, the court then went out of its way (just as Judge Francis did in this case) to note that "[t]here is absolutely nothing in the documents . . . to support the application of the crime-fraud exception." Id.[3]

Judge Francis also correctly found that the Plaintiffs provided absolutely *no evidence* sufficient to invoke the crime-fraud exception. Indeed, Plaintiffs conceded that there was nothing wrong with the Legal Bureau doing precisely what was done -- "insur[ing] . . . that probable cause was articulated in the arrest paperwork." Spiegel Letter, dated January 30, 2007 at 3 (quoting Chief Colgan's deposition testimony as to the role of Legal Bureau at Pier 57). The totality of evidence clearly demonstrated that was *all* that was done. Moreover, Plaintiffs have had over two years, tens of thousands of documents, and countless depositions in which to adduce evidence to the effect that police officers lied on their paperwork. Despite these opportunities, as Judge Francis correctly found, Plaintiffs provided the Court with absolutely "no evidence" to support their claims. Opinion at 22. The simple reason Plaintiffs failed to present any such evidence to Judge Francis is because the NYPD Legal Bureau did not engage in criminal or fraudulent activity and thus none exists.

Plaintiffs' argument, such as it was, consisted solely of their unsupported *ipse dixit* that because statements in RNC arrest paperwork were similar "they must have been" the

---

3 Because Judge Francis determined, after *in camera* review, that the challenged documents were attorney-client privileged communications and that Plaintiffs had failed to provide any evidence that a crime or fraud had occurred, let alone that the NYPD Legal Bureau had provided advice in furtherance thereof, Plaintiffs' request that witnesses testify regarding what legal advice NYPD Legal Bureau's attorneys provided was also, properly, denied. March 14th Order at 22 fn. 10.

product of the Legal Bureau's subornation of police officer perjury. Plaintiffs' argument ignored the undisputed facts that several hundreds of people were arrested all at the same time, in the same place, doing the same thing, and were generally charged with identical offenses. Under such circumstances, Plaintiffs' conclusion that the arrest paperwork was perjurious because it was *consistent*, was not only novel, but also nonsensical.

As both the Doepfner Declaration and Defendants' opposition papers demonstrated, it is standard practice for police officers to meet with assistant district attorneys who assist them in drawing up the charging information. The resulting charging instruments are naturally quite similar or "virtually identical" over a class of crimes in that in every case the elements of a crime or probable cause must be set forth. Accordingly, these documents are generally fairly cookie-cutter. Indeed, in that respect they are much like the complaints filed by Plaintiffs' counsel in the RNC litigation. Similarly, the fact that some witnesses cannot remember or actually mis-remember certain facts was not, as Plaintiffs posited to Judge Francis,[4] evidence of a crime or fraud, but rather, merely that they are human.

Thus, while Defendants recognize that "courts must be vigilant to prevent a client's attempt to misuse attorneys to perpetrate a crime," they are also mindful that "the [attorney-client] privilege is not to be lightly cast aside based on speculative allegations" such as the Plaintiffs' Motion raised. Danisco A/S v. Novozymes A/S, 427 F. Supp. 2d 443, 445 (S.D.N.Y. April 18, 2006).

---

[4] See also Plaintiffs' Rule 72 Objections at 16 (where Plaintiffs again appear to conclude that because some officers heard dispersal orders and some did not, that one group or another "must be" committing perjury.)

As the above makes clear, Judge Francis' March 14th Order is completely consistent with well-established case law in the Second Circuit. Plaintiffs failed to cite any authority to Judge Francis in which a court had found as Plaintiffs urged. Plaintiffs also failed to distinguish the authorities Defendants cited to Judge Francis. Plainitffs' application to this Court is similarly devoid of any authority or facts to support their objections to Judge Francis IV's March 14th Order. Because Magistrate Francis' March 14th Order is consistent with the well established authority in this district and the Second Circuit, Plaintiff's Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion and enter an Order: (1) affirming Magistrate Francis' March 14th Order; (2) denying Plaintiffs' request to certify this issue to the Second Circuit Court of Appeals, and (3) awarding Defendants such other relief as the Court deems just and right.

Dated: New York, New York
April 17, 2007

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Third Floor
New York, New York 10007
212-676-1396

By: ______________________
Curt P. Beck (CB 1766)
Special Assistant Corporation Counsel
Special Federal Litigation Division