DEIRDRE MACNAMARA, *et al.*,

                Plaintiffs,

-v-

THE CITY OF NEW YORK, *et al.*,

                Defendants.

No. 04 Civ. 9216 (RJS) (JCF)
ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs in the above-entitled action seek, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to modify an order issued by the Honorable James C. Francis, Magistrate Judge, granting in part and denying in part plaintiffs' motion to compel the production of certain documents and testimony on the basis of the crime-fraud exception to the attorney-client privilege. For the following reasons, the Court denies plaintiffs' request.

## I. Background

    These cases are part of a larger group of cases relating to protests surrounding the 2004 Republican National Convention (the "RNC"), which have been consolidated before this Court and referred to Magistrate Judge Francis for general pretrial purposes.[1] Plaintiffs in this action were arrested during the RNC. The Court presumes the parties' familiarity with the facts and procedural history of this action, including those facts specifically related to the instant motions, as set forth in Magistrate Judge Francis' March 14, 2007 order (the "March 14 Order"). Below, the Court briefly recites only those facts necessary to resolution of the instant objections.

---

[1] The RNC cases, including the instant action, were previously assigned to the Honorable Kenneth M. Karas, District Judge. This action, along with the other RNC cases, was reassigned to the undersigned on October 2, 2007.

In the March 14 Order, Magistrate Judge Francis rejected plaintiffs' requests, *inter alia*, (1) to compel production of certain documents from defendants (the "Challenged Documents")[2] and (2) for an order "requiring witnesses to testify about communications" between members of the New York Police Department's ("NYPD") Legal Bureau and NYPD Officers at Pier 57.[3] The NYPD Legal Bureau serves as the NYPD's "in-house" counsel, advising the Commissioner and members of the NYPD on legal issues affecting the Department. (See Declaration of Assistant Deputy Commissioner Thomas P. Deopfner ("Deopfner Decl.") ¶ 2.) (March 14 Order at 22 & n.10.)

The Challenged Documents include the following items: (1) a September 3, 2003, memorandum from Deputy Chief John Gerrish to Assistant Chief Thomas Dale, and others, summarizing discussions regarding legal issues identified during a meeting of the NYPD Legal Subcommittee;[4] (2) an undated memorandum entitled "RNC — Some Legal Issues"; (3) a November 14, 2003 report prepared by the Legal Subcommittee for another NYPD planning group, the Operation Support Subcommittee; (4) an October 1, 2003 memorandum from the Deputy Commissioner of Legal Matters to the Commissioner entitled "Legal Issues Arising from

---

[2] The Challenged Documents at issue include only those documents withheld from plaintiffs in their entirety. (*See* March 14 Order at 15-16.) With regard to the two documents that were produced to plaintiffs in redacted form, Magistrate Judge Francis found that the redacted portions of those documents were, in fact, privileged. (*See id.* at 15.) Plaintiffs do not object to that portion of the March 14 Order.

[3] Pier 57 served as the arrest processing site for individuals detained by the NYPD during the RNC. (Pls.' Mem. at 3-4.)

[4] The NYPD Legal Subcommittee consisted of representatives from the NYPD Legal Bureau and other departments within the NYPD, and was chaired by the Commanding Officer of the Legal Bureau. (*See* Doepfner Decl. ¶¶ 1-4.) The Subcommittee met "frequently" during the months preceding the RNC in order to discuss "legal issues relating to [the] NYPD's planned policing of the RNC," and was charged with evaluating the "legality of proposed NYPD policies and procedures for the RNC," preparing legal training materials, and advising other committees and subcommittees preparing for the RNC on various legal issues. (*Id.* ¶¶ 3, 4; March 14 Order at 3-4.)

the RNC"; and (5) a November 13, 2003 memorandum from the Commanding Officer of the Criminal Justice Bureau ("CJB") to the Commanding Officer of the Legal Bureau entitled "Arrest Processing During the 2004 RNC."[5]

In the March 14 Order, Magistrate Judge Francis ruled that the Challenged Documents were subject to the attorney-client privilege and, therefore, not discoverable. (*See id.* at 15-22.) Furthermore, having reviewed the Challenged Documents *in camera*, Magistrate Judge Francis rejected plaintiffs' assertion that the privilege that attached to the Challenged Documents should be pierced on the basis of the "crime-fraud" exception. (*Id.* at 20-22.) Specifically, Magistrate Judge Francis found that plaintiffs had proffered "no evidence" establishing probable cause to believe that a fraud or crime had been committed by Legal Bureau attorneys. (*Id.* at 21-22.) Finally, because he found that "plaintiffs [had] not shown probable cause to believe that the Legal Bureau [had] engaged in fraud" during the RNC, Magistrate Judge Francis rejected plaintiffs' request for an order requiring witnesses to testify as to communications between Legal Bureau attorneys and arresting officers. (*Id.* at n.22.)

