**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

DEIRDRE MACNAMARA, et al., individually;   :
and on behalf of those similarly situated,   :
    :
             Plaintiffs,   :      ECF Case
    :
       vs.   :
    :      04-CV-9216 (RJS) (JCF)
The CITY OF NEW YORK; a municipal   :
entity, et al.,   :
    :
             Defendants.   :
-------------------------------------------------------------x

COURTNEY LEE ADAMS, *et al.*   :
    :
             Plaintiffs,   :      ECF Case
    :
       vs.   :
    :      05 CV 9484 (RJS) (JCF)
The CITY OF NEW YORK; *et al.*,   :
    :
             Defendants.   :
-------------------------------------------------------------x

MEGAN KENNEDY, *et al.*   :
    :
             Plaintiffs,   :      ECF Case
    :
       vs.   :
    :      07 CV 7678 (RJS) (JCF)
The CITY OF NEW YORK; *et al.*,   :
    :
             Defendants.   :
-------------------------------------------------------------x


**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED**
**FACTS PURSUANT TO LOCAL RULE 56.1 RE: FALSE ARREST CLAIMS OF**
**PLANITIFFS ARRESTED ON EAST 16th STREET**

Pursuant to Local Rule 56.1, the MacNamara, Adams and Kennedy Plaintiffs offer the within Response to the Defendants Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated October 3, 2011. In response, Plaintiffs incorporate their Rule 56.1 Statements of Undisputed Material Facts submitted in support of plaintiffs' motion for summary judgment, and the respective Rule 56.1 Statements of Undisputed Material Facts submitted by the collective RNC Plaintiffs on October 3, 2011. Plaintiffs also incorporate the Rule 56.1 responses of other plaintiffs[1] (collectively "RNC Plaintiffs Rule 56.1 Responses") as noted below:

<u>RESPONSES</u>

1.      Plaintiffs do not dispute the facts stated in defendants' paragraph 1. The Plaintiffs in no way concede, however, that any such training, as generally provided to members of the NYPD, was substantively correct or adequate, and specifically dispute that the training received by now-Chief Essig was adequate, and dispute that now-Chief Essig followed all aspects of his training.

---

[1] *Dinler et al. v. City of New York et al.*, 04-cv-07921; *Dudek v. City of New York et al. v. City of New York*, 04-cv-10178; *Bell v. City of New York et al.*, 05-cv-3705; *Starin v. City of New York et. al.*, 05-cv-5152; *Adams et. al. v. City of New York et. al.*, 05-cv-0948; *Kennedy et al. v. City of New York et al.*, 07-cv-07678; *Bastidas et al. v. The City of New York et al.*, 05-cv-07670, *Rigby v. City of New York*, 07-cv-771; *Concepcion v. City of New York et al.*, 05-cv-8501; *Grosso v. The City of New York et al.*, 05-cv-05080; *Tikkun v. City of New York, et al.*, 05-cv-9901; *Emilia Crotty, et al. v. The City of New York, et al.*, 05 Civ. 7577; *Jeffrey Stark, et al. v. The City of New York, et al.*, 05 Civ. 7579; *Matthew Moran, et al. v. The City of New York, et al.*, 05 Civ. 1571.

2.      Plaintiffs do not dispute the facts stated in defendants' paragraph 2. Plaintiffs in no way concede, however, that the instruction described in paragraph 2 was followed by the officers present at East 16th street.

3.      Plaintiffs do not dispute the facts stated in defendants' paragraph 3. Plaintiffs in no way concede, however, that the instruction described in paragraph 3 was followed by the officers present at East 16th street, and the mass arrests that occurred on 16th Street and elsewhere on August 31, 2004 suggest just the opposite.

4.      Plaintiffs do not dispute the facts stated in defendants' paragraph 4 but assert that this fact is not material to the summary judgment issues currently pending before the court.

5.      Plaintiffs dispute that any information received by the New York City Police Department regarding "plans for widespread civil disobedience" was reliable or credible. Defendants cite no specific or credible source establishing the reliability or credibility of this information, and cite no source that established that any plans for "civil disobedience" were "widespread" or that they were "heavily publicized." In addition, the defendants' citations do not support the facts asserted. Plaintiff Hankin's testimony as cited by defendants was that once he arrived in New York City he saw some details regarding protests, perhaps a flyer, or some print media, specifically that there was going to be a large protest on a Sunday or a weekday, and there was going to be a poor people's march. There is no testimony regarding civil disobedience. Hankin Dep. p 75:6-25. Plaintiff Corley's testimony as cited by defendants was that the big news he learned in the newspaper and media was of the march on Sunday going up 7th Avenue. Among other things happening that Corely heard about in newspapers and other media, he heard that some people were planning civil disobedience, but he was not aware of any specifics.

Corley Dep. p. 53:3-25. This dispute, however, is not material to the summary judgment issues currently pending before the court.

6.     Without regard to whether one or more individuals may have referred to August 31, 2004, or "A-31" as a "Day of Rage" or a "Day of Civil Disobedience," in internet banter and chatter and/or otherwise, Plaintiffs dispute that a group of individuals who could be characterized as "RNC protestors" planned a "Day of Rage" or a "Day of Civil Disobedience" on August 31, 2004, and dispute that they were part of any such group.  Defendants cite no source that establishes that these alleged plans were common to any group of "RNC Protestors" or that plaintiffs were part of any group of "RNC Protesters." For example, in her deposition testimony Plaintiff Friedman agreed that she had heard on the news that there was a call to participate in civil disobedience in New York on August 31, 2004 (Friedman Dep. pp. 187:23-188:14, 192:13-25 and 202:8-20), but when asked, "They are referring there to the 8/31 Action Coalition. My question is, did you know that the press was reporting that?" Friedman answered, "I didn't know that, so I don't know who 8/31 is."  Friedman Dep. p. 205:18-22. Friedman further testified that aside from one, she did not know what groups would be protesting that day; that she did not know what groups would be participating in civil disobedience; and that "I wasn't planning to participate in civil disobedience. I wasn't planning to get arrested." *See* Friedman Dep. pp. 187:17-22; 188:18-21; 202:5-7; 202:25-203:3. Defendant's citation to Plaintiffs Blackburn, Katz, Rosin, Giuliani, Maddox, Shotwell, Nella, Majmudar, Rosin, and Zarrella do not support the facts asserted; there is no mention of a "Day of Rage" or a "Day of Civil Disobedience" in Blackburn Dep. p. 109:19-24; Katz Dep. p. 73:15-23; Rosin Dep. p. 149:25-150:22; Giuliani Dep. pp. 46:18, 50:23-24; Maddox Dep. p 68:15-25; Shotwell Dep. p.42:1-16; Nella Dep. pp. 68:3-70:8; Majmudar Dep. p. 65:4-8; Rosin Dep. pp. 149, 150, 151, 160; or Zarrella Dep. p. 26.

Defendant's citation to Plaintiff's Kunz contradicts the facts asserted: Kunz testified that he never heard the term day of rage or day of civil disobedience applied to August 31st. *See* Kunz Dep. p. 83:7-14. Defendant's citation to Plaintiff Steitz contradicts the facts asserted: Steitz testified that he never heard the term day of rage; there was no mention of a day of civil disobedience. *See* Steitz Dep. p. 100:15-20.

7.     Plaintiffs do not dispute the facts in defendants' paragraph 7, except to state that at no time has the NYPD ever produced in this litigation any information that indicates that the NYPD received any specific or credible threat of violence or other criminal conduct.

8.     Plaintiffs dispute that all NYPD officers had knowledge of the alleged potential for "disturbances" on August 31, 2004. The sources cited by defendants show that officers testified only to their own personal knowledge of meetings with a limited number of NYPD supervisory officers. *See* Essig Dep. pp. 86-87; Galati Dep. 240:11; Monahan Dep. pp. 428-429, 437-43; Keegan Dep. p. 23:24-24:15, 25-26. This dispute, however, is not material to the summary judgment issues currently pending before the court.

9.     Plaintiffs dispute the implication that more than the two officers cited in paragraph 9 had knowledge of the potential for "incidents." The sources cited by defendants establish only that these two particular officers testified to their own personal knowledge of potential "incidents." This dispute, however, is not material to the summary judgment issues currently pending before the court.

10.     Plaintiffs dispute the facts stated in defendants' paragraph 10. The sources cited by defendants do not show that there was citywide "disorder" on August 31, 2004; the sources describe peaceful protests, some arrests, and a few acts of property damage. *See* Galati Dep. pp. 91-92; 98-100; Monahan Dep. pp.146-51; 266-67. In addition, one of the sources cited by

defendants contains no testimony relevant to facts asserted in paragraph 10. *See* J. Shea Dep. p. 92:19. To the extent there was city-wide disorder on August 31, 2004 it was created by the defendants' aggressive and indiscriminate mass arrest policy. This dispute, however, is not material to the summary judgment issues currently pending before the court.

11.     Plaintiffs do not dispute the facts as stated in defendants' paragraph 11, but do dispute any implication that the park was a "primary gathering spot" for specifically "RNC related" groups, and note that Union Square Park is a meeting spot used by many individuals generally, at all times, in New York City. *See Coburn, et al. v. City of New York, et al.,* 05 Civ. 7623 (RJS) (JCF), Rule 56.1 Response Concerning the 16th Street False Arrest Claim, paragraph 11.

12.     Plaintiffs dispute the implication that the plaintiffs had knowledge of any "plans for August 31, 2004," or had any knowledge or belief that Union Square Park was a "focal point" for any such plans. The undisputed evidence shows that MacNamara Plaintiffs Chandra, Majmudar, Malanum, Walsh, and Friedman, and Adams and Kennedy Plaintiffs Averbakh, Lewis, Juarez, Schutzenhofer, Beibin, and Fix, had no knowledge of any "plans for August 31, 2004." *See* Chandra Dep. pp. 18:10-19:20; 21:1-7 (Chandra went downtown with her roommate "maybe walk around and try to grab some food;" when she emerged from the subway she was "very interested in what was going on and curious"); Majmudar Dep. pp. 63:22-64:5 (Majmudar went to a bookstore, sat in the park, and was making her way back home when she was cordoned off on 16th Street); Malanum Dep. pp. 192:3-5; 198:8-10 (Malanum did not know that there was to be any kind of march, her plan when she got off the subway at Union Square was to have drinks with her roommate); Walsh Dep. pp. 12:21-13:11 (Walsh did not plan to attend any events during the RNC; she went to Virgin Records to meet a friend); Friedman Dep. pp. 173: 3-16;

174: 12-16; 222:23-223:1; 239: 19-25; 240:18-241:1 (Friedman did not have a set plan for

August 31, but went to Union Square about an hour after receiving a text message from a friend

saying that "people were gathering in the park"; she "wanted to see what was going on";

Friedman saw a band but did not know who its members were or what their plans were);

Averbakh Dep. pp. 86:7-96:25 (Averbakh went to Union Square Park to read while waiting for

an Alcoholics Anonymous meeting to begin, heard music and went to 16th Street to watch, he

didn't know that the Republican Party was having a convention in New York at that time): Lewis

Dep. pp. 30:25-32:6 (Lewis didn't know anything about August 31, 2004 being a day of

demonstrations, she came to Union Square to shop during the "no-tax" week); Juarez Dep. pp.

51:3-61:6 (Juarez didn't know about any RNC related demonstrations, he was out walking after a

gym workout and saw a band when he entered 16th Street from the Irving Place end of the street);

Schutzenhofer Dep. pp 12:3-15:10 and 120:1-123:18 (Schutzenhofer was sitting in Union Square

Park prior to hearing music on 16th Street and went over to see the band); Beiben Dep. pp. 99:1-

102:25 (Beiben was in Union Square Park waiting for a business meeting, if he had heard about

demonstrations on August 31st, he had put them out of his mind); Fix Dep. pp. 14:18-16:6 (Fix

was "absolutely not" participating in a demonstration, he was at Union Square shopping in a

health food store); Memorandum and Order of Honorable James C. Francis VI (November 28,

2006) (Exhibit H to Declaration of Jonathan Moore in support of Plaintiffs' Motions for Partial

Summary Judgment at 16th Street).[2]  It is also undisputed that many other plaintiffs had no

_____

[2] The memo from Judge Francis ruled that defendants had no knowledge of plaintiffs' actions.

The facts asserted in these plaintiffs' depositions are therefore undisputed.  For the sake of

brevity, the plaintiffs do not repeat this cite to Judge Francis' order each time they cite to their

undisputed declarations.

knowledge of any "plans for August 31, 2004." *See* RNC Plaintiffs Rule 56.1 Responses at

paragraph 12. In addition, the testimony of Plaintiffs Chandra, Friedman, Walsh, Kennedy,

Griffith, D. Geocos, Giuliani, Sassone, Wilcox, and Zarrella as cited by defendants does not

support the facts asserted.  None of this testimony suggests that plaintiffs had any knowledge of

any "plans" for August 31, 2004, or that they had any knowledge of whether groups were using

Union Square Park as a "focal point." Chandra testified that when she arrived at the park there

were more people than usual coming out of the subway into Union Square; that there were lots of

people in the park of different ages and races; that people were talking and walking around, that

there were tourists and people from different organizations, and that activity was all politically

focused, Chandra Dep. pp. 22:9-12; 22:23; and 24:9. Friedman stated that she went to a fountain

because "there were people meeting there," and that she "stood with the group of people that

were in the park for a while," Friedman Dep. pp. 232-233:22-10. Walsh testified that it was

crowded in the park when she arrived, the crowd was larger than usual, and there was a larger

than usual police presence, Walsh Dep. pp. 15:18-20, 15-16:23-8. Kennedy testified that the area

was full of people; there is no discussion of "focal points" or plans for August 31. Kennedy Dep.

p. 178:9-21. Griffith's testimony was that Union Square seemed pretty calm when he arrived.

Griffith Dep. p. 50:20-23.  David Geocos went to Union Square Park to meet up with his sister;

he did not receive any messages relating to anything happening at Union Square Park. D. Geocos

Dep. p. 68:14-20.  Giuliani, a visitor to New York City, testified that there were a lot of people

with signs in Union Square and Washington Square Park; it is not clear if this referred to August

29th or August 31st. Giuliani Dep. p. 61:2-13.  Sassone's testimony was that, although there were

more people than usual in the Park, it looked like people were there for different purposes.

Sassone Dep. p. 55:1-9.  The testimony of Wilcox was that there were no demonstrations in

Union Square Park; they were waiting for a demonstration which started at the World Trade Center and went to Madison Square Garden. Wilcox Dep. pp. 61:14-62:3. There is nothing in the transcript cited for Zarrella concerning Union Square Park, demonstrations, August 31, 2004 or the Republican National Convention. Zarrella Dep. p 27.

13.     Plaintiffs do not dispute the facts stated in defendants' paragraph 13.

14.     Plaintiffs dispute the facts stated in defendants' paragraph 14 to the extent that this vague statement implies that the plaintiffs had any knowledge of any "plan to have an unpermitted parade." The undisputed facts show that MacNamara Plaintiffs Chandra, Majmudar, Malanum, Walsh and Friedman, and Adams and Kennedy plaintiffs Averbakh, Lewis, Juarez, Schutzenhofer, Beibin, and Fix, had absolutely no knowledge of any planned events, much less an unpermitted parade. *See* paragraph 12 *supra*. The undisputed facts also show that Plaintiff Biddle had no knowledge that a "parade" was planned, *see* Biddle Dep. pp 9:18-10:4, 11:4-21, 16:14-17:5 (Biddle, who was volunteering for the National Lawyer's Guild, went to Union Square Park after receiving a phone call from a friend who reported that the band RMO was there and there was a very large police presence, Biddle went to record any potential police action; Biddle knew the band was playing but did not know about a march). In addition, the undisputed evidence shows that many other plaintiffs had no knowledge of any "plan to have an unpermitted parade." *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 14. Moreover, the City's citation to the transcripts of Plaintiffs Friedman, Kristen Kojis, Hill, L. Martin, Hughes-Dunn, Pryor, Jabour, Giuliani, Maddox, Mitrano, Zalk, Lahn, and Lovejoy do not support the facts asserted. The cited testimony of Friedman makes no mention of a permit or lack thereof, and in fact states that Friedman did not have a set plan for August 31, and did not know that there was going to be any event in Union Square until she got a text message about an hour

before her arrival saying that "people were gathering in the park." *See* Friedman Dep. p. 173:7-13. Kristen Kojis's testimony was that she met friends at McSorlen's [sic] and they went to Union Square because she heard that people were gathering there. *See* Kristen Kojis Dep. p. 28:10-17. Hill testified that he had gotten a leaflet about a march; there is no discussion of permits. *See* Hill Dep. p. 94. Plaintiff L. Martin, testified that he had no knowledge of the status of permits or lack thereof. *See* L. Martin Dep. p. 12:4-14. The transcript portions cited by defendants of Hughes-Dunn, Pryor, Jabour, Giuliani, Maddox, Mitrano, Zalk, Lahn, and Lovejoy do not mention permits. *See* Hughes-Dunn Dep. p. 10; Pryor Dep. p. 88; Jabour 50-h p. 107; Giuliani Dep. pp. 54-55; Maddox Dep. pp. 10-11; Mitrano Dep. p. 41; Zalk Dep. pp. 57 and 61; Lahn Dep. pp. 141, 144, 148, and 149; Lovejoy Dep. pp. 40, 41, and 82. Plaintiffs assert that there is no genuine dispute about the fact that many individuals, including the MacNamara, Adams, and Kennedy Plaintiffs, had no knowledge of any "plan to have an unpermitted parade."

In addition, in paragraph 14 defendants introduce the term "16th Street Parade" which they define as "a plan to have an unpermitted parade out of Union Square Park . . . on August 31, 2004." Defendants then subsequently refer to all those present at Union Square Park and on East 16th Street on August 31, 2004, as "participants" in "the 16th Street Parade." Plaintiffs dispute all such characterizations in defendants' Rule 56.1 statement. Plaintiffs dispute that there was an overarching, identifiable, cohesive group that could be referred to as the "16th Street parade." Moreover, Plaintiffs assert there is no genuine dispute that, in addition to "participants," there were many other people present at Union Square Park on August 31, 2004, including passersby, curious onlookers, people enjoying the park, people enjoying nearby restaurants, journalists, legal observers, people who lived and worked in the area, and others, none of whom were "participants" in any "16th Street Parade." *See* response to defendants' paragraphs 12 and 14,

*supra; see also* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 12 and 14. Indeed, the video evidence shows police officers on the south sidewalk of 16th Street ordering people, who do not appear to be together, to squeeze into one tight group; those people were then arrested along with people on the north sidewalk of 16th Street, many of whom had no apparent connection to people on the south sidewalk. All of these individuals are incorrectly referred to throughout the defendant's pleadings as "participants in the 16th Street Parade." *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: video east end of south sidewalk: Coppola at 1:57:00 to 2:02:30, Dinler at 35:40 to 40:30, TARU 87 at 19:14, TARU 92 at 7:15PM; video west end of south sidewalk: Hall 19:12-19:14; video north sidewalk: TARU 64 at 38:00 to 46:40, TARU 86 at 19:14:50 to 19:17 30, TARU 94 at 19:14:14, 19:22:17, and 19:29:20, TARU 108 at 7:14:30 to 7:15:35 PM, Vault at 37:00 to 45:00, Black at 31:21 to 34:25, Viertel at 40:25 to 45:00.

Plaintiffs also dispute that the activity on Union Square East and East 16th Street was "unpermitted," and dispute such all characterizations throughout the defendants' Rule 56.1 statement. Given the defendants' admission that NYPD personnel could decide *sua sponte* to allow an "unpermitted" march to proceed, in fact did escort "unpermitted" marches the week on the RNC from Union Square to 8th Avenue and 32nd Street, and were prepared to "escort" a march on August 31st from Union Square to 8th Avenue, it is not clear what the relevance of a formal "permit" is to this case. *See* Defendants' Statement of Undisputed Material Facts, paragraph 13, citing: Essig Dep. p. 291:10-22, Johnson Dep. pp. 133:6-134:9, Dieckmann Dep. p. 56:5-21, Galati Dep. pp. 348:9-349:15, 357:10-359:11.

15.     Plaintiffs do not dispute that some limited number of particular individuals distributed and/or received flyers identifying parade leaders in costume. Plaintiffs dispute that

the individuals whose deposition testimony is cited in paragraph 15 actually received or distributed such fliers. The sources cited by defendants make clear that in many instances the opposite was true; *see* Kaye Dep. p. 82:17-19 (Kaye did not remember Wizard of Oz flyers); Sakayama Dep. p. 70:3-11 and Wilcox Dep. p. 65:5-12 (Sakayama and Wilcox specifically testified that they did not see Wizard of Oz flyers in Union Square Park); *Dinler et al. v. City of New York et al.*, 04-cv-07921, Plaintiffs' Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, paragraph 15. In addition, some testimony cited by defendants discusses flyers but not their content; *see* Hill Dep. p. 94 and Shotwell Dep. pp. 63:6-64:14 (testimony does not identify the type of flyers received); Rosin Dep. pp. 168:1-24, 170:3-172:12 (although Rosin was handing out flyers, she did not remember flyers regarding parade leaders in costume or seeing the puppets on August 31st). Other sources cited by defendants reflect no testimony regarding fliers one way or the other; *see* Malanum Dep. p. 202:16-18 and Lahn Dep. pp. 144, 148-149 (no testimony concerning flyers); Steitz Dep. p. 104:5-19 (testimony does not deal with flyers, and Steitz stated that he did not remember Wizard of Oz characters); Zarrella Dep. pp. 29, 31 (no testimony concerning flyers, Union Square Park, demonstrations, August 31, 2004 or the Republican National Convention); and *Dinler et al. v. City of New York et al.*, 04-cv-07921, Plaintiffs' Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, paragraph 15. This dispute, however, is not material to the summary judgment issues pending before the court.

16.     Plaintiffs do not dispute that people were present in the southern end of Union Square Park on August 31, 2004, but do dispute that all persons gathered there were "participants in the 16th Street Parade," and dispute the implication that all plaintiffs with cited deposition testimony were "participants" in a "parade." *See* responses to defendants' paragraphs 12 and 14,

*supra*. The defendant's citations to the testimony of Plaintiffs Friedman and Biddle do not

support the assertion that "participants gathered" at the southern end of the park, and do not

support the implied allegation that Friedman and Biddle "gathered" as "participants" in a

"parade." Friedman stated that she came to the park after getting a text message that "people

were gathering" there (*see* Friedman Dep. pp. 173: 7-13); that she went to a fountain on the south

end of the park because "there were people meeting there;" and that she "just stood with the

group of people that were in the park for a while" (*see id.* p. 233: 10-14); Friedman later testified

that after the band left the park she "wanted to see what was going on," but then decided that she

did *not* want to be a part of any demonstration (*see id.* p. 242:17-24).  Plaintiff Biddle simply

testified that she got a phone call from a friend saying the marching band and a large police

presence were in Union Square (*see* Biddle Dep. pp. 9:16-10:1), and that when she arrived she

saw "a lot of people, a large police presence and I heard music" *(see id.* pp. 11:25-12:3); Biddle

was not a participant in any demonstration but a videographer and NLG observer (*see id.* pp.

22:13-23:21).

17.     Plaintiffs dispute that the INB "gathered" in Union Square Park for the purposes

of "participating in the 16th Street parade."  Defendants cite no source to establish this assertion.

18.     Plaintiffs do not dispute that a very limited number of particular individuals

considered themselves members of the RMO and INB. The MacNamara, Adams, and Kennedy

Plaintiffs were not musicians and were not part of any band.

19.     Plaintiffs dispute the facts stated in defendants' paragraph 19 to the extent it

implies that there was any "16th Street Parade," *see* response to defendants' paragraph 14 *supra*,

and to the extent that it implies that officers did not permit, or give the impression that they were

permitting, the activity on Union Square East and East 16th Street, *see* response to defendants'
paragraph 14 *supra*.

20.     Plaintiffs dispute the implication that plaintiffs and/or all persons who left Union
Square Park were "participants" in a "16th Street Parade," *see* response to defendants' paragraphs
12 and 14 *supra*; and dispute the implication that the activity on Union Square East and East 16th
Street was "unpermitted," see paragraph 14 *supra*. To the extent that defendants paragraph 20
implies that plaintiffs were aware that there was no permit, plaintiffs dispute that implication.  At
the time these events unfolded, many people did not know whether there was a permit or whether
one was needed.  *See* Chandra Dep. pp. 124:24-125:1 (Chandra did not know whether the band
had a permit to march); Majmudar Dep. p. 79 6-8 (Majmudar did not know whether the people
on Union Square East had a permit); response to defendants' paragraph 14 *supra*; RNC
Plaintiffs' Rule 56.1 Responses at paragraphs 14, 20.  Plaintiffs assert that there is no genuine
dispute that many of the plaintiffs had no knowledge of whether a permit was needed or had
been obtained. The defendant's citation to Plaintiff Biddle's deposition does not support the fact
asserted; the cited testimony establishes that Biddle was aware at the time of her deposition that
the people on 16th street did not have a permit, but is unclear as to whether Biddle knew this
when she was on 16th Street (Biddle Dep. pp. 16:5-8); moreover Biddle was not a "participant"
but was videotaping the activity on 16th Street as a "green hat" for the NLG (*see id*. pp. 22:13-
23:21).

21.     Plaintiffs dispute that all individuals exiting the southern end of Union Square
Park were participating in "the 16th Street Parade," *see* response to defendants' paragraph 14
*supra*.  Plaintiffs dispute the defendants' description of the action as "launch[ing] unexpectedly,"
as defendants cite no evidence to support this factual assertion.  Plaintiffs also dispute the

13

defendants' description of the action as without "police consent." The uncontested evidence shows that police officers directed individuals forward or walked alongside them without giving them any audible orders of any kind, and that those officers did not take any action to prevent people from leaving the park or give any audible orders that any such action could be considered unlawful. *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: Hall Video at 19:01:00 to 19:01:15; Swimberge Video at 28:00 to 28:50; Rothman Video at 30:50 to 31:45; TARU Video 86 at 19:00:42 to 19:01:15; TARU Video 87 at 19:00:00 to 19:00:55; TARU Video 152 at 30:00 to 30:05. *See also* Essig Dep. p. 101:18-23; *MacNamara* Rule 56.1 Statement at paragraphs 39, 78, 240, 256. The testimony of Officer Malone was that the entire Mobile Field Force 7 followed the group out of the park, walked "parallel to them," and got in front to form the line which directed people onto 16th Street, all without giving any instructions to the crowd. Malone Dep. pp. 46:20-51:25. Plaintiffs assert there is no genuine dispute that many individuals leaving Union Square Park believed that there was "police consent." In addition, many of the transcripts cited by Defendants do not support the statement that the crowd left the south end of Union Square Park. For example Officer Frederick's testimony was that he was on the north side of Union Square Park and was told by Captain Leara to report to 16th and Irving Place. He never saw the crowd leave Union Square Park. Fredericks Dep. pp. 36:2-37:24. Officer Connolly never saw the crowd leave Union Square on 14th Street; he saw people leave Union Square Park at 16th Street and go directly toward Irving Place on East 16th Street:

> Q. Did you see people, and again I am asking what you yourself saw from where you were on the northwest corner, did you see people exiting the park on 14th Street and then coming around onto Union Square East?
>
> Ms. Shammas:          Objection.

14

A. Did I see anyone leaving 14th, no.  I didn't see that.

Q. So you saw people coming sideways out of the park onto Union Square East?

A. Yes.

Connolly Dep. pp. 31:20-34:25. Officer Johnson was on the west side of Union Square Park when the crowd left the park, he had to walk across the park to 16th Street.  Johnson Dep. pp. 47:9-49:25.

22.    Plaintiffs dispute that all individuals exiting the southern end of Union Square Park were participating in "the 16th Street Parade," *see* response to defendants' paragraph 14 *supra*; plaintiffs dispute the implication that all individuals at this location were leaving the park, and/or that all individuals who left the park were walking on the Union Square East roadway. Plaintiff Biddle was never in Union Square Park and therefore never exited from it. Biddle Dep. pp. 12:14-13:3. Plaintiffs Chandra, Majmudar, Malanum, and Friedman left the park but were not "participating" in a "parade;" *see* Chandra Dep. pp. 28:1-9 (Chandra left the park when she heard and saw a band; she wanted to "see if we could just go over there and see what was going on" because "I am a big fan of music"),  Majmudar Dep. at pp. 63:19-64:4 (Majmudar went to a bookstore, sat in the park, was making her way home, and got caught on 16th Street); Malanum Dep. pp. 200:11-14; 209:17-18; 214:4-215:6 (Malanum exited the subway and stood on an island to watch the band, she later walked down the sidewalk with her friend while listening to the band);  Friedman Dep. pp. 238: 7-15; 239: 19-23; 242: 17-24 (Friedman saw the band for the first time outside of the park, she did not know who the band members were or why they were there, other than to play music, Friedman wanted to leave the crowd after exiting the park). Plaintiffs Malanum , Chandra and Friedman never walked on the roadway and were on the sidewalk at all times.  *See* Malanum Dep. pp. 213:13-214:10; 256:11-24; 265:22-23; 266:13-14;

15

270:8-271:2; 276:8-11; 277:23-278:23;  (Malanum and Chandra walked on the sidewalk and did

not go into the street); Friedman Dep. pp. 242:17-24 (Freidman walked up Union Square East on

the sidewalk). Plaintiffs Averbakh, Lewis, Juarez, Rivera, and Schutzenhofer were never on

Union Square East.  *See* responses to defendants' paragraph 12 *supra*.  Plaintiffs Vault, Viertel,

and Pietri were shooting video in Union Square Park and followed police to 16th Street; they

never saw the crowd or the bands in Union Square Park or on Union Square East as is clear from

their video.  *See* Exhibit B to Declaration of Jonathan C. Moore in Support of Motion for Partial

Summary Judgment at the Site of the 16th Street Arrests: Vault at 31:40, Viertel at 31.20. Other

video also shows many people crossing Union Square East at 16th Street without having

accompanied the crowd on Union Square East.  *See* Exhibits A and B to Declaration of Jonathan

C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street

Arrests: TARU 87 at 19:00:30 and Swimberge at 29:15.  In addition, many other plaintiffs left

the park without joining a "parade" and/or never walked in the roadway of Union Square East.

*See* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 12, 14, 22.  Plaintiffs assert that it is

undisputed that many individuals exited Union Square Park lawfully walking only on the

sidewalks.

      23.     Plaintiffs dispute the facts in defendants' paragraph 23.  The uncontroverted

evidence shows that the first persons to leave Union Square Park were individuals carrying

puppets, who were followed by a large number of individuals.  *See* Exhibit  B to Declaration of

Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th

Street Arrests: Hall Video at 18:57 to 18:59:15.  Approximately a minute later, the marching

band left Union Square Park, also followed by a large number of individuals.  *See Id.* Swimberge

Video at 26:40 to 27:00.  This dispute, however, is not material to the summary judgment issues currently pending before the court.

24.     Plaintiffs dispute the facts in defendants' paragraph 24 with regard to the fact that hundreds of individuals all "joined and followed the 16th Street Parade in order to follow the marching band and participate in the 16th Street Parade."   The evidence is uncontroverted that Plaintiff Biddle did not follow the band for any amount of time, but was merely observing and videotaping. Biddle dep. pp. 22:13-23:21.  The defendant's citations to the testimony of Malanum, Chandra, Freidman, Walsh, and Majmudar do not support the assertion that these plaintiffs were present to "join and follow" the "16th parade;" indeed, it is uncontroverted that none of these plaintiff's intended to "join" a "parade."  Malanum testified that she walked north on Union Square East on the sidewalk, that "we were listening to the band, so we were behind them at a distance," further that, "there were people walking around Sonia and I. I can't say for them where they were walking towards or where they were going." Malanum Dep. pp. 214:4-215:6, 216:5-13 and 217:18-20. When asked "were you walking alone or were you walking with other people?" Malanum answered "I was walking with Sonia." *Id.* 214:13-17. Chandra testified she crossed out of the park to "just go over there and see what was going on," and that she was not following the band, but was "just looking to see what was going on and what they were doing," *see* Chandra Dep. pp. 28:1-4, 35:7-9. Chandra stated in an un-cited portion of her testimony, "I guess a lot of observers, like myself, were going to see what this music was doing." *Id.* pp. 35:25-36:2. Friedman testified that there were other people walking up Union Square East behind the band, "[b]ut I don't know if they were following them."  Friedman Dep. pp. 239:10-17. In an un-cited portion of her testimony Friedman stated "We also wanted to see what was going on. But as soon as we started walking and noticed people that were in the street, and we

stayed on the sidewalk on Union Square east while people were walking, and it just became too

big of a crowd. So we didn't want to be a part of that." *See id.* p. 242:17-24. The defendant's

citation to Walsh Dep. pp. 20:18-21, 21:6-9 and 21:10-12 fails to include Walsh Dep. p. 20:25-

21:1: Q: "Were you following the protest?" A: "I wasn't following them, I just went."

Majmudar Dep. pp. 67-68:25-17 and 68:20-24 indicates that Majmudar was heading home and

the band was walking ahead of her. Corley's testimony is that he went over to see what was

going on, and that it didn't seem like a march, more like a bunch of people moving up the street.

There is no discussion in the cited transcript of whether he joined or followed the crowd. Corley

Dep. p. 67. Defendant's citation to Plaintiff Katz's testimony is, at best, misplaced. The cited

testimony states Katz was walking by Union Square Park on his way to meet a friend for dinner

when he heard the marching band, and he had no idea that the crowd had anything to do with the

RNC. As he was watching he saw an old friend and walked over to say hello for about one

minute. There was a lengthy discussion of the city attorney's characterization of Mr. Katz's

conduct as "joining the march" to which Mr. Katz's attorney strenuously objected. Katz Dep.

pp. 93:15-97:6. As soon as Mr. Katz saw the police at the corner of 16th and Union Square East

directing people onto 16th Street, he got on the sidewalk, where he remained until he was

arrested. Katz Dep. pp. 101:14-103:23. T. Kennedy's cited testimony is that he decided that as

long as he stayed on the sidewalk he wouldn't be doing anything illegal. Kennedy Dep. p.

148:14-22. Defendant's citation to Plaintiff Averbakhi [sic] is even more egregious. Averbakh

never saw the crowd on Union Square East. He was in the park waiting for his Alcoholic

Anonymous meeting to begin when he heard music and went to 16th Street. He didn't know the

Republican Party was having a convention in New York. He never saw the crowd in the park or

on Union Square East. Averbakh Dep. pp. 87-100. In addition, the evidence is undisputed that

many other people were on 16th Street because they were curious, acting as legal observers, acting as journalists, or were present for reasons other than to "join and follow" any "16th Street Parade." *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 24.  Plaintiffs assert that there is no genuine dispute that many individuals walked around or behind the marching band with no intention of "joining" or "participating" any "16th Street Parade," but merely because they were curious, enjoyed listening to music, were acting as journalists or legal observers, were simply passing east on East 16th Street on the way to home, work, or some other location, or for a variety of other reasons.

25.    Plaintiffs do not dispute the facts stated in defendants' paragraph 25.  Plaintiffs note that while the citations do establish that traffic on Union Square East normally runs in both directions, all cited pages also contain testimony that it was the police that blocked traffic on Union Square East.  *See* Rufle Dep. p. 49:17-22; Hardesty Dep. p. 156:13-18; Palmer Dep. p. 148:10-15; Ross Dep. p. 130:6-15; Gomez Dep. p. 26:15-20; Walden Dep. p. 19:8-12.

26.    Plaintiffs do not dispute that there were people in both the roadway and on the sidewalks of Union Square East. Plaintiffs do dispute that all the individuals proceeding north on Union Square East were "participants in the 16th Street Parade," *see supra* response to defendants' paragraphs 12, 14, 24. Additionally the deposition testimony cited by defendants does not support the fact asserted. For example, Plaintiff Malanum testified only that people were walking on sidewalks. She never used the term "participants" in a "parade." Malanum Dep. p. 236:5-6. Plaintiff Friedman said only that she was on the sidewalk and there were people in front of her and behind her. Friedman Dep. p. 243:8-20, 257:4-22. Both plaintiffs Walsh and Majmudar stated only that they saw people on the sidewalk and people on the street, but say

nothing about those people being "participants" in a "parade." Majmudar Dep. p. 79:17-24;

Walsh Dep. p. 24:13-18.

27.     Plaintiffs dispute the facts stated in defendants' paragraph 27. The cited portions

of Malanum's, Friedman's, and Majmudar's deposition testimony do not indicate that what was

going on Union Street East looked like a "parade," "procession," or "march."

28.     Plaintiffs dispute the facts stated in defendants' paragraph 28.  The

uncontroverted evidence shows that many of the MacNamara, Adams and Kennedy Plaintiffs

never blocked any vehicular traffic at any time.  *See* Malanum Dep. pp. 213:13-214:10; 256:11-

24; 265:22-23; 266:13-14; 270:8-271:2; 276:8-11; 277:23-278:23;  (Malanum and Chandra

walked on the sidewalk and did not go into the street); Friedman Dep. pp. 242:17-24 (Freidman

walked up Union Square East on the sidewalk). In addition, the evidence is undisputed that many

other plaintiffs never blocked any vehicular traffic.  *See* RNC Plaintiffs' Rule 56.1 Responses at

paragraph 28.  In addition, the testimony cited by defendants does not support the fact asserted.

For example, Plaintiff Walsh testified that there were cars on the road and that at some point she

crossed the street, but further stated that she did not walk in the street at any other point; Walsh

stated nothing about herself or anyone else blocking traffic. Walsh Dep. pp 30-31: 14-1.  Plaintiff

Katz, cited by defendants, was only with the crowd "for about a minute," to say hello to an old

friend he saw as the crowd went by.  Katz Dep. p. 101:20-22.  Plaintiff Henriksen specifically

stated:

> Q. From your observation, did the band obstruct and cars from going down the lane?
>
> A. I did not see any cars near them.  I didn't see anything that looked like cares were being blocked.
>
> Q. From your observation, was the crowd obstructing the traffic of cars moving up Union Square East?

Ms. Douglas Taylor:   Objection.

A.   What I saw of cars on the street, on Union Square, was not certainly looking up to the north. There were too many police in the way. I assumed if anyone was blocking the traffic, it was them.

Henriksen Dep. p. 108:15-25.The testimony cited by defendants for plaintiff Rubinfeld is that she specifically "didn't watch traffic being blocked." Additionally, it appears that Rubinfeld crossed from Union Square Park to 16th Street at 16th Street; it is not possible to tell if she even saw the crowd on Union Square East. Rubinfeld Dep. p. 12:2-17. Plaintiff Shortridge's testimony cited by defendants is: "I mean, I don't remember any cars stopping for us. We just kind of walked through." Shortridge Dep. p 89:11-12. Finally, Plaintiffs dispute that all individuals exiting the southern end of Union Square Park were participating in "the 16th Street Parade," *see* response to defendants' paragraph 14 *supra* . Plaintiffs assert there is no genuine dispute about the fact that many individuals, including many of the MacNamara, Adams and Kennedy Plaintiffs, never blocked any vehicular traffic.

29.    Plaintiffs dispute the facts stated in defendants' paragraph 29 on the same grounds as stated in response to defendants' paragraph 28, *supra*.

30.    Plaintiffs dispute the facts stated in defendants' paragraph 30.   There is no evidence to indicate that many of the MacNamara, Adams, and Kennedy Plaintiffs "blocked" pedestrian traffic at any time. Indeed, Chandra, Majmudar, Malanum, Walsh, and Friedman were able to walk on the sidewalk from Irving Place and 16th Street to Union Street  and 16th Street after the police had formed lines at both ends of 16th Street. *See* Chandra Dep. pp. 67:24-68:1; Majmudar Dep. pp. 86:9-87:10, 88:2-3, 89:1-4, 92:9-12; Malamun Dep. p. 278:9-19; Walsh Dep. pp 26:14-27:24, 37:8-12, 83:11-85:1;  Friedman Dep. pp. 294:24-295:23. Moreover, the portion of Plaintiff Freidman's testimony cited by defendants shows that there was room on the sidewalk

for her to stand away from the crowd: Q: "And there is nothing that prevented you, if you wanted to avoid the crowd, there is nothing that prevented you from just standing aside for a few minutes and letting the crowd pass you by, right?" A: "Well the crowd was very—the street was full and it was very hard to get out of the crowd already. We were standing on the sidewalk trying to get out of the crowd and let everybody pass, but the street was completely full." Q: "No, I understand that, but if you had wanted to, you could have done that as well, right?" A: "I suppose so, yes." Friedman Dep. pp. 345:12-17. Plaintiff Lewis, cited by the city as support for pedestrian traffic being blocked on Union Square East, never saw Union Square East when the crowd was there and had no knowledge of what took place on Union Square East.  During her deposition, over her attorney's objections, she was repeatedly asked about what took place on Union Square East in spite of her testimony that she was on 16th Street when she first saw the crowd with the band and that she never saw the crowd on Union Square East.  Now the city is citing this misleading testimony as evidence. Lewis Dep. pp. 43:24-46:23.  Plaintiff Hugh-Dunn's testimony concerning the sidewalk on Union Square East was that people were walking on the sidewalk.  There is no discussion of it being crowded, much less blocked.  Hughes-Dunn Dep. p 19:9-11. Plaintiff Jabour's testimony, that the sidewalk was not blocked, and that it was not compacted full of people, supports the opposite of the fact asserted.  Jabour Dep. p. 138:13-25.  Plaintiff Tomiko-Jones' testimony was that there was no intent to cause public inconvenience or annoyance, and that she did not recklessly create such a risk.  The apparent basis of the defendant's citation to Tomiko'Jones' testimony for blocking pedestrian traffic is the response to the question "Did the spontaneous movement of people perhaps restrict some pedestrian traffic?"  Her answer was "It's possible." Tomiko-Jones Dep. p. 162:2-14. Plaintiff Mitrano's testimony, cited by the defense, was: Question "Prior to your arrest were you in the

street, in the street area." Answer: "I think I was on the sidewalk." Question: Was there any point

in time where you were off of the sidewalk." Answer: "I assuming so [sic], because sometimes

there wasn't room on the sidewalk." There is no discussion if this is in reference to Union Square

East or after the police squeezed the crowd together on 16th Street.  Mitrano Dep. p. 9:16-24.  In

addition, the evidence is undisputed that many other plaintiffs never blocked any pedestrian

traffic.  *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 30.  Plaintiffs assert there is no

genuine factual dispute that many individuals never blocked any pedestrian traffic.

   31.      Plaintiffs dispute the facts stated in defendants' paragraph 31 on the grounds

stated in response to defendants' paragraph 30, *supra*. In addition, the citations given by

defendants do not support the facts asserted.  Essig's transcript reads:

> Q. Were the people who were on Union Square East who were on the sidewalk disrupting
> the public on August 31[st].?
>
>       Mr. Ferrell:     Objection
>
> A.  Yes.
>
> Q. How so?
>
> A. Anybody who would have had to have walked down the block, or any vehicular that
> would have come down the block, would have been impeded or would have to have
> walked into the street, or vehicle would have been blocked by these, by the
> demonstrators.
>
> Q. Did you see any pedestrian trying to come down Union Square East have to go into
> the street because of the demonstrators?
>
>   A. No, I did not.

Essig Dep. pp. 212:19-213:10. See also Essig's testimony at 101:13-17 (Q. Where the people

that you are describing as a procession, were there some people also on the sidewalk moving

north on Union Square East? A. I don't know).

32.     Plaintiffs dispute the facts stated in defendants' paragraph 32, to the extent it implies that all the individuals present were "the 16th Street Parade," *see* response to defendants' paragraph 14 *supra*. Plaintiffs do not dispute that the NYPD formed a line on Union Square East at East 16th Street, but do dispute that the only purpose of the line was to prevent people from reaching Park Avenue South.  The line was also formed to direct people down East 16th Street: the undisputed evidence shows that many individuals were directed down East 16th Street by the police line. *See* Majmudar 78:21-25; RNC Plaintiffs' Rule 56.1 Responses at paragraph 32.

33.     Plaintiffs dispute the implication that all the plaintiffs were "participants," *see* response to defendants' paragraph 14 *supra*, and note that plaintiffs had no reason to "turn back" because Plaintiffs were not directed to turn back or disperse, did not know that they were being perceived as part of any particular activity, and had no reason to believe that they were doing anything other than what was legal and, in fact, expressly desired by the NYPD (i.e., what they were directed to do by the police – turn into East 16th Street). For example, Plaintiff Chandra testified "I was not under the impression that anyone was doing anything unlawful. As I said when we turned there was a strong police presence, nobody was saying anything or telling anybody to stop or anything, so I didn't think anybody was doing anything unlawful." Chandra Dep. p. 126:9-13. Plaintiff Henricksen testified:

Q.     What did you see when you saw the police line?

A.     I thought they were going to start directing this as a parade.  Having been aware that there was likely no permit for this, yet all of a sudden, here come the police to guide us.

I had been seeing this all week.  There had been police everywhere.  So I was assuming maybe they were going to try to impose some order on the crowd and guide us through the streets.

Q.     Did you think the people with the crowd were going to be arrested?

A.    No.  It actually never crossed my mind.

Henriksen Dep. p. 117:3-14. Plaintiffs further dispute that all plaintiffs had the opportunity to

"turn back" before being seized and detained on East 16th Street.  *See* RNC Plaintiffs' Rule 56.1

Responses at paragraph 33.

34.    Plaintiffs dispute the implication that all plaintiffs were "participants," *see*

response to defendants' paragraph 14 *supra*. Plaintiffs also dispute that they "chose on their

own" to proceed east on East 16[th] Street, given that a police line had formed across Union Square

East. Malanum turned onto East 16th Street because she saw a police line and "nobody was able

to go anywhere else but onto 16th street." Malanum Dep. p. 249:3-10. Chandra testified that

when she got to 16th Street "there were a bunch of cops," and "that's at what point we turned on

16th Street." Chandra Dep. p. 37:1-4. Friedman went down 16[th] Street because "that was the only

street that I saw that I could turn down." Friedman Dep. p. 286:8-9.[3] Lovejoy's testimony was

that the police were directing the crowd down 16th Street.  Lovejoy Dep. p. 94:5-12.  Rivera

came out of the park and saw the crowd on 16th Street, he only entered 16th Street after an officer

nodded permission.  Rivera Dep. p. 66:6-21.  Wilcox followed police instructions to turn onto

16th Street, she didn't think there was a choice.  Wilcox Dep. p. 12:1-11.  The plaintiffs further

dispute any implication that all "participants" walked on the East 16th Street roadway, as

opposed to the sidewalk. The uncontroverted evidence shows that Chandra walked on the south

side of the 16th street sidewalk (*see* Chandra Dep. p. 60:18-20); Majmudar walked down the

north side of the 16th street sidewalk (*see* Majmudar Dep. p 93:11-14); Malanum walked only on

_____

[3] When asked whether she could have turned back and gone down 15th Street, Friedman

explained "when I was up to that point I had already crossed the street and where I showed you

on the map, and so it didn't make any sense to do that."

the 16th Street sidewalk, and never walked on the East 16th Street roadway (*see* Malanum Dep. pp. 265:22-23; 266:13-14; 270:8-271:2;); Walsh was on the 16th street sidewalk and not in the roadway, aside from when she crossed the street (*see* Walsh dep. pp. 31:9-20); Friedman remained on the sidewalk at all times (*see* Friedman Dep. pp. 266:4-7, 287:8-11); Maddox was on the sidewalk (*see* Maddox Dep. p. 82:2-5); and Stipe was on the sidewalk (*see* Stipe Dep. p. 29:5-7). In addition, the evidence is undisputed that many other plaintiffs never walked in the roadway. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 34. Plaintiffs assert that there is no genuine dispute that many individuals, including Chandra, Majmudar, Malanum, Walsh, Friedman, Maddox ,and Stipe, walked on the sidewalk.

35.     Plaintiffs do not dispute that people turned from Union Square East onto 16th Street; plaintiffs dispute that all individuals turning east onto East 16th Street were "participants in the 16th Street Parade," *see* response to defendants' paragraphs 12 and 14 *supra*. *See also* Malanum Dep. p. 263:16-25; Chandra Dep. p. 36-37:25-1; Friedman Dep. pp. 278:3-6; 286:18-20, 342:17-24, 343:15-344:6.

36.     Plaintiffs do not dispute that some people walked eastbound on East 16th street toward Irving Place. Plaintiff's dispute that all individuals proceeding eastbound on East 16th Street were "participants in the 16th Street Parade," *see* response to defendants' paragraphs 12 and 14 *supra*. The citations by defendants to the deposition testimony of Malanum, Chandra, and Majmudar do not support the assertion that these plaintiffs were participating in a "parade" as they walked down East 16th street. Malanum testified that as she was walking down the 16th street sidewalk she was "looking and listening and probably chatting with Sonia." Malanum Dep. pp. 270:25-271:2. Chandra testified that while on 16th street she was walking behind the band and further, "hanging out there deciding if actually we would be eating there and I just wanted to

hear the music for a minute or two longer." Chandra Dep. pp. 39:4-18,64-65:25-1. Majmudar

testified that people were turned down 16th street by the police when they reached the barricade

on Union Square East and she proceeded in the same direction. Majmudar Dep. pp. 78:21-25,

80:2-23.

37.    Plaintiffs dispute the facts stated in defendants' paragraph 37, and incorporate by

reference *Dinler et al. v. City of New York et al.*, 04-cv-07921, Plaintiffs' Response to

Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, paragraph 37. In

addition, the defendants' two citations do not in fact support the facts asserted.  Casper's 50-h

testimony was that there were more people in Union Square than on 16th Street.  There is no

mention of the number of people on Union Square East.  Casper 50-h p. 28:3-6. The testimony of

Waters cited by defendants is:

   Q. Then what happened with the band and the followers?

   A. I think that most people went to 16th Street, but I am not sure because as I said when I
   turned onto 16th Street the whole band that I originally stopped to see, they were some,
   but not all of them.

Waters Dep. p 34:8-13.

38.    Plaintiffs dispute defendants paragraph 38 to the extent that it implies that all

persons present on East 16th Street were "participants in the 16th Street Parade," *see* response to

defendants' paragraph 14 *supra*.  Plaintiffs also dispute that Plaintiffs, or other individuals, were

"violat[ing] the law" at any time on East 16th Street.  The evidence is undisputed that many

individuals, including MacNamara, Adams, and Kennedy Plaintiffs, never violated the law,

walked only on the sidewalk, never obstructed vehicular or pedestrian traffic, had no knowledge

of whether there was a permit or whether one was required, were never given fair warning that

they were engaged in any illegal conduct, and were never given an order to disperse or

opportunity to disperse. *See* Chandra Dep. pp. 35:25-36:2, 124:24-125:1, 126:9-13; Majmudar

Dep. p. 79 6-8; Malanum Dep. pp. 213:13-214:10, 256:11-24, 265:22-23, 266:13-14, 270:8-

271:2, 276:8-11, 277:23-278:23;  Friedman Dep. pp. 242:17-24. Katz's testimony, cited by

defendants, was:

> Q. Did you observe anyone else in addition to yourself leaving the street and entering the sidewalk after the police directed you to turn onto East 16th Street?
>
> A. I'm not sure. No, I did not specifically observe that.  I ended up talking to lots of people who just happened to be on the sidewalk and found themselves in the same predicament.
>
> Q. Do you recall talking to anyone specific?
>
> A. Yes.  Sure. I can remember.  I don't remember the names of any of the people that I spoke with but, yes.  Sure.  I remember speaking to a photographer.  I remember speaking to someone who had taken a walk out of their apartment to get milk and cigarettes.

Katz Dep. p 109:13-25

In addition, the uncontroverted evidence shows that many other plaintiffs present on East 16th

Street never violated any law at any time.  *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph

38.  Plaintiffs assert that there is no genuine dispute about the fact that many people on East 16th

Street were not "participants" and were not violating the law, and that many "participants" on

East 16th Street were not violating the law.

    39.      Plaintiffs dispute the facts in defendants' paragraph 39.  The sources cited by

defendants to not establish that either Essig or Dieckmann observed any actual blockage of

vehicular or pedestrian traffic.  Defendant Essig testified that individuals were taking up the

"whole street" on East 16th Street, but he did not testify that he actually witnessed any vehicular

traffic being blocked on East 16th Street.  *See* Essig Dep. at 104:12-17.  With regard to sidewalk

traffic, the source cited by defendants shows that Defendant Essig's only testimony about the

East 16th Street sidewalks was that "there was [sic] some people on sidewalks."  *Id*.  Essig gave

no testimony regarding who those persons were or whether he observed any actual obstruction of pedestrian traffic. *Id.* Similarly, the source cited by the Defendants does not show that Dieckmann observed any blockage of vehicular or pedestrian traffic on East 16th Street. In fact, Dieckmann testified that he could not recall any pedestrians on the East 16th Sidewalk being obstructed. *See* Dieckmann Dep. at 97:20-24. Dieckmann testified that the sidewalks were "totally blocked" only *after* "people decided to move back onto the sidewalks" in response to the direction of police officers. Dieckmann Dep. at 182:9-183:8. Plaintiffs assert that there is no genuine dispute that neither Essig nor Dieckmann observed any actual blockage of vehicular or pedestrian traffic on East 16th Street. In addition, Plaintiffs assert that any dispute about this fact is not material to the summary judgment issues currently pending before the court, for two reasons. First, regardless of what Essig and Dieckmann assert that they witnessed on East 16th Street, the uncontroverted evidence shows that many of the MacNamara, Adams and Kennedy Plaintiffs never blocked pedestrian or vehicular traffic at any time. *See* responses to defendants' paragraphs 28 and 30, *supra.* The evidence is similarly undisputed that many other plaintiffs never blocked pedestrian or vehicular traffic at any time. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 28, 30, 39. Second, plaintiffs assert there is no genuine dispute that Essig and Dieckmann made the decision to arrest based on the conduct they observed as people left Union Square Park and walked onto Union Square East, before anyone entered East 16th Street. *See* Essig Dep. at pp. 167:4-168:10; 731:24-732:13; 755:17-756:4; 797; Dieckmann Dep. at pp. 91-92, 110, 118-119. For both these reasons, any dispute about what Essig and Dieckmann alleged they observed people doing on East 16th Street is not material to the summary judgment issues currently pending before the court.

40.     The plaintiffs dispute that any congestion was caused by an "unpermitted parade," and note that the police lines formed on Union Square East and 16th street, among other things, may have caused congestion. This dispute is not material to the summary judgment issues currently pending before the court.

41.     Plaintiffs do not dispute the facts stated in defendants' paragraph 41.

42.     Plaintiffs dispute that, at the time that the plaintiffs were on East 16th Street near Irving Place, the line of police officers extended only from curb to curb. When plaintiffs were present on East 16th Street near Irving Place the line reached from building wall to building wall, across both the streets and the sidewalks. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 42. The testimony of Officer Byrne, cited by defendants, that the orange mesh was at first only curb to curb is not supported by the video evidence, and at any rate is not relevant because the video shows that by the time the orange mesh was deployed, the crowd was turning back toward the Union Square Park end of the block. *See* Byrne Dep. p. 54:6-22. The testimony of Officer Sam regarding the mesh referred to the time after arrests had started, by this time there is no question that the Irving Place end of 16th had been blocked for quite a while. *See* Sam Dep. p. 229:3-25. The cited testimony of Officers Connelly and Cortright simply stated, incorrectly, that the Irving Place end of 16th Street was blocked by officers on foot. *See* Connolly Dep. p. 43:8-11, Cortright 85:6-10. Captain Laera, although remembering correctly that the Irving Place end of 16th was blocked by scooters, stated that "as best as he can remember" the scooters were in the street only. Laera Dep. pp. 35:23-36:7. All of this testimony is contradicted by the testimony of the officers in command of the scooter squad and the video evidence. Captain Chico, who was in command of the scooter squad testified that when they formed the line on 16th Street at the Irving Place end of the block he tried to have it wheel to wheel, building line to building line.

Chico Dep. p 107:15-20.  Sergeant Sarrubbo's testimony is that when the scooters arrived at the

Irving Place end of 16th Street police "placed [their] scooters from building line to building line

on 16th Street."  Sarrubbo Dep. p. 43:11-13. This is clearly supported by the video evidence.  *See*

Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary

Judgment at the Site of the 16th Street Arrests: Rothman Video at 32:30 to 33:15; Hall Video at

19:03; TARU 86 Video at 19:04.  The video also shows that the orange netting, deployed

building line to building line, was not set up until the crowd was turning back toward Union

Square Park. *See Id.*, Vault Video 33:00-36:00. Plaintiffs assert that there is no genuine dispute

that almost immediately after the police line was formed, it extended from building to building,

across both the streets and sidewalks.

     43.     Plaintiffs dispute defendants' paragraph 43 to the extent that it implies that all

individuals present were "participants in the 16th Street Parade," *see* response to defendants'

paragraph 14 *supra*, and to the extent it implies that all individuals were free to exit East 16th

Street at Irving Place.  The undisputed evidence shows that all the MacNamara, Adams and

Kennedy plaintiffs wanted to leave and would have done so but for the line of police officers.

Plaintiff Chandra was unable to exit the block at 16th Street and Irving because police blocked it;

she asked police officers where she could go and was told that she could not exit at Irving Place,

but should go to the "other side."  Chandra Dep. pp. 43:15-24. Plaintiff Majmudar stopped

walking east on 16th Street when the people in front of her stopped, she saw a police barricade

that was "to stop anybody or anything from moving forward," from what she heard and saw she

believed that "they were not letting people go that way," she then walked to the other side of 16th

Street to attempt to leave. Majmudar Dep. pp. 86:9-87:10; 88:2-3; 89:1-4; 92:9-12. Plaintiff

Malanum observed a police barricade at Irving Place and heard people saying the police would

not let people cross; she did not see anyone getting through; she turned around to walk back toward the other side of 16th Street. Malanum Dep. pp 277:1-278:1; 285:1-23. Plaintiff Walsh observed the blockade near Irving Plaza and turned around to try and get out the way she came in. Walsh Dep. 83:18-21, 84:12-24; 85:5-14. Plaintiff Friedman was stopped at East 16th Street and Irving Place by police barricades and asked the officers if she could leave; she was told no. Friedman Dep. pp. 289:8-290:6; 294:9-19.  Plaintiff Biddle approached a male NYPD officer, showed him her Legal Observer badge, and asked him to allow her to leave; he responded, "No, we hate you people." Biddle Dep. pp. 24:14-25:8. In addition, undisputed evidence shows that other plaintiffs wanted to leave but were prevented from doing so by the police lines. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 43.  Moreover, the fact asserted by defendants is flatly contradicted by Griffith's full testimony, cited in part by defendants:

> Q. Did you see anyone at all let out on the Irving Place side?

> A. I did not.

Griffith Dep. p. 61:21-22.

The defendants' citation to Griffith's testimony for the fact that people were free to leave is as follows:

> Q. In that time did anybody leave in the [sic] East 16[th] Street through the Union Square East side?

> A. I assume.  I don't know.  I don't know for sure.  There were quite a few people in the square, that square block area.  I'm sure somebody snuck out.

Griffith Dep. p. 62:2-6.

The testimony of Kaye, cited by defendants in support of their statement, was that when she saw the police line at Irving Place end "It was scary."  She went on to say perhaps a single person

could have squeezed by the line of officers, "but I think that didn't even seem like an option to me and to try to physically get past a wall of police officers whether or not they're physically blocking the sidewalk is not something that would have occurred to me." Kaye Dep. pp 105:18-106:3. *See also* Plaintiffs' response to paragraph 42 *supra*; Exhibit B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: Rothman Video at 32:40-33:10 (showing a cameraman near the front of the crowd approaching Irving Place being maced as he tries to leave on the sidewalk). Plaintiffs assert that there is no genuine dispute about the fact that individuals who wanted to leave East 16th Street were unable to do so because of the police line at Irving Place.

44.     Plaintiffs do not dispute the facts in defendants' paragraph 44, except as stated in response to paragraph 43 *supra*. Plaintiffs note that the testimony of Flaton cited in support of this statement is misleading. He did see some people at the beginning of the crowd get past the police line before all the scooters were in place; it would be more accurate to say that some people were able to get to Irving Place before the police were able to completely seal the block off. *See* Flaton Dep. p. 145:12-16, *see also* Exhibit A to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: TARU Video 63 at 19:04-06. The video evidence cited in support of this statement is also misleading at best. For example, 15 seconds of IWV 1-51 from 11:40-11:55 is cited. Assuming this is what has been identified as IWV 1051 on the disc provided to counsel, these 15 seconds, while showing the Irving Place end of the street, do not focus on either corner, and in fact appear to show a person being turned away from the orange netting by an officer with a nightstick. (Chapter 5, IWV 1051 11:40-11:55). What the video evidence does show is that people from the *press*, particularly with video cameras, were being allowed, or escorted, out of the block at the

Irving Place end.  *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of

Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: Hall video at

19:03:30-04:30 (press covering people sitting down in the roadway are physically led away from

the scene by police);  Corley video at 00:00:20 to 01:10  (an officer tells the cameramen that if

they don't leave right now they won't be able to leave, if they are from the press they have to go

right now, to "get out," cameramen are heard saying that they had about three seconds to get

out, they decide that as long as they are on the sidewalk they are okay); TARU Video 63 at

19:05:30-06:10 (shows press, with video cameras, who have been escorted out of the block at the

corner of 16th and Irving Place); Coppola Video 2:02:15-03:00 (cameraman allowed out of

orange netting after arrests begin); Dinler Video at 43:55-44:10 ("they are getting all the

cameramen out, they can't stop this, they have been pulling all the camera people out the whole

time"); Hall Video at 19:32:40-32:55 (after everyone sitting down under arrest the crowd is

asked if anyone present has NYPD press credentials).  Of course people covering the event

without NYPD press credentials were arrested on August 31st; for example, Janie Altongy

(helping husband cover event), Eric Corley (covering event for WBAI), and Sada Stipe (covering

event for journalism class).

45.     Plaintiffs do not dispute that police officers formed a line on the western end of

East 16th Street.  Plaintiff dispute that the only effect of this line was to "keep more marchers

from entering 16th Street and to keep innocent bystanders out," rather than to block people in

who the NYPD intended to arrest. The uncontested evidence shows that most of the plaintiffs

would have left if allowed; for example, Chandra, Majmudar, Malanum, Walsh, and Friedman

wanted to leave and would have done so if permitted.  Plaintiff Chandra tried to leave from the

western end of 16th Street but was met by a line of officers; Chandra repeatedly asked officers

how she could leave but was ordered to sit or stand on the north sidewalk. Chandra Dep. pp 76:3-77:4. Majmudar observed that police had barricaded the west side of 16th Street and were not allowing people to leave; she repeatedly asked the officer barricading the street if she could leave but officers refused to let her out. Majmudar Dep. pp. 104:5-106:22. Malanum observed a line of police officers blocking the Union Square East end of the street; she tried to get through to Union Square but the police stated you can't go through here. Malanum Dep. pp. 279:8-281:6. Plaintiff Walsh attempted to exit the block on the west side of 16th Street, asking officers "I'm not protesting, why are you blocking me in?" but officers ignored her. Walsh Dep. pp 26:14-27:24, 37:8-12, 83:11-85:10. Friedman attempted to exit the block on the west side of East 16th street, and asked officers there if she could leave, but was told no. Friedman Dep. pp. 295:14-23. Furthermore, the undisputed evidence shows that other plaintiffs wanted to leave but from the western side of East 16th Street but were prevented from doing so by the police lines. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 45. Plaintiffs assert that there is no genuine dispute about the fact that individuals who wanted to leave East 16th Street were unable to do so because of the police line at the western end of East 16th Street.

46.     Plaintiffs dispute defendants' paragraph 46 to the extent that it implies that all individuals present were "participants in the 16th Street Parade," *see* response to defendants' paragraph 14 *supra*, and to the extent it implies that many individuals were free to exit near the western end of East 16th Street. The undisputed evidence shows that Chandra, Majmudar, Malanum, Walsh, and Friedman attempted to exit East 16th Street at the western end and were not permitted to leave. *See* response to defendant's paragraph 45, *supra*. In addition, the undisputed evidence shows that other plaintiffs wanted to leave East 16th Street at the western end but were prevented from doing so by the police line. *See* RNC Plaintiffs' Rule 56.1

Responses at paragraph 46.  Plaintiffs assert that there is no genuine dispute about the fact that individuals who and wanted to exit East 16th Street were unable to do so because of the police line at the western end of East 16th Street.

47.     Plaintiffs dispute the facts in defendants' paragraph 47 to the extent it implies that all individuals present were "participants in the 16th Street Parade," *see* response to defendants' paragraph 14 *supra*, and to the extent it implies that all individuals were free to exit East 16th Street.   The undisputed evidence shows that all the MacNamara, Adams and Kennedy Plaintiffs wanted to leave and would have done so if permitted; and that many of the MacNamara, Adams and Kennedy Plaintiffs attempted to leave East 16th Street at both ends, but were prevented from doing so by the police.  *See* response to defendants' paragraphs 43, 45 and 46, *supra*.  This is also supported by the officers supervising the lines at either end of 16th Street, (Keegan, Chico, and Sarrubbo), and the video evidence.  *See* response to defendants' paragraphs 42, *supra* (Chico and Sarrubbo formed a line at Irving Place from building line to building line). Indeed the testimony of the officer supervising the line on the Union Square East end of 16th Street, Lieutenant Mark Keegan, was that as soon as they saw the crowd returning from the Irving Place end of 16th Street, "I did tell my officers that nobody should leave 16[th] Street."  Keegan Dep. pp. 45:24-46:6.  He went on to say that it was a nice containment and that his officers told the crowd "you are not going to get back to Union Square East; just wait here.  Keegan Dep. p. 47:2-9. When asked if people could leave the block Lt. Keegan answered:

A, Well, it really – I wasn't going to let anybody leave because it seemed like a lot of people coming, like 25, 30 people.  It just seemed like they wanted to rush back to Union Square East and the march, so.

Q. They weren't allowed?

A. They weren't allowed, no.

Q. What happened next after you formed a line and the group came back up towards your end?

A. We just contained them. And we just held the line.

Keegan Dep. 48:8-18.

Keegan testified that his men held the line until pretty much everyone on 16th Street was arrested. Keegan Dep. p.49:7-17. See Essig Dep. p. 307:10-12 ("Once we had our lines established, people inside were going to be arrested"). This is completely supported by the video evidence. *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: Hall Video, Dinler Video, et al. In addition, the undisputed evidence shows that many other plaintiffs attempted to exit East 16th Street at either side but were prevented from doing so by the police lines on either end. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 43, 45, 46, and 47. Plaintiffs assert that there is no genuine dispute about the fact that individuals who had violated no law and wanted to leave were unable to do so because of the police lines on either end of East 16th Street.

48.    Plaintiffs dispute that Essig and Dieckmann observed "numerous" people leave 16th Street. Essig testified that he only had personal knowledge of two people leaving the block. Essig Dep. p. 156:5-6. He observed only "approximately over 25, less than 40" people exit East 16th Street, a relatively small proportion of the hundreds of individuals seized on East 16th Street. No distinction was made during this testimony as to whether these people were NYPD approved press who were escorted off the block. *See* Essig Dep. 156:12-16 and paragraph 44 *supra*. Essig admitted that he didn't have any idea if they were press, he had no personal knowledge of why they were escorted off the block. Essig Dep. p 308:14-17. Dieckmann

"believed" that others left the block, but the evidence is undisputed that he did not actually observe numerous people leave East 16th Street. Dieckmann's testimony was that "I can't say that I personally saw [people] leaving. But I believe a lot of them did, you know." *See* Dieckmann Dep. 69:11-13. Even with regard to Dieckmann's "belief," he conceded that "I can't say a number. The only one I can say for sure I remember, as I said yesterday, *three or four people* that was brought to my attention." *See* Dieckmann Dep. p. 435:4-14 (emphasis added).

49.    Plaintiffs dispute that people were "free to leave" and chose not to. The testimony cited by defendants does not support the fact asserted. Plaintiff Sperry simply testified that he did not attempt to "walk past the barricades," which in no way demonstrates that he was free to leave. Sperry Dep. p. 78:2-8. Plaintiff Steitz testified that after he saw a police line blocking Union Square East (*not* 16th Street) he considered leaving the demonstration but did not because he wanted to express his views; the cited testimony does not discuss circumstances *after* police lines were formed on 16th Street. Steitz Dep. p. 129:13-24. Plaintiff Thomas Kennedy testified that *before* the police line on the west end of 16th street had formed he thought he might be able to quickly "scoot out" of the area, but he did not do so because he was with two female companions and did not want to "run away" and "leave them to get snared." Kennedy Dep. p. 208:3-19. Kennedy states that after the line had formed and there was not a "clear path to freedom" he did not make further efforts to leave. *Id*. p. 208:20-25. None of the cited testimony supports the assertion that, after the police formed lines on both ends of 16th Street, people present on 16th Street were "free to exit." Rather, the uncontested evidence show that the plaintiffs wanted to leave and would have left if given the opportunity to do so, but that police officers refused to let them exit East 16th Street, *see supra* response to defendants' paragraphs 43-47.

50.     Plaintiffs do not dispute that *some* plaintiffs did not, after 16th Street was barricaded in on both sides by lines of police officers, approach the officers who had lined up in riot gear and ask to leave. Plaintiffs do dispute the implication that no police officers were asked by any individual for permission to leave.  The evidence is undisputed that Plaintiffs Biddle, Chandra, Majmudar, Walsh, and Friedman asked police officers if they could leave 16th Street. *See* responses to defendants' paragraphs 43 and 45, *supra*. Additional undisputed evidence shows that other plaintiffs asked officers for permission to leave as well.  *See* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 43-47 and 50.  Moreover, defendant's citations to the deposition testimony of Plaintiffs Majmudar, Biddle, Hill, Kennedy, Kaye, and Wilcox, are misleading. Prior to the section of testimony cited by defendants, Majmudar was asked whether she approached the police and asked to leave, and responded "I asked, but just a little bit later." Majmudar Dep. p. 95: 9-17.The defendants then cite only to the next question: "I'm saying, at this point, during these five or ten minutes before you decided to turn back around and head westerly on 16[th] Street, you had not done that, correct?" to which Majmudar answered "That's correct." *Id*. p. 95:19-22. Majmudar went on to testify that she repeatedly asked the officers barricading the west side of 16th street if she could leave. *Id*. pp. 104:5-106:22. Defendants have also cited a section of Biddle's testimony in which she was asked whether Biddle asked her arresting officer if she could leave, and Biddle responded "No." Biddle Dep. 33:9-11. Yet Biddle also testified that *before* being arrested, she approached a male NYPD officer asked him to allow her to leave, but was told she couldn't. *Id*. pp. 24:14-25:8. Plaintiff Hill did try to talk to an officer about what was happening, but the officer refused to talk with him.  Hill Dep. p. 117:22-118:1.  Kennedy's testimony was that he said to the wall of police officers in front of him: "what's going on, we didn't do anything, and why can't we leave." Kennedy Dep. p. 209:18-25.

Plaintiff Kaye's testimony is that the police line "was scary." Kaye Dep. p 100: 23. Plaintiff

Wilcox stated that she "turned to go back to Union Square. There was no other way to go and as

we turned to go back to Union Square headset (sic) up orange netting on Union Square East, so

there was nowhere to go and there was no opportunity to leave if we wanted to, and there were a

number of folks that weren't even part of the whole demonstration, again, folks coming out of

that office building, that were trying to get out of the crowd and they -- they weren't letting

anyone leave . . . ." Wilcox dep. p.77:13-21. *See also* video showing what can be safely

characterized as a "scary" police officer yelling at people on the east end of south side walk to

"be good to themselves, start moving, Go Go," instructing people to move to the middle of the

crowd, *See* Exhibit B to Declaration of Jonathan C. Moore in Support of Motion for Partial

Summary Judgment at the Site of the 16th Street Arrests: Coppola Video at 1:57 to 1:58; and

video of officers at the west end of the south sidewalk, when approached by people with

questions, telling them to "get back in," "go back, go back," and "No questions, Get Back." *Id.*,

Hall Video at 19:13:-19:15. Plaintiffs assert that there is no genuine dispute about the undisputed

fact that some police officers were asked by individuals for permission to leave, and the officers

refused those requests.

    51.    Plaintiffs dispute the facts in defendants' paragraph 51. The defendants' assertion

that "the group that remains on East 16th Street continues to engage in civil disobedience," is not

a proper submission for an undisputed fact pursuant to Local Rule 56.1. The phrase "civil

disobedience" is not defined by the defendants nor does it describe any particular action that can

be reasonably evaluated by plaintiffs as a Rule 56.1 fact subject to dispute or stipulation. More

importantly, the uncontroverted evidence shows that many people trapped on East 16th Street,

including MacNamara, Adams, and Kennedy Plaintiffs, were doing nothing more than standing

on the sidewalk and, ultimately, obeying police orders to sit down, which could not be characterized as "civil disobedience" under any definition. *See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 51, *see also* response to defendants' paragraph 38, *supra*. Plaintiffs assert that there is no genuine dispute about the undisputed fact that many individuals detained on East 16th Street, including the MacNamara, Adams, and Kennedy Plaintiffs, never violated any laws. In addition, the testimony cited by defendants' does not support the fact asserted. For example, Rosin's testimony, according to the page prior to the one cited, refers to the period after the police had sealed off both ends of the block and told the crowd they will not be able to leave. Rosin Dep. pp. 189:15-190:11. The testimony of D. Geocos cited is "I saw it after we were told to turn around and we were blocked off, once again, on the other side of East 16[th] Street going towards Union Square East." D. Geocos Dep. p. 96:2-4.

    52.    Plaintiffs do not dispute the facts in defendants' paragraph 52 but assert that these facts are not material to the summary judgment issues pending before the court.

    53.    Plaintiffs dispute that "many" individuals refused to comply with orders to move onto the sidewalk. Video evidence show that around 7:06 PM, Lt. Johnson and a squad of uniformed officers ordered people out of the street and onto the sidewalks. All or most all of the people in the process got onto the sidewalks. *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests: TARU Video 63 at 7:06:30, TARU Video 87 at 19:07, Hall Video at 19:06, Vault Video at 36:12, Viertel Video at 33:00 to 36:00, Corley Video at 2:40 to 3:30, Dinler Video at 30:00 to 32:00, and Rothman Video at 34:30 to 36:30. In addition, defendants' citations do not support the fact asserted. Plaintiff Katz's testimony immediately follows a clarification by counsel that the location under discussion is Union Square East, rather than East 16th Street. *See* Katz Dep.

109:10-12.  In the context of the prior page it is clear that Katz, after saying hello to an old

friend, not having any idea what the crowd of people on Union Square East were doing, moved

to the sidewalk as he turned onto East 16th Street and stayed on the sidewalk from that point

forward.  Katz Dep. pp. 108:3-25, 109:13-14.  Notably, Jabour's cited 50-h testimony

specifically states that he did *not* remember seeing anyone refuse to comply with an order to

move onto the sidewalk:

> Q.  Were you given any directions by - -
>
> A. Oh, they kept saying get on the sidewalk.  But I was already on the sidewalk.  But they were saying that to other people.
>
> Q. Did you observe other people not complying with the police's direction to get on the sidewalk?
>
> A. Possibly.  I'm not sure.  I don't think so.

The video citations provided by defendants are to the time period when, after getting on the

sidewalk, the crowd was stopped from going west by Officer Keegan's line, *see supra* paragraph

47, and they spilled back into the street for a short time.  *See* Exhibits A and B to Declaration of

Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th

Street Arrests: Dinler Video at 32:00 to 36:00.  After the arrests started some people, including

press, went back into the street for a better view, but the crowd followed instructions to get back

on the sidewalk.  *See Id.,* TARU Video 64 at 38:24 (crowd, including press, on north sidewalk

asked to get back on sidewalk and they comply), Hall Video at 19:12:38 (crowd, including press,

on west end of south sidewalk asked to get on sidewalk and they comply).

54.     Plaintiffs do not dispute that Essig and/or Dieckmann made a decision to arrest

the plaintiffs. However, plaintiffs do dispute that this decision was made at this point in the

narrative, as suggested by defendants. Defendants' placement of the decision to arrest near the

end of their 56.1 statement is a disingenuous attempt to mislead the Court. In fact, the decision to

arrest was made as soon as people left the park and without any notice or order to disperse or

opportunity to disperse. See responses to defendants' paragraphs 39, *supra*, and 55, *infra*.

Whether Essig consulted with Dieckmann before deciding to arrest the plaintiffs is not material

to the summary judgment issues pending before the Court.

55.     Plaintiffs dispute the facts in defendants' paragraph 55 to the extent they imply

that the persons arrested were part of any uniform "group" related to "the 16th Street Parade," *see*

*supra* response to defendants' paragraph 14. Plaintiffs further dispute that Essig and Dieckmann

made the decision to arrest based on conduct they observed on East 16th Street.  The

uncontroverted evidence shows that Essig and Dieckmann made the decision to arrest

immediately after they observed individuals walking out of Union Square Park and onto Union

Square East.  *See* Essig Dep. at pp. 167:4-168:10; 731:24-732:13; 755:17-756:4; 797;

Dieckmann Dep. at pp. 91-92, 110, 118-119.  Plaintiffs assert there is no genuine dispute about

the fact that Essig and Dieckmann's decision to arrest was based on the conduct they observed as

individuals walked out of Union Square Park and onto Union Square East.

56.     Plaintiffs do not dispute that some credentialed press were permitted to leave, but

dispute that all credentialed press were allowed to leave East 16th Street.  The evidence shows

that plaintiffs who were credentialed journalists were not permitted to leave and were arrested.

*See* RNC Plaintiffs' Rule 56.1 Responses at paragraph 56. Essig's testimony was that "Once we

had our lines established, people inside were going to be arrested."  Essig Dep. p. 307:10-12.

Corley, a journalist with WBAI who had credentials from WBAI and Independent Media Center

was not allowed to leave.  Corley Dep. p. 78:17-25. Hill observed that some credentialed press

were released, but others were not, and it upset the people not allowed to leave.  Hill Dep. pp.

116:16-117:21.  Codel's testimony is that when he showed his Independent Media credentials to

the police media representative he was laughed at and not allowed to leave. Codel 50-h p. 29:2-13. Plaintiffs assert there is no genuine dispute about the fact that defendants arrested credentialed journalists.

57.     Plaintiffs dispute that Essig, Dieckmann, and the four other NYPD officers whose testimony is cited in defendant's paragraph 57 believed that everyone who was arrested on East 16th Street had previously violated the law. The evidence is undisputed that the group of individuals who left Union Square Park and walked onto the roadway of Union Square East were surrounded and followed by numerous people walking on the sidewalks obeying all laws, including curious onlookers, legal observers, journalists, and others. *See* response to defendants' paragraphs 12 and 14, *supra*; *see also* RNC Plaintiffs' Rule 56.1 Responses at paragraphs 12, 14, 57. The evidence is undisputed that, on a temperate summer evening just after work on a weekday, this undifferentiated group proceeded down a totally open city block in the heart of Manhattan, which was already crowded with people going to restaurants, shops and residences on East 16th Street, as well as individuals just passing through East 16th Street on their way to work, home, the subway, Union Square Park, or some other location. *Id.* The evidence is undisputed that the individuals ultimately detained and arrested by defendants on East 16th Street represented a wholly undifferentiated group of people that included participants who had never broken any law; legal observers; curious onlookers attracted by the music and noise; journalists; people who lived and worked in the area; and passersby. *Id.* Plaintiffs assert there is no genuine dispute that Essig and Dieckmann did not actually believe that everyone they arrested had violated the law and, given the undisputed factual record cited above, their testimony to the contrary should not be credited when resolving these issues on summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). More importantly, Essig and Dieckmann's belief is not relevant to resolving whether there was probable cause to arrest plaintiffs "from the standpoint of an objectively reasonable officer," *See Marcavage v. City of New York*, 2010 WL 3910355 (S.D.N.Y. Sept. 29, 2010), citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Under the circumstances, no objectively reasonable police officer could conclude that the individuals arrested on 16th Street were part of a group that knowingly was violating the law. Therefore, plaintiffs assert that any dispute over Essig and Dieckmann's subjective belief is not material to the summary judgment issues currently pending before the court.

58.    Plaintiffs do not dispute that Mr. Galperin gave the described testimony, but his opinion is not a fact nor is it material to the summary judgment issues currently pending before the court.

59.    Plaintiffs dispute the implication that everyone who was on East 16th Street, and subsequently arrested, was "part of the 16th Street Parade," *see* response to defendants' paragraph 14. In addition, one source cited by defendants does not establish the fact asserted. *See* Karlin Dep. p. 112:11-13 (testimony about deponent holding a banner).

60.    Plaintiffs dispute defendants' paragraph 60, and incorporate by reference *Dinler et al. v. City of New York et al.*, 04-cv-07921, Plaintiffs' Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1, paragraph 60. In addition, the testimony cited by defendants does not support the fact asserted. For example, Pryor's testimony regarding the accuracy of the video was in reference to how crowded the sidewalk was just prior to the time notice was given that everyone was under arrest. The notice of arrest was given on the south

sidewalk at about 7:25 PM; by that time the NYPD had been compressing people into an ever increasingly tight crowd for at least 15 minutes. *See* Exhibits A and B to Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street: video east end of south sidewalk: Coppola Video at 1:57:00 to 2:02:30; Dinler Video at 35:40 to 40:30; TARU Video 87 at 19:14; TARU Video 92 at 7:15PM; video west end of south sidewalk: Hall Video at 19:12-19:14. Jones' testimony cited by defendants was that although it didn't appear that traffic could get through, he didn't know that traffic was trying to get though. Jones Dep. p. 178:10-15. Vault's testimony was that a cab shown on 16th street was not able to proceed down 16th Street; there is no discussion of whether this was a result of the crowd being stopped by the line of officers blocking the Irving Place end of 16th Street. Vault Dep. pp. 146:21-147:2.

61.    Plaintiffs do not dispute the facts in defendants' paragraph 61 but assert that these facts are not material to the summary judgment issues currently pending before the court. Plaintiffs note that in fact, according to the defendants own documents, 1187 people were arrested on August 31, 2004 and incarcerated first at Pier 57 and then at Manhattan Central Booking. Of the 1187 people arrested on August 31, 2004, over 90%, or 1069, were charged with nothing more serious than a violation, which should have made them eligible for a summons, but a summons was denied them because of the defendants' no summons policy. See Exhibit 59 to *MacNamara* Plaintiff's Motion for Class Certification.

Dated:          November 3, 2011
                New York, NY

                                    Respectfully submitted,

                                    JONATHAN C. MOORE, Esq.
                                    GIDEON ORION OLIVER, Esq.
                                    ELIZABETH LOGEMANN, Esq.

                                    Beldock Levine & Hoffman, LLP
                                    99 Park Avenue - 16th Floor
                                    New York, New York    10016
                                    (212) 277-5850


                                    *Counsel for the Plaintiff Class in MacNamara*



                                    _____/s_____
                                    Norman F. E. Best
                                    Law Office of Michael L. Spiegel
                                    111 Broadway, Suite 1305
                                    New York, New York 10006
                                    212-587-8558

                                    *Attorney for Plaintiffs*
                                    *Courtney Lee Adams, et al. v The City of New York, et al.*
                                    *Megan Kennedy, et al. v The City of New York, et al.*