UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

DEIRDRE MACNAMARA, *et al.*, individually and on behalf of those similarly situated,

                                          Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity, *et al.*,

                                          Defendants.

------------------------------------------------------------------------- x

04 Civ. 9216 (RJS) (JCF)

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

        Defendants hereby respond to Plaintiff's Rule 56.1 Statement of Undisputed Facts.[1]

**Plaintiff Simon Harak**

        1. Undisputed. Further, it is undisputed that Harak testified at his deposition that he had no role in coordinating the WRL march.

        2. Undisputed. The remainder of this paragraph does not contain statements of material fact that would create a genuine issue for trial.

---

[1] In connection with their Motion for Summary Judgment to Dismiss Plaintiffs' False Arrest Claims at Church and Fulton Streets, defendants submitted a Local Rule 56.1 Statement of Undisputed Facts dated October 3, 2011 ("Defs' 56.1 Statement") (*Schiller* DE 566). Defendants hereby incorporate Defs' 56.1 Statement herein in its entirety, and cite to paragraphs in Defs' 56.1 Statement in both disputing plaintiffs' facts and in making affirmative statements of undisputed facts. In addition, should the Court entertain additional dispositive briefing on issues relevant to facts set forth by plaintiffs in their Rule 56.1 Statement that are outside the scope of the Court's June 20, 2011 Order, defendants will supplement the record and provide additional facts material to such issues.

3. Disputed (Defs' 56.1 Statement at ¶¶ 73-87), except undisputed that plaintiff Harak testified at his deposition that that before the march began, Ed Hedemann told him, based on Hedemann's discussions with the police, that the marchers were "going to go two-by-two."

4. Disputed that "[w]hen the march was about to start there was a policeman directing him and others across Church Street on Fulton." (Harak Depo. 42:17-20, 43:2-5). Chief Monahan was caught by surprise when the march began: he testified at his deposition that while he was speaking with someone, Sgt. O'Connor yelled to him, "Boss, they've started," at which point Chief Monahan "turn[ed] around and [saw] the whole mass of people walking across Church Street to Fulton." (Monahan Depo. (I) 170:25-171:7; *see also* O'Connor Depo. 38:24-39:4 ("we weren't ready for that group that stepped off, I don't believe that they were given any direction to start")).[2]

5. Disputed; there was a larger number of people participating in the march. (Defs' 56.1 Statement at ¶ 30).

6. Disputed that "[t]he police were there and started directing people across the street." (Harak Depo. 42:17-20, 43:2-5; Monahan Depo. (I) 170:25-171:7; O'Connor Depo. 38:24-39:4).

7. Disputed that the marchers crossed Church Street in small groups as police officers were waving them across the street. (Defs' 56.1 Statement at ¶110-113; Harak Depo. 41:6-15, 43:2-5).

8. Undisputed.

---

[2] All documents and testimony cited herein, other than to the videotapes submitted by the *Abdell* plaintiffs, are annexed to the Declaration of Fred M. Weiler in Opposition to Plaintiffs' Motions for Summary Judgment ("Weiler Decl.") being filed in connection with the *Abdell*, *Schiller*, *Macnamara*, *Pagoda*, *Meehan*, and *Botbol* cases.

9. Disputed (Defs' 56.1 Statement at ¶¶ 110-113, 115; Harak Depo. 42:17-20), except undisputed that Harak testified that after he crossed Church Street he heard word that the march had been stopped and that he only went 100-150 feet before the march was stopped.

10. Disputed (Defs' 56.1 Statement at ¶¶ 110-116). In addition, defendants state as a undisputed fact that before deploying the "webbing," police gave a dispersal order but plaintiff and other marchers on Fulton Street refused to disperse from the block. (Defs' 56.1 Statement at ¶¶ 123-129). Undisputed that Harak testified at his deposition that he saw an officer in a white shirt running toward the rear of the march and saying "seal them off."

11. Disputed (Defs' 56.1 Statement at ¶¶ 110-116, 121-122). In addition, defendants state as a undisputed fact that before his arrest, plaintiff Harak was given a dispersal order and an opportunity to disperse from the block but refused to do so. (Defs' 56.1 Statement at ¶¶ 124-129).

12. Disputed. Chief Monahan ordered the arrests only of people on the Fulton Street sidewalk who had committed unlawful conduct. (Defs' 56.1 Statement at ¶¶ 19-21, 106-109, 100-116, 124-134). In addition, defendants state as an undisputed fact that the police released certain people contained behind the mesh who could prove either that they had not been part of the march or that they were properly credentialed media. (Defs' 56.1 Statement at ¶¶ 150-152).

13. Disputed. (Defs' 56.1 Statement at ¶¶ 110-113, 115-116, 133-134). In addition, Judge Francis' November 28, 2006 Order held that such lack of "personal knowledge" "does not preclude the defendants from presenting evidence that a plaintiff was within a group of individuals allegedly engaged in unlawful activity or from arguing that such evidence is

sufficient to demonstrate probable cause." (Macnamara Docket Entry No. 110, p. 4; Defs' 56.1 Statement at ¶¶ 133-134).

14. These are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that plaintiff Harak's flex-cuffs were tight, "especially on the left side," and that "Harak complained to an officer about this but the officer did not loosen the cuffs."

15. This is not a statement of material fact that would create a genuine issue for trial.

16. This is not a statement of material fact that would create a genuine issue for trial, bec ause intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC. (Defendants' Statement of Material Undisputed Facts in Support of their Motion for Summary Judgment on the City's "No-Summons Policy" and "Fingerprinting Policy" During the RNC, *Schiller v. City of New York*, 04-cv-7922, Docket Entry ("DE") 579, at ¶¶ 124-148, 161-164, 173, 200-226; Declaration of Brian M. Jenkins, *Schiller* DE 581; Declaration of Carl. M. Holmberg, *Schiller* DE 580, at ¶¶ 33-38; End User Reports, Bates Nos. 102556, 102563, 102564, 102719, 102721).

17. Undisputed that after his arrest, Harak was taken to Pier 57. The statement that Harak estimates that he stayed at Pier 57 for 12 to 13 hours is not statement of material fact that would create a genuine issue for trial.

18. These are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that the floor at Pier 57 was "gritty and dirty and smelled like an old garage," that "[t]here was oil and waste products on the floor," and that "[w]herever you sat you got dirty." (10/26/04 Colgan City Council Testimony 32:10-14, 61:21-25; Colgan Depo. 185:18-23, 236:7-25, 237:2-4, 260:14-16, 261:5-25, 262:2-25, 263:2-7, 756:22-25, 757:2-25, 758:2-5, 22-25, 759:2-25,760:-2-8; Giordano Depo. 174:4-10, 18-25, 175:2-9, 200:5-11, 211:13-25, 212:2-8, 284:19-25, 285:2-14, 286:2-16; Yanosik Depo. 36:21-25; Grimes Depo. 18:23-25,19:2-17, 57:5-22.)

19. Disputed that "[w]hen he was arrested Father Harak was not doing anything illegal." (Defs' 56.1 Statement at ¶¶ 17-21, 106-109, 111-113, 115-116, 124-129; Harak Depo. 41:10-15). The statement that Harak "was very sad at the pier because he did not think that in the United States someone could be arrested without probable cause" is not a statement of material fact that would create a genuine issue for trial.

20. Undisputed.

21. Undisputed.

22. Undisputed that plaintiff Harak was released after receiving a Desk Appearance Ticket. The statement that he was released on September 1st at around 1:30 P.M. is not a statement of material fact that would create a genuine issue for trial.

23. Disputed that "[o]n August 31, 2004, the plaintiff Simon Harak obeyed all police orders." (Defs' 56.1 Statement at ¶¶ 17-21, 106-109, 110-113, 115-116, 124-129; Harak Depo. 41:10-15).

24. Disputed that Harak "did not hear any instructions from the police that the people on Fulton Street were blocking the sidewalk before the march was stopped." (Defs' 56.1 Statement at ¶¶ 121-122).

25. Disputed that Harak "was never given nor did he hear any order to disperse." (Defs' 56.1 Statement at ¶¶ 124-129).

26. Undisputed that Harak "knew there was no permit for the march," except defendants dispute, and do not concede the legal proposition Harak believed to be true, that "if you were just walking on the sidewalk you didn't need a permit."

27. Disputed that Harak and other marchers "stepp[ed] aside so pedestrians from the other direction could pass" and that "[a]t no time did Harak intend to block pedestrian traffic." (Defs' 56.1 Statement at ¶ 115).

28. Undisputed.

29. Undisputed. In addition, the Manhattan District Attorney's Office's decision "to dismiss the cases on Fulton Street was not a determination that probable cause was lacking at the time of arrest. . . . It was an exercise of our discretion that we did not think it was in the interest of justice to prosecute. It was not a statement that probable cause was lacking in the first place." (Defs' 56.1 Statement at ¶ 157; Crim. Ct. Trans., People v. Hardie, dated Oct. 6, 2004; Crim. Ct. Trans., People v. Schiller, dated Oct. 13, 2004).

30. Disputed that there were no police officers with bullhorns at Church and Fulton Streets on August 31. (Defs' 56.1 Statement at ¶¶ 74-75, 77-81). Disputed that the police did not give warnings to Harak while he was on Fulton Street. (Defs' 56.1 Statement at ¶¶ 121-122).

**Plaintiff Diana Raimondi**

31. These are not statements of material fact that would create a genuine issue for trial.

32. This is not a statement of material fact that would create a genuine issue for trial.

33. Undisputed.

34. Undisputed that plaintiff Raimondi's "plan for the day was to participate in the WRL march." The remainder of this paragraph does not contain statements of material fact that would create a genuine issue for trial.

35. This is not a statement of material fact that would create a genuine issue for trial.

36. Disputed (Defs' 56.1 Statement at ¶¶ 31-54).

37. Disputed. (Defs' 56.1 Statement at ¶¶ 73-81).

38. Undisputed.

39. Disputed. (Defs' 56.1 Statement at ¶ 115; *see also* Boyle Depo. 47:17-21 ("it was a big crowd, it wasn't stopping, and traffic lights change every couple of minutes").

40. Disputed. (Defs' 56.1 Statement at ¶ 115).

41. Undisputed that plaintiff Raimondi testified that she walked approximately 20 yards east of the intersection of Church and Fulton before the crowd stopped.

42. Undisputed. In addition, the orange mesh was deployed only after plaintiff had engaged in unlawful conduct, had been given a dispersal order, and refused to comply with the dispersal order. (Defs' 56.1 Statement at ¶¶ 17-21, 106-109, 110-113, 115-116, 124-129, 143-145).

43. Disputed (Defs' 56.1 Statement at ¶¶ 95, 97, 121-122)

44. Disputed that Raimondi "did not hear an order to disperse." (Defs' 56.1 Statement at ¶¶ 124-129). The statement that "[i]f Raimondi had heard such an order she would have left the march" is not a statement of material fact that would create a genuine issue for trial.

45. Disputed. (Defs' 56.1 Statement at ¶¶ 17-21, 106-109, 110-113, 115-116, 124-129, 143-145).

46. Undisputed. In addition, defendants state as an undisputed fact that Raimondi attempted to disperse after plaintiffs had already been given a dispersal order, after plaintiffs failed to comply with that order, and after Chief Monahan had ordered the arrests of plaintiffs. (Defs' 56.1 Statement at ¶¶ 124-136).

47. Disputed. Chief Monahan ordered the arrests only of people on the Fulton Street sidewalk who had committed unlawful conduct. (Defs' 56.1 Statement at ¶¶ 19-21, 106-109, 100-116, 124-134). In addition, defendants state as an undisputed fact that the police released certain people contained behind the mesh who could prove either that they had not been part of the march or that they were properly credentialed media. (Defs' 56.1 Statement at ¶¶ 150-152).

48. Disputed. (Defs' 56.1 Statement at ¶¶ 110-113, 115-116, 133-134). In addition, Judge Francis' November 28, 2006 Order held that such lack of "personal knowledge" "does not preclude the defendants from presenting evidence that a plaintiff was within a group of individuals allegedly engaged in unlawful activity or from arguing that such evidence is sufficient to demonstrate probable cause." (*Macnamara* DE 110, p. 4; Defs' 56.1 Statement at ¶¶ 133-134).

49. Undisputed that plaintiff Raimondi was flex-cuffed by Officer Boyle. The remaining statements in this paragraph are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that plaintiff Raimondi was in "excruciating pain" from her flex-cuffs.

50. These are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that the floors at Pier 57 were "covered with a black oily film and what [plaintiff Raimondi] believed were puddles of antifreeze" and that the air in Pier 57 "smelled like chemicals and like a car repair store." (10/26/04 Colgan City Council Testimony 32:10-14, 61:21-25; Colgan Depo. 185:18-23, 236:7-25, 237:2-4, 260:14-16, 261:5-25, 262:2-25, 263:2-7, 756:22-25, 757:2-25, 758:2-5, 22-25, 759:2-25,760:-2-8; Giordano Depo. 174:4-10, 18-25, 175:2-9, 200:5-11, 211:13-25, 212:2-8, 284:19-25, 285:2-14, 286:2-16; Yanosik Depo. 36:21-25; Grimes Depo. 18:23-25,19:2-17, 57:5-22.)

51. Undisputed.

52. Undisputed that plaintiff Raimondi "was released from custody on Sept. 2, 2004 at around 7:30 P.M. after being issued a desk appearance ticket." Disputed that receiving a DAT "mean[t] that [Raimondi] had valid identification on her when she was arrested," an inference rather than a fact supported by admissible evidence, such that the Court should strike or disregard this supposed fact. Further, these are not statements of material fact that would create a genuine issue for trial, because intelligence information revealed that people expected to

engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC. (Defendants' Statement of Material Undisputed Facts in Support of their Motion for Summary Judgment on the City's "No-Summons Policy" and "Fingerprinting Policy" During the RNC, *Schiller v. City of New York*, 04-cv-7922, Docket Entry ("DE") 579, at ¶¶ 124-148, 161-164, 173, 200-226; Declaration of Brian M. Jenkins, *Schiller* DE 581; Declaration of Carl. M. Holmberg, *Schiller* DE 580, at ¶¶ 33-38; End User Reports, Bates Nos. 102556, 102563, 102564, 102719, 102721).

53. Undisputed.

54. Disputed that "Raimondi at no time was breaking the law." (Defs' 56.1 Statement at ¶¶ 17-21, 106-109, 110-112, 115-116, 124-129). Disputed that Raimondi believes she was "intentionally arrested based solely on her political views." (*Id.*) The remaining statements in this paragraph are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that plaintiff Raimondi was held for an excessively long period of time and "deliberately kept in unhealthy and toxic conditions." 10/26/04 Colgan City Concl. Tst. 32:10-14, 61:21-25; Colgan Depo. 185:18-23, 236:7-25, 237:2-4, 260:14-16, 261:5-25, 262:2-25, 263:2-7, 756:22-25, 757:2-25, 758:2-5, 22-25, 759:2-25,760:-2-8; Giordano Depo. 174:4-10, 18-25, 175:2-9, 200:5-11, 211:13-25, 212:2-8, 284:19-25, 285:2-14, 286:2-16; Yanosik Depo. 36:21-25; Grimes Depo. 18:23-25,19:2-17, 57:5-22).

55. Undisputed. In addition, the Manhattan District Attorney's Office's decision "to dismiss the cases on Fulton Street was not a determination that probable cause was lacking at

the time of arrest. . . . It was an exercise of our discretion that we did not think it was in the interest of justice to prosecute. It was not a statement that probable cause was lacking in the first place." (Defs' 56.1 Statement, ¶ 157; Crim. Ct. Trans., People v. Hardie, dated Oct. 6, 2004; Crim. Ct. Trans., People v. Schiller, dated Oct. 13, 2004).

**Plaintiff William Steyert**

56. These are not statements of material fact that would create a genuine issue for trial.

57. This is not a statement of material fact that would create a genuine issue for trial.

58. Undisputed that plaintiff Steyert arrived at Church Street around 3:00 P.M. The statement that Steyert traveled alone to Church Street is not a statement of material fact that would create a genuine issue for trial.

59. This is not a statement of material fact that would create a genuine issue for trial.

60. Disputed that police told marchers they had unconditional "permission to proceed" (Defs' 56.1 Statement at ¶¶ 73-81; Monahan (I) Depo. 170:25-171:7; O'Connor Depo. 38:24-39:4). Undisputed that Steyert testified in his deposition that he was near the front of the march when the march began.

61. Disputed (Defs' 56.1 Statement at ¶¶ 110, 113, 115).

62. Disputed that "Steyert heard no police officers giving orders from the time the march started to when it was stopped by the police." (Defs' 56.1 Statement at ¶¶ 95-97). In addition, Steyert admitted in his deposition that before the march began, he heard the police

instruct the marchers by bullhorn that although the march lacked a permit, that marchers could proceed if they walked two abreast and did not block traffic. (Steyert Depo. 404:11-15, 456:21-457:2, 470:9-16).

63. Disputed that "Steyert didn't hear any orders over a bullhorn other than the one at the beginning of the march." (Defs' 56.1 Statement at ¶¶ 95, 97).

64. Disputed that "[t]he march was a very orderly procession" and that Steyert didn't hear any police officer tell marchers to walk two abreast (Defs' 56.1 Statement at ¶¶ 73-82, 110-113, 115-116; Steyert Depo. 404:11-15, 456:21-457:2). In addition, at his deposition, plaintiff Steyert testified that he heard the police instruct the marchers, before the march began, to walk two abreast and not obstruct pedestrian traffic. (Steyert Depo., 404:11-15, 456:21-457:2, 470:9-16, 474:8-15). The statement that "nobody [in the march] was running" is not a statement of material fact that would create a genuine issue for trial.

65. Disputed that when the march was stopped, the banner had been held parallel to the sidewalk. (Defs' 56.1 Statement at ¶¶ 114, 121-122). Undisputed that when the march first began, "[t]he banner at the front of the march was carried sideways parallel to the cemetery so it wouldn't be blocking the sidewalk or street."

66. Disputed (Defs' 56.1 Statement at ¶¶ 114, 121-129). Undisputed that at one point Steyert heard an officer tell the crowd they were blocking the street or the sidewalk.

67. Disputed that Steyert "did not hear any officer tell the crowd to disperse" and that he "heard no order to disperse." (Defs' 56.1 Statement at ¶¶ 124-129).

68. Disputed (Defs' 56.1 Statement at ¶¶ 124-129).

69. Disputed that Steyert never heard that officer yell "disperse or you will be arrested." (Defs' 56.1 Statement at ¶¶ 124-129).

70. Disputed that "[t]he march was proceeding in a peaceful and orderly fashion" before it was stopped. (Defs' 56.1 Statement at ¶¶ 110-113, 115-116). Disputed that when an officer screamed out about the banner, the banner was parallel to the sidewalk. (Defs' 56.1 Statement at ¶¶ 114, 122).

71. Disputed that after the march was stopped, the police "surrounded" the marchers with bicycles (Defs' 56.1 Statement at ¶ 138). The remainder of this paragraph contains no statements of material fact that would create a genuine issue for trial.

72. Disputed that Steyert was not engaged in civil disobedience when he was arrested. (Defs' 56.1 Statement at ¶¶ 110-113, 115-116). Disputed that Steyert "was not blocking pedestrian or vehicular traffic," that "there was space on the [Fulton Street sidewalk] for others to pass," and that Steyert "was following all police instructions." (Defs' 56.1 Statement, ¶ 110-116; Steyert Depo. 426:21-24, 428:21-429:15).

73. Disputed. Chief Monahan ordered the arrests only of people on the Fulton Street sidewalk who had committed unlawful conduct. (Defs' 56.1 Statement at ¶¶ 19-21, 106-109, 100-116, 124-134). In addition, defendants state as an undisputed fact that the police released certain people contained behind the mesh who could prove either that they had not been part of the march or that they were properly credentialed media. (Defs' 56.1 Statement at ¶¶ 150-152).

74. Disputed. (Defs' 56.1 Statement at ¶¶ 110-113, 115-116, 133-134). In addition, Judge Francis' November 28, 2006 Order held that such lack of "personal knowledge" "does not preclude the defendants from presenting evidence that a plaintiff was within a group of individuals allegedly engaged in unlawful activity or from arguing that such evidence is

sufficient to demonstrate probable cause." (*Macnamara* DE 110, p. 4; Defs' 56.1 Statement at ¶¶ 133-134).

75. The assertion that Steyert's arrest was "illegal and unjust" is a legal conclusion which the Court should strike or disregard as improper. Disputed that at the time of his arrest, Steyert was "following orders, he was not bunched up with other marchers and there were not others who were bunched up, and they were not blocking anyone." (Defs' 56.1 Statement at ¶ 115).

76. These are not statements of material fact that would create a genuine issue for trial.

77. These are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies. Nevertheless, it is disputed that the floors at Pier 57 were "grimy and greasy" with "grease spots everywhere." (10/26/04 Colgan City Council Testimony 32:10-14, 61:21-25; Colgan Depo. 185:18-23, 236:7-25, 237:2-4, 260:14-16, 261:5-25, 262:2-25, 263:2-7, 756:22-25, 757:2-25, 758:2-5, 22-25, 759:2-25,760:-2-8; Giordano Depo. 174:4-10, 18-25, 175:2-9, 200:5-11, 211:13-25, 212:2-8, 284:19-25, 285:2-14, 286:2-16; Yanosik Depo. 36:21-25; Grimes Depo. 18:23-25,19:2-17, 57:5-22).

78. Undisputed.

79. Undisputed that Steyert was "eventually given a desk appearance ticket"; disputed that receiving a DAT "mean[t] he had valid identification with him on that day," an inference rather than a fact supported by admissible evidence, such that the Court should strike or disregard this supposed fact. Further, these are not statements of material fact that would

create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC. (Defendants' Statement of Material Undisputed Facts in Support of their Motion for Summary Judgment on the City's "No-Summons Policy" and "Fingerprinting Policy" During the RNC, *Schiller v. City of New York*, 04-cv-7922, Docket Entry ("DE") 579, at ¶¶ 124-148, 161-164, 173, 200-226; Declaration of Brian M. Jenkins, *Schiller* DE 581; Declaration of Carl. M. Holmberg, *Schiller* DE 580, at ¶¶ 33-38; End User Reports, Bates Nos. 102556, 102563, 102564, 102719, 102721).

    80. Undisputed.

    81. Undisputed. In addition, the Manhattan District Attorney's Office's decision "to dismiss the cases on Fulton Street was not a determination that probable cause was lacking at the time of arrest. . . . It was an exercise of our discretion that we did not think it was in the interest of justice to prosecute. It was not a statement that probable cause was lacking in the first place." (Defs' 56.1 Statement at ¶ 157; Crim. Ct. Trans., People v. Hardie, dated Oct. 6, 2004; Crim. Ct. Trans., People v. Schiller, dated Oct. 13, 2004).

**Defendant Terence Monahan**

    82. Undisputed.

    83. Undisputed.

    84. Undisputed.

85. Undisputed that Chief Monahan had a discussion with a person he understood to be the leader of the WRL march. The remainder of the statements in this paragraph contains no statements of material fact that would create a genuine issue for trial.

86. Undisputed.

87. Disputed (Defs' 56.1 Statement at ¶¶ 121-129). In addition, Chief Monahan ordered the arrests only of people on the Fulton Street sidewalk who had committed unlawful conduct. (Defs' 56.1 Statement at ¶¶ 19-21, 106-109, 100-116, 124-134). Defendants further state as an undisputed fact that the police released certain people contained behind the mesh who could prove either that they had not been part of the march or that they were properly credentialed media. (Defs' 56.1 Statement at ¶¶ 150-152).

88. Undisputed.

89. This is not a statement of material fact that would create a genuine issue for trial.

90. Disputed. Defendants incorporate by reference their Rule 56.1 Counterstatement in *Abdell*, including defendants' specific objections to the video evidence submitted in *Abdell* and referred to in the *Abdell* Rule 56.1 Statement.

Dated: New York, New York
       November 3, 2011

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorneys for Defendants*
100 Church Street, Room 3-132
New York, New York 10007
212.788.1817 (ph)
212.788.9776 (fax)

By: _____
    Raju Sundaran, Senior Counsel
    Fred Weiler, Assistant Corporation Counsel