UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DEIRDRE MACNAMARA, et al., individually; :
and on behalf of those similarly situated, :
 :
                              Plaintiffs, :      ECF Case
 :
    vs. :
 :      04-CV-9216 (RJS) (JCF)
The CITY OF NEW YORK; a municipal :
entity, et al., :
 :
                             Defendants. :
-----------------------------------------------------------------x

## MACNAMARA PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE CITY'S "NO-SUMMONS POLICY" AND "FINGERPRINTING POLICY" DURING THE RNC

Pursuant to Local Rule 56.1 the plaintiffs respond to the Defendants' Rule 56.1 Statement, dated October 3, 2011, pertaining to the no-summons and blanket-fingerprinting policies.

Plaintiffs join in the Response to Defendants' 56.1 Statement filed in *Schiller et. al. v. The City of New York et. al.*, 04 CV 7922 (RJS)(JCF), adopting from that document both the responses to each of the defendant's asserted facts and the undisputed facts asserted in opposition to the defendants' motion. In addition, Plaintiffs assert the following undisputed facts in opposition to the defendant's motion:

    1.    As part of the RNC enforcement effort, the NYPD created a Quality of Life Team. *See* document entitled "2004 Operation Overlord II, Quality of Life Team Sub-Committee

1

Presentation, Bates #00156619-156639 (Attached as Exhibit "A" to the Moore Supplemental Declaration).

2.     The mission of the RNC Quality of Life Team was to "address illegal activity and quality of life issues including the areas of vice, narcotics, peddlers, pickpockets, fraud and homeless conditions. *See* Memorandum from RNC Quality of Life Team Inspector to Co-Chairperson, Site Security, Operation Overlord II, November 14, 2003, p. 1, Bates # 00156604-00156618 (Attached as Exhibit "B" to the Moore Supplemental Declaration).

3.     The enforcement efforts of the RNC Quality of Life Team was to be "concentrated in the area of Madison Square Garden as well as hotels and venues used by the RNC delegates/guests including Times Square, Greenwich Village, South Street Seaport, Canal Street and the World Trade Center site." *Id.*

4.     Deputy Chief Stephen Paragallo was assigned as the commanding officer of the RNC Quality of Life Enforcement Team. Inspector Kathy Ryan was his executive officer. *Id.*, at p.2.

5.     In addition to command personnel, including 22 lieutenants and 39 sergeants, a total of 404 uniform police officers and 16 undercover police officers were assigned during the RNC to the RNC Quality of Life Enforcement Team. *Id.*

6.     Members of the RNC Quality of Life Enforcement Team were assembled from various NYPD commands throughout the City, including the Narcotics Division, the Vice Enforcement Division, Patrol Borough Manhattan South (PBMS) Anti-Crime Unit, PBMS Grand Larceny Task Force, PBMS Peddler Task Force, Transit Bureau Homeless Outreach Unit, Transit Bureau Peddler/Panhandler Task Force, Transit Bureau Metro Card Task Force and the Transit

Bureau Pickpocket Task Force. *Id.,* pp. 5-13.

7.      Inspector Kathy Ryan prepared a summary and self-critique of the RNC Quality of Life Team. *See* Memorandum from Ryan to Assistant Chief Bruce Smolka, C.O. PBMS, entitled "Summary and Self-Critique Report for Quality of Life Team," September 14, 2004, Bates # 156598-156602 (Attached as Exhibit "C" to the Moore Supplemental Declaration).

8.      In her self-critique or after-action report, Inspector Ryan described the mission of the RNC Quality of Life Team to "address illegal activity and to improve quality-of-life conditions most particularly in the vicinity of Madison Square Garden, Times Square Area and other areas where RNC Delegates would visit . . . ." *Id.,* p. 1.

9.      Inspector Ryan also wrote in her self-critique that all members of the RNC Quality of Life Team "were always vigilant while on patrol of any unusual activity which may have been indicative of an unplanned protest or a possible terrorist threat." *Id.*

10.     Ryan's self-critique summarized the activities of the RNC Quality of Life Team for the period July 29, 2004 through to September 3, 2004. *Id.*

11.     The RNC Quality of Life Enforcement Team was an integral part of the NYPD's enforcement effort before and during the RNC. (See, e.g., Exhibits "A", "B," and "C" to the Moore Supplemental Declaration).

12.     During the period of time the RNC Quality of Life Enforcement Team was in operation, the team made a total of 1555 arrests and issued 1826 summons, including 339 "C Summons." *See* Part 12 to Ryan Self-Critique Report, p. 2, Bates No. 00156713 (Attached as Exhibit "D" to the Moore Supplemental Declaration).

13.     The RNC Quality of Life Enforcement Team issued 43 summons for disorderly

conduct, 193 summons for non payment of fare, 91 summons for failure to display license plate, 3 summons for failing to provide accurate/complete identification, 15 summons for harassment, 6 summons for the reckless operation of a motor vehicle, 31 summons for having an uninsured vehicle, 3 summons for unlawful possession of marijuana, 3 summons for being on a restricted street, 1 summons for being in a restricted area, 7 summons for trespass, 15 summons for unlicensed operator, 6 summons for unregistered vehicle, 140 summons for unlicensed general vendor and 2 summons for vending in a prohibited zone. *Id.,* Bates Nos. 00156718-156720.

14.   Assistant Chief John B. McManus, the overall security coordinator for the NYPD's RNC law enforcement effort, could not think of anything that would support a policy that said people charged with an offense at a demonstration were not eligible for the issuance of a summons, while people charged with a quality of life offense which took place in the vicinity of the RNC or an RNC venue were eligible for a summons. *See* Deposition of John B. McManus, March 17, 2011, p. 238:3-16 (Attached as Exhibit "E" to the Moore Supplemental Declaration).

15.   The NYPD purportedly made a judgment that because the RNC was a national special security event everyone charged with an offense had to be fingerprinted regardless of the seriousness of the event. Deposition of John Colgan, March 15, 2011, p. 1267:6-13 (Attached as Exhibit "F" to the Moore Supplemental Declaration).

16.   Chief Colgan testified that the need to correctly or positively identify people who were engaging in unlawful behavior during the RNC applied to illegal activity associated with an RNC venue or an RNC event. *Id.* p. 1267:14:24

17.   Although hundreds of individuals were charged with various offenses by the RNC Quality of Life Team as part of the NYPD's overall RNC law enforcement effort, the no-

summons policy implemented by the NYPD for RNC-related events did not apply to the law enforcement activities of this team. *Id.,* p. 1292:7-95:12.

18.   Chief Colgan could articulate no difference from a law enforcement perspective between someone arrested for disorderly conduct by someone on the RNC quality of life enforcement team and someone arrested for disorderly conduct by someone in the mobile reserve sector or the mobile taskforce. *Id.,* p. 1295:13-20.

19.   Chief Colgan testified that, in his mind, it was just as likely that someone charged with disorderly conduct by a member of the NYPD's RNC Quality of Life Team could pose a terrorist threat as someone charged with disorderly conduct at a demonstration by a member of the NYPD's mobile task force. *Id.,* pp. 1298:13-1299:18.

20.   Chief Colgan had no explanation for why someone charged with the offense of disorderly conduct by a member of the RNC Quality of Life Enforcement Team would be eligible for a summons while someone charged with the offense of disorderly conduct at a demonstration would not be eligible for consideration for a summons. *Id.,* p. 1300:14-1305:19.

Dated:    November 3, 2011
          New York, NY

                              Respectfully submitted,

                              _____
                              JONATHAN C. MOORE, Esq.
                              GIDEON ORION OLIVER, Esq.
                              ELIZABETH LOGEMANN, Esq.

                              Beldock Levine & Hoffman, LLP
                              99 Park Avenue - 16th Floor
                              New York, New York   10016
                              (212) 277-5850

                              *Counsel for the Plaintiff Class in MacNamara*