On March 28, 2007, plaintiffs filed an objection to the March 14 Order with Judge Karas. (*See* Pls.' Mem. at 2-3.) By order dated September 24, 2007, Judge Karas remanded the case to Magistrate Judge Francis for reconsideration of the March 14 Order in light of the deposition testimony of NYPD Sergeant Timothy Cai ("Cai"). (*See* Sept. 24 Order at 1-2.) With regard to Cai's testimony, Judge Karas noted that

---

[5] Defendants represent that, subsequent to Magistrate Judge Francis' March 14 Order, one of the Challenged Documents — a September 8, 2003 report prepared by Lieutenant Andrew Savino — was voluntarily disclosed to plaintiffs. (*See* Defs.' Jan. 10, 2008 Enclosure Ltr.) Thus, because this Court has no basis to doubt defendants' representation, the September 8, 2003 report is not included within the Challenged Documents addressed in this decision.

3

one reasonable interpretation of Officer Cai's testimony is that he included false information in the narrative section of his booking report because he was instructed to do so by a Lieutenant in the NYPD Legal Bureau.

(*Id.*)

Subsequently, by order dated October 30, 2007 ("October 30 Order"), Magistrate Judge Francis denied plaintiffs' motion for reconsideration on the ground that, although Cai's testimony "can be construed as indicating that Cai recorded events that he did not witness as if he had personally observed them" — and, thus, provided "some support" for plaintiffs' assertion that a fraud had occurred — his testimony "[did] nothing to buttress [] plaintiffs' argument" that the Challenged Documents were used in furtherance of a crime or fraud. (Oct. 30 Order at 3-4.) Magistrate Judge Francis likewise rejected plaintiffs' assertion that the crime-fraud exception applied to "'deposition testimony regarding the role of the Legal Bureau in arrest processing during the RNC.'" (*Id.* (quoting Pls.' Oct. 3, 2007 Ltr. at 5).) Specifically, Magistrate Judge Francis found that, notwithstanding Cai's testimony, plaintiffs had failed to present any evidence "link[ing] particular communications [between Legal Bureau attorneys and arresting officers] with specific examples of false reporting by arresting officers." (*Id.*)

On November 8, 2007, plaintiffs filed objections with this Court seeking to set aside the portion of the March 14 and October 30 Orders that "den[ied] the applicability of the crime-fraud exception to the [Challenged Documents] and to deposition testimony regarding the role of the Legal Bureau in arrest processing during the RNC." (Pls.' Dec. 13, 2007 Ltr. at 3.) Plaintiffs' objections focus upon a single purportedly erroneous ruling by Magistrate Judge Francis — namely, that plaintiffs have failed to establish probable cause to believe that the

4

Challenged Documents and/or the communications between Legal Bureau representatives and arresting officers at Pier 57 were made or used in furtherance of a fraud.[6] (*See, e.g.*, *id.* at 2-3; Pls.' Mem. at 6 & n.2; Pls.' Reply Mem. at 3.)

## II. Applicable Law

### A. Standard of Review

Rule 72(a) and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide that a district court shall reverse a magistrate judge's order regarding a non-dispositive matter only where the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Fielding v. Tollaksen*, — F.3d — , 2007 WL 4322436, at *3 (2d Cir. Dec. 12, 2007). Pretrial discovery matters are "non-dispositive," and, thus, reviewed under this highly deferential standard. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *Popular Imports, Inc. v. Wong's Int'l, Inc.*, 166 F.R.D. 276, 277 (E.D.N.Y. 1996). An order is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted). Therefore, in accord with the standards set forth in Rule 72(a) and the Federal Magistrates Act, a magistrate judge's orders on discovery matters are entitled to substantial deference. *U2 Home Entertainment, Inc. v. Hong Wei Intern. Trading*

---

[6] The Court notes that plaintiffs do not seek to modify or to set aside Magistrate Judge Francis' ruling that the Challenged Documents, as well as communications between Legal Bureau attorneys and arresting officers, are subject to the attorney-client privilege. (*See* March 14 Order at 21-22 & n.10.)

5

*Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (citing *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 189 (S.D.N.Y. 1988) ("Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion.")); *see, e.g.*, *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

### B. The Crime-Fraud Exception to the Attorney-Client Privilege

"'It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.'" *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)) (additional internal quotation marks and citation omitted). Put simply, the exception "strips the privilege" solely from those "attorney-client communications that 'relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)). As such, the Second Circuit has held that the crime-fraud exception "has a narrow and precise application." *Jacobs*, 117 F.3d at 88 (citing *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (Ginsburg, J.)) (emphasis omitted). Specifically, the party seeking to discover evidence must establish "probable cause to believe [1] that a fraud or crime has been committed and [2] that the communications in question were in furtherance of the crime or fraud." *Jacobs*, 117 F.3d at 87.

III. Discussion

Having reviewed the Challenged Documents, the arguments presented to Magistrate Judge Francis, and the parties' submissions relating to plaintiffs' objections, the Court is not "left with the definite and firm conviction that a mistake has been committed" by Magistrate Judge Francis with respect to his ruling on the crime-fraud issue. *Easley*, 532 U.S. at 242 (internal citation omitted). Thus, for the following reasons, the Court declines, pursuant to Rule 72(a), to modify Magistrate Judge Francis' holdings in the March 14 and October 30 Orders regarding this issue.

Specifically, it was not clearly erroneous or contrary to law for Magistrate Judge Francis to find that, notwithstanding Cai's deposition testimony and the other evidence proffered by plaintiffs, there was an insufficient basis to believe that any of the Challenged Documents were made or used "in furtherance of a fraud." Fed. R. Civ. P. 72(a). Indeed, based on the record before Magistrate Judge Francis, it is clear that plaintiffs have failed to offer *any* evidence that the Challenged Documents were used in furtherance of a fraud.

Cai's deposition testimony establishes, at best, probable cause to believe only that certain communications made by an unidentified Legal Bureau representative *to Cai* were made in furtherance of a fraud — specifically, a fraud arising from the inclusion of false information in sworn documents that could be relied on by New York State criminal courts. However, Cai's testimony has absolutely no bearing on the question of whether the Challenged Documents were made or used in furtherance of a fraudulent act. Indeed, it is undisputed that the documents in which Cai allegedly entered false information at the direction of a Legal Bureau representative have already been produced to plaintiffs and, therefore, are *not* included in the Challenged

7

Documents that are the subject of the instant motion to compel. Furthermore, plaintiffs have not asserted, nor is there any evidence in the record or the Challenged Documents themselves to suggest that Cai had a role in preparing or distributing the Challenged Documents, or that the Challenged Documents were connected in any way to the communications between Cai and a Legal Bureau representative at Pier 57. Accordingly, because Cai's deposition testimony fails to provides any support for the application of the crime-fraud exception to the Challenged Documents, or to otherwise undermine the maintenance of the attorney-client privilege that attaches thereto, the Court rejects plaintiffs' objections as they relate to the Challenged Documents.[7]

Similarly, it was not clearly erroneous or contrary to law for Magistrate Judge Francis to reject plaintiffs' argument that the crime-fraud exception "create[s] a general waiver of the attorney-client privilege" as it relates to the *entirety* of the communications between Legal Bureau representatives and arresting officers at Pier 57. (Oct. 30 Order at 4; *see, e.g.*, Pls.' Jan. 30, 2007 Ltr. at 13; Pls.' Reply Mem. at 9. Specifically, plaintiffs asserted that, because there was "a plausible theory" that Legal Bureau representatives "instructed arresting officers to write knowingly false arrest narratives," they "should be permitted to pursue discovery" relating to the *entirety* of communications between Legal Bureau representatives and arresting officers at Pier 57. (Pls.' Mem. at 11; *see* Oct. 30 Order at 4.) [8]

---

[7] In addition, the Court finds that it was not clearly erroneous or contrary to law for Magistrate Judge Francis to find in the March 14 Order that the remainder of plaintiffs' evidence — including the summary of an interview of Police Officer James Chung by the Civilian Complaint Review Board and the deposition testimony of Andre St. Laurent, one of the plaintiffs in a related RNC action — was insufficient to support the application of the crime-fraud exception to the Challenged Documents. (*See* March 14 Order at 21-22 & n.9.)

[8] Interestingly, plaintiffs have failed to request an order compelling the testimony of any *particular* witness, such as the individual who had allegedly engaged in communications with Cai in furtherance of a crime or fraud. The non-specific nature of plaintiffs' request is not surprising, as it is undisputed that, during his deposition,

8

As an initial matter, the Court notes that plaintiffs' assertion of a purportedly "plausible theory" (Pls.' Mem. at 11) regarding the existence of widespread fraud is, as a matter of law, an insufficient basis upon which to pierce the attorney-client privilege on the basis of the crime-fraud exception. As noted above, application of the crime-fraud exception requires a showing of "probable cause to believe" that each of the particular attorney-client communications at issue was used "in furtherance of [a] crime or fraud," *Jacobs*, 117 F.3d at 87, and cannot rest merely upon the movant's presentation of a "theory" regarding widespread fraud. *See, e.g.*, *In re Richard Roe*, 68 F.3d 38, 40 (2d Cir. 1995) ("[T]he crime-fraud exception applies only where there is probable cause to believe that [a] *particular* communication with counsel . . . was intended in some way to facilitate or to conceal the criminal activity.") (emphasis added) (internal citations omitted); *In re John Doe*, 13 F.3d at 636.

Here, it is clear that plaintiffs have failed to proffer sufficient evidence demonstrating that the entirety of communications between Legal Bureau representatives and arresting officers at Pier 57 were made "with an intent to further an unlawful act." *Jacobs*, 117 F.3d at 88. For example, plaintiffs point to dozens of narratives written by arresting officers that adopted the following structure, "with minor variations" (Pls.' Mem. at 13): "At T/P/O [time and place of occurrence] deft. along with over 100 others marched on sidewalk forcing pedestrians in to the street and refused to comply with orders to disperse." (*See* Kleinman Exs. F-L.) However, as Magistrate Judge Francis found, the mere fact that there were close similarities between many of the arrest narratives created by officers during the RNC does not establish that such narratives

---

Cai could not identify the Legal Bureau representative with whom he spoke at Pier 57 (*see* Cai Dep. Tr. at 86-89), and plaintiffs have failed to identify any individual with knowledge of that representative's identity.

were the fraudulent product of the officers' communications with Legal Bureau representatives. (*See* Pls.' Mem. at 12-14; March 14 Order at 22 n.9.) Rather, such similarities were to be expected given the circumstances of the instant case, wherein officers made arrests at mass protests and, therefore, were likely to recount similar or, sometimes, uniform, factual narratives of such arrests. (*See id.*) Without more, the similarities in the narratives cannot be said to be sufficient proof of fraud.[9]

In addition, defendants' assertion that arresting officers falsely attested to "observing" unlawful acts by arrestees, even if accepted on its face, does not establish a basis to apply the crime-fraud exception to the broad range of communications at issue here. (Pls.' Reply Mem. at 8.) Even assuming *arguendo* that some arresting officers during the RNC entered such false information in arrest narratives, there is no evidence in the record indicating that such entries were made at the direction of Legal Bureau representatives.

Finally, plaintiffs' broad assertion of the crime-fraud exception is not supported by the summary of an interview of Police Officer James Chung by the Civilian Complaint Review Board. (*See* Kleinman Ex. M.) That summary establishes, at best, that an unidentified police officer at Pier 57 told Chung and, perhaps, other arresting officers "what to write" in their arrest narratives. (*Id.*) However, the Chung summary specifically notes that Chung "could not recall who provided him with the narrative," and does not indicate that Legal Bureau representatives told Chung to *falsify* portions of the arrest narrative. (*Id.*) Thus, the Chung interview summary provides an insufficient basis to apply the crime-fraud exception to any particular

---

[9] Similarly, under the circumstances of the instant case, the fact that NYPD officers at Pier 57 were directed to meet with Legal Bureau attorneys prior to completing arrest paperwork does not, without more, establish that the entirety of such communications were made in furtherance of a fraud. (*See* Pls.' Mem. at 9.)

communication between an arresting officer and a Legal Bureau representative, let alone to the entirety of such communications.

Accordingly, because plaintiffs do not seek to compel testimony regarding any particular communication that was intended to further a crime or fraud, and because they have failed to proffer evidence sufficient to pierce the attorney-client privilege as it relates to the entirety of communications between Legal Bureau representatives and arresting officers at Pier 57, the Court finds that Magistrate Judge Francis' rejection of plaintiffs' crime-fraud argument was not clearly erroneous or contrary to law.

## IV. Conclusion

For the foregoing reasons, the Court declines to modify or to set aside, pursuant to Rule 72(a), Magistrate Judge Francis' holdings in the March 14 and October 30 Orders relating to the crime-fraud exception to the attorney-client privilege.

SO ORDERED.

Dated: New York, New York
January **17**, 2008

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE