**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

DEIRDRE MACNAMARA, et al., individually;           :
and on behalf of those similarly situated,          :
                                                    :
                        Plaintiffs,           :     ECF Case
                                                    :
         vs.                                    :
                                                    :     04-CV-9216 (RJS) (JCF)
The CITY OF NEW YORK; a municipal                   :
entity, et al.,                                     :
                                                    :
                      Defendants.          :
------------------------------------------------------------x

### PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS RE: FALSE ARREST CLAIMS OF PLANITIFFS ARRESTED ON EAST 16TH STREET

Pursuant to Local Rule 56.1, the MacNamara Class Plaintiffs, as well as the plaintiffs in

Tikkun v. City of New York, 05 Civ. 9901, Bastidas v. City of New York, 05 Civ. 7670, Rigby

v. City of New York, 07 Civ. 7751 and Concepcion v. City of New York, 05 Civ. 8501, reply to

Defendants' Counterstatement in Response to Plaintiffs' Local Civil Rule 56.1 Statement

regarding the arrests on East 16th Street, as follows:

> I.    **As defendants did not dispute the facts asserted in certain paragraphs, the facts asserted by plaintiffs in those paragraphs should be deemed admitted.**
>
>     a.   Where defendants stated they did not dispute the facts asserted by plaintiffs, the facts should be deemed admitted.

As defendants do not dispute the facts in the following paragraphs, the facts as asserted

by plaintiffs in the following paragraphs should be deemed admitted: paragraphs 4, 26, 27, 28,

29, 34, 41, 45, 68, 69, 77, 79, 88, 95, 96, 98, 103, 106, 108, 125, 127, 128, 134, 136, 137, 139,

151, 157, 158, 159, 162, 166, 168, 184, 187, 192, 194, 195, 197, 202, 218, 222, 224, 235,[1] 238, 239, 243, 245, 249, 254, 257, 261, 265, 273, 275, 278, 279, 281, 283, 284, 285, 293, 301, 306, 314, 315, 316, 322, 325, 327, 332, 334, 344, 347, 356, 361, 365, 366, 369, and 374. *See* Local Rule 56.1.

> **b.** <u>Where defendants stated that facts were not material but failed to dispute the facts, the facts should be deemed admitted.</u>

In their counterstatement defendants often respond to plaintiffs' facts by asserting that, "[t]hese are not statements of material fact which would create a genuine issue for trial." Where defendants assert that plaintiffs' facts are not material, but fail to dispute those facts and fail to cite any admissible evidence in response, the facts are undisputed and are properly deemed to have been admitted. *See* Local Rule 56.1(c) and (d); *United States v. Karron*, 750 F.Supp.2d 480, 483 n.1 (S.D.N.Y. 2011) ("We note that [the non-moving party] submitted a statement in opposition to the Government's Local Rule 56.1 Statement, in which she concludes that many facts are 'moot' or irrelevant. However, [the non-moving party] fails to specifically controvert those facts in a way that is meaningful for the purpose of this motion. . . . Thus, unless otherwise noted, the facts recited herein are deemed admitted."); *Gallimore-Wright v. Long Island R. Co.*, 354 F.Supp.2d 478, 483 (S.D.N.Y. 2005) ("[Non-moving party]'s Rule 56.1 statement . . . responds to nine [paragraphs] only by asserting that the facts there stated are not relevant. Hence, the facts asserted in those . . . paragraphs of defendant's Rule 56.1 statement are deemed admitted.").

Therefore, the facts in the following paragraphs should be deemed admitted: 1, 2, 3, 7, 8, 9, 13, 14, 15, 20, 21, 22, 23, 24, 25, 30, 31, 32, 33, 34, 60, 63, 64, 65, 66, 67, 71, 72, 74, 75, 76,

---

[1] Paragraph 234 was mistakenly numbered as a second paragraph 234 in the Plaintiffs' Rule 56.1 Statement; Defendants Counterstatement addresses the paragraph as paragraph 235.

80, 90, 97, 99, 100, 101, 102, 121, 129, 130, 131, 133, 135, 153, 155, 160, 161, 163, 164, 165,

186, 190, 191, 196, 199, 200, 203, 205, 216, 217, 219, 220, 221, 222, 224, 226, 233, 234, 236,

237, 250, 251, 252, 253, 259, 268, 274, 276, 277, 280, 288, 292, 294, 295, 296, 297, 298, 299,

300, 301, 313, 315, 316, 320, 321, 323, 324, 335, 349, 350, 352, 353, 359, 362, 364, 367, 368,

and 379.

II.  **The facts asserted by plaintiffs in the remaining paragraphs of Plaintiffs' Rule 56.1 Statement should also be deemed admitted.**

a.  Because defendants' counterstatement does not "specifically controvert" the remaining undisputed facts with any relevant citations that evince a genuine dispute, the facts asserted by plaintiffs should be deemed admitted.

Defendants have no personal knowledge of the individual conduct of any of the plaintiffs

on the date of the plaintiffs' arrests. This was clearly established by Judge Francis'

Memorandum and Order dated November 28, 2006, attached as Exhibit H to the Declaration of

Jonathan C. Moore filed in Support of Motion for Partial Summary Judgment at the Site of the

16th Street Arrests on October 3, 2011 (hereinafter "Francis Mem.").   Judge Francis'

Memorandum and Order states, "the defendants are deemed to have admitted that, with respect

to each plaintiff in the MacNamara, Abdell, and Adams case (with the exception of plaintiff

Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of

individual conduct of that plaintiff which served as the basis for that plaintiff's arrest."[2]

Despite their complete lack of knowledge of any of the plaintiffs' individual conduct,

defendants remarkably "dispute" nearly all of the substantive facts about the individual conduct

asserted in plaintiffs' Rule 56.1 statement. Defendants do not cite to any evidence "specifically

controverting" the asserted facts, *see* Rule 56.1(d); defendants cannot do so as they have no

_____

[2] Similar orders concerning Defendants' lack of personal knowledge as regards the Plaintiffs in the Bastidas, Rigby, and Concepcion cases were annexed as Exhibit 11 to the October 3, 2011 Declaration of Jeffrey Rothman that was filed in those cases.

personal knowledge of plaintiffs' actions.  Instead, the City's assertions are supported by nothing more than references to testimony that does not controvert the fact asserted, and/or references to paragraphs of their Rule 56.1 statement which, in turn, contain unsupported, vague, and sweeping allegations regarding the acts of other individuals or what defendants characterize as "the 16th Street Parade."  As detailed fully in Plaintiffs' Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Re: False Arrest Claims of Plaintiffs Arrested on East 16th Street (hereinafter "Plaintiffs' Counterstatement"), assertions about the alleged actions of others or of the "16th Street Parade" do not create any disputed issues regarding the specific uncontroverted facts asserted by the plaintiffs.

Thus, as defendants' counterstatement does not "specifically controvert" the undisputed facts asserted by the individual plaintiffs, these facts should be deemed admitted.  *See* Local Rule 56.1; *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008) (Finding that non-moving party's responses, "although commencing with the word 'disputed,' did not evince a dispute that was genuine"); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

     b. <u>Because defendants' counterstatement claims to "dispute" the facts asserted by plaintiffs without providing any explanation for that "dispute," the facts asserted by plaintiffs should be deemed admitted.</u>

In addition, defendants' many assertions that facts are "disputed" supported by nothing more than a list of paragraphs of their own 56.1 statement fail to comply with Rule 56.1 because defendants do not explain how any of the Rule 56.1 paragraphs they cite relate to, let alone specifically controvert, any of the facts asserted about the individual plaintiffs.  Defendants' failure to provide any explanation is compounded by instances where defendants cite to

numerous paragraphs of their Rule 56.1 statement, many or none of which have any discernable

relevance to the facts asserted by plaintiffs.  Where defendants have failed to provide any

explanation establishing the nature of the dispute or how the cited evidence controverts the

asserted facts, these facts have not been specifically controverted and should be deemed

admitted.  *See, e.g., Benn v. City of New York*, 2011 WL 839495, at *1 n.2 (S.D.N.Y. March 4,

2011) (discussing City's response that "denie[d] almost all of the statements of undisputed fact

without providing any explanation for the denial" and simply referred "the court to pages of

transcripts which often confirm the very fact that plaintiff stated as undisputed"); *Teachout v.*

*New York City Dept. of Educ.*, 2006 WL 452022, at *1 n. 1 (E.D.N.Y. Feb. 22, 2006) (discussing

Rule 56.1 counterstatement where non-moving party "respond[ed] only by stating 'Disputed'"

and cited evidence without explanation, leaving "the Court unclear as to what exactly [the non-

moving party] is opposing or asserting in response to the motion").

> c. <u>Because defendants' paragraphs fail to specifically controvert the asserted</u>
> <u>facts, the asserted facts should be deemed admitted.</u>

The facts in the numbered paragraphs below should be deemed admitted for the reasons

outlined *supra* in sections II(a) and II(b), as well as the following reasons:

### **Plaintiff Erica Biddle**

5. Defendants assert these facts are disputed, but cite no evidence that creates a dispute

regarding the fact that Plaintiff Biddle heard no police directives or instructions as she entered

16th street. Defendants cite Biddle's 50-H testimony, in which she stated that she entered 16th

Street, she saw people moving forward, and then "very suddenly" the police began to "attack

people" and pin them to the ground. Biddle Dep. p. 16:13-24. Biddle testified that, *at that point*,

"they said they were going to arrest everyone. I don't remember them giving any orders before,

but I might have missed it." *Id.* p. 17:6-8. Thus, the testimony cited by defendants completely *supports* the facts as asserted by plaintiffs: Biddle did not hear any police directives as she entered 16[th] Street, before arrests began. The other testimony cited by defendants (Grimshaw 50-H 17:15-18:2, Johnson Dep. 127-128:10-15; and Dieckmann Dep. 57:24-25) also does not create any disputed issue: whether Plaintiff Grimshaw heard orders given by officers at some point, Officer Johnson told some people on the street at some point that there was no permit, and Officer Dieckmann told some people on the street at some point to stop, is immaterial to whether Biddle heard any orders as she entered 16th Street--a fact that the defendants cannot dispute, as they have no knowledge of Biddle's actions, *see* Francis Mem. Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about whether "participants in the 16th Street Parade" were free to turn back to Union Square Park, or "chose on their own" to turn onto 16[th] Street, have no apparent relation to the fact asserted in Plaintiffs' paragraph 5 and do not controvert the fact asserted. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

6.   Defendants assert these facts are disputed despite Biddle's clear and unambiguous testimony supporting the facts as asserted by Plaintiffs, *see* Biddle Dep. 14:10-15:14, and despite defendants' lack of any knowledge of Biddle's actions, *see* Francis Mem. Defendants cite to testimony that Biddle, who arrived riding a bicycle, was not *always* on the sidewalk (*id.* p. 15:15-17); such testimony does not call into question the facts as asserted by Plaintiffs in paragraph 6, which refer to her presence on the sidewalk at a specific point in time.  Defendants cite no evidence that creates a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

10. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants cite to Plaintiff Majmudar's testimony that she believed (but was not certain) that one person with a stroller was permitted to leave; this testimony does not controvert the assertion that Biddle saw individuals who tried to leave but were not allowed to. Majmudar Dep. p. 124:15-20. The cited testimony of Sperry that he did not attempt to walk past police barricades is unrelated to the fact asserted. Sperry Dep. 78:2-8. Defendants cite paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and that some individuals, other than Biddle, were permitted to exit East 16th Street. The broad assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 10. Defendants have no knowledge of Biddle's actions, *see* Francis Mem., and their citation to these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Biddle asserts in paragraph 10. In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. pp. 45:24-46:6; 48:8-18; 49:7-17. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

11. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants cite only to a portion of Plaintiff Sperry's testimony (Sperry Dep. p. 107:8-15) in which he testified as follows:

> Q. Was your drum damaged in any way?
>
> A. It belonged--it wasn't mine, so I left New York on Wednesday. I didn't follow up about the drum.
>
> Q. Did Sarah ever get it back, to your knowledge?
>
> A. I'm not sure....I think I did ask her about that, and I think she did get it back.

6

Sperry's testimony in no way controverts the fact that Biddle saw the police destroy the band's instruments, as it mentions no instrument other than the drum, and Sperry did not know whether the drum was damaged. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

12. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. As explained in Plaintiffs' Counterstatement, defendants' citation to this portion of Biddle's testimony is extremely misleading. Defendants have cited a section of Biddle's testimony in which Biddle was asked whether she asked her arresting officer if she could leave, and Biddle responded "No." Biddle Dep. p. 33:9-11. Yet Biddle also testified that *before* being arrested, she approached a male NYPD officer and asked him to allow her to leave, but was told she couldn't. *Id.* pp. 24:14-25:8. Whether Biddle asked her *arresting* officer to allow her to leave is immaterial to the facts asserted in plaintiffs' paragraph 12. Officer Baity's cited testimony (Baity Dep. p. 376:14-21) is similarly irrelevant: that Officer Baity, who encountered Biddle when she was already in handcuffs (*see* Baity Dep. II p. 35:21-36:12), does not recall Biddle asking to leave does not address her uncontroverted testimony that prior to encountering Officer Baity she asked a different officer whether she could leave. Defendants cannot controvert that testimony as they have no knowledge of Biddle's actions, *see* Francis Mem. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

16. Defendants assert these facts are disputed but cite no evidence that controvert Biddle's assertion that the officer who handcuffed her put her in plastic handcuffs that were so tight that he had to cut them off and re-cuff her. Defendants cite testimony by Officer Baity in which he states that he did not personally handcuff Plaintiff Biddle, and he did not personally receive a complaint about tight handcuffs. (Baity II Dep. 35:21-36:12; Baity I Dep. 188:2-6).

Plaintiffs acknowledge that Officer Baity testified that he encountered Biddle when she was already handcuffed, but assert that the officer who initially handcuffed Biddle put her in plastic handcuffs that were so tight he had to cut them off and re-cuff her--a fact defendants cannot and did not dispute. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

17. Although defendants assert that some individuals were permitted to leave the 16th Street area before arrests were made, it is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines. *See* Essig Dep. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"), 755:2-4. Defendants cite only paragraphs 54-55 and 57 of their Rule 56.1 Statement; these paragraphs are misleading and unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally, these paragraphs do not directly address the facts stated in plaintiffs' paragraph 17, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

18. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest." It is therefore clear that the facts as stated by plaintiffs in paragraph 18 are undisputed; it has already been established as the law of the case that defendants have no knowledge of Biddle's specific actions. Unsurprisingly, defendants' citation to the testimony of

Officer Baity does not establish that Baity had any knowledge of Biddle's actions; in fact it is
completely unrelated to Biddle: at Baity I Dep. p. 252:17-25 Officer Baity reads from the
narrative section of his online booking system arrest worksheet filled out for arrestee Lauren
Casper. Defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping
and generic allegations about the acts of the "16th Street Parade" and other individuals, does not
raise any dispute about the uncontroverted fact that no officer has any personal knowledge
specific to Biddle. Nor does defendants' quotation of Magistrate Judge Francis controvert the
fact asserted; that Magistrate Judge Francis stated that defendants might make a legal argument
that there was probable cause to arrest a plaintiff, despite their lack of knowledge about any of
the specific actions of that plaintiff, does not create any factual dispute about any individual
plaintiff's actions.  This fact should be deemed admitted, in accordance with the order of
Magistrate Judge Francis, and because defendants have failed to specifically controvert the facts
asserted in paragraph 18.

19. Defendants assert these facts are disputed but cite no evidence that creates a disputed
issue of fact.  Officer Baity's cited testimony was that he was photographed with five arrestees;
Baity does not speak one way or the other regarding whether he put his arm around Biddle. Baity
I Dep. 55:19-56:22. As defendants have failed to specifically controvert the facts asserted these
facts should be deemed admitted.

### Sonia Chandra

35. Defendants assert these facts are disputed but cite no evidence that creates a disputed
issue.  It is undisputed that plaintiff Chandra went to Union Square to get something to eat.
Chandra Dep. pp. 21:1-22:8, 17:23-18:2. When Chandra emerged from the subway, she "decided
maybe just to walk around and maybe walk to a restaurant in the area." *Id.* p. 21:5-7. Chandra's

9

testimony, when read in context, supports the facts as stated by plaintiffs in paragraphs 34-36: Chandra emerged from the subway, walked around and sat in the park for a few minutes while contemplating where to eat, and then crossed briefly onto Union Square East and then onto 16th Street after hearing and seeing a band on the east side of Union Square Park. *See* Chandra Dep. pp. 21:1-37:4. The quotations pulled and cited by defendants are out of context; plaintiffs do not dispute that Chandra crossed out of the park to see what was going on near a band, as indicated in the cited testimony, but that testimony does not controvert the facts as asserted by plaintiffs in paragraph 35. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

36. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue of fact.  Plaintiff Chandra's cited testimony, when read in context, supports the facts as stated by plaintiffs in paragraph 36. *See* Chandra Dep. p. 21:1-37:4. The isolated quotations cited by defendants do not bring these facts into dispute, and defendants cite no other evidence. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

37. Plaintiffs clarify this sentence to state that there were no police blockades *on 16th street* when Chandra turned onto 16th Street (though there may have been a police line across Union Square East). As defendants do not dispute that no police blockades had formed on 16th Street when Chandra turned onto that street, that fact should be deemed admitted.

38. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue of fact. Chandra testified that she saw police officers nearby as she turned onto 16th Street, but those officers did not say "don't turn down there," Chandra Dep. pp. 110:23-111:1. Indeed the peaceful interactions between police officers and the people present led Chandra to believe

that "everything was fine" and she did not have the impression that "what people were doing was unlawful." *Id.* p. 126:20-25. Defendants cannot dispute this testimony as they have no knowledge of Chandra's actions, *see* Francis Mem. The testimony cited by defendants (Grimshaw 50-H 17:15-18:2, Johnson Dep. 127-128:10-15; and Dieckmann Dep. 57:24-25) does not create any disputed issue. Grimshaw testified that after he started marching he heard the police telling people to get on the sidewalks and then immediately officers "closed in on us," Grimshaw Dep. pp. 17:15 -18:22; this testimony has nothing to do with whether the officers at Union Square East and 16th Street said anything to Chandra as she turned down 16th Street. Additionally, whether Officer Johnson told some people on the street at some point that there was no permit, or Officer Dieckmann told some people on the street at some point to stop, is immaterial to what Chandra heard and observed as she entered 16th Street.  Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about whether "participants in the 16th Street Parade" were free to turn back to Union Square Park, or "chose on their own" to turn onto 16th Street, have no apparent relation to the facts asserted in plaintiffs' paragraph 38 and do not controvert the facts asserted. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

39. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue of fact. The portions of Chandra's testimony cited by defendants do not relate to or discuss the facts asserted in plaintiffs' paragraph 39, and therefore do not controvert the asserted facts. Defendants also cite paragraphs 33-34 of their Rule 56.1 statement, which essentially assert that people were free to "turn back" and people decided to turn down 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these

11

paragraphs, which make sweeping and generalized assertions about many individuals, create a disputed issue about the facts asserted in plaintiffs' paragraph 39. Additionally, the video evidence, which defendants cannot dispute, shows that police officers rode scooters alongside the crowd and walked on foot with the people on 16th Street, giving the impression that they were leading people in that direction. *See* Exhibits A and B to the October 3, 2011 Declaration of Jonathan C. Moore in Support of Motion for Partial Summary Judgment at the Site of the 16th Street Arrests (hereinafter "Moore Declaration"): Vault at 30:50 to 31:40, TARU 87 at 19:00:42, Hall at 18:59-19:01, Hall at 19:00:24, Swimberge at 28:35. Video evidence also shows a line of police officers directing the group east on East 16th Street. *See id.*: Hall at 19:01:00-19:01:15, Swimberge at 28:00-28:50, Rothman at 30:50-31:45, TARU 86 at 19:00:42-19:01:15, TARU 87 at 19:00:00-19:00:55, TARU 125 at 30:00-30:05. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

40. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue of fact. As defendants have no knowledge of Chandra's actions, *see* Francis Mem., they cannot speak to when she was on or near Union Square East or East 16th Street, or her specific location; defendants therefore cannot dispute that Chandra did not see any vehicular traffic. None of the testimony cited by defendants calls this fact into question. The testimony of Sperry does not discuss to whether there were or were not cars or the road, but seems to insinuate that there were not. Sperry Dep. 104:19-21. Riggan actually testified that he did not remember whether there were cars in the street. Riggan Dep. p. 94:4-9. The testimony of N. Rodriguez, when read in context, establishes only that Rodriguez traveled in a police car going north on Union Square East past 16th Street sometime *before* people left the park. Rodriguez Dep. pp. 42:20-46:13. Walsh testified that she saw no cars on 16th Street (though there was traffic on Union Square

East), Walsh 30:7-13. Bizzarro's cited testimony does not speak to whether there were actually cars in the road. Bizzaro Dep. 44:2-6. Defendants cite a portion of Officer Sam's testimony in which he states that he told the ADA that Chandra had impeded vehicular and pedestrian traffic (Sam Dep. p. 307:19-24); however, Officer Sam testified that when he saw Chandra prior to her arrest he could not remember whether she was on the street or the sidewalk. *See* Id. 255: 23-256:24, 259:24-260:12. His testimony therefore does not even establish that Chandra was ever in the street; must less that she impeded vehicular traffic; and Sam's cited testimony does not address the facts in plaintiffs' paragraph 40 at all as it does not mention whether there were any cars in the street.  The cited testimony of other individuals that they observed cars at various times in various locations on Union Square East does not call into dispute the fact that Chandra herself did not observe any vehicles, and does not call into dispute any assertion that there were no vehicles on 16th Street. (Walsh 30:14-21, 82:3-9; Essig 457:16-21; Connolly Dep. 39:17-40:6; Cortright Dep. 56:8-13; Johnson 48:18). Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 40. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

42. As defendants cite portions of Chandra's testimony that are consistent with the facts asserted, it is impossible to know what part of the facts asserted by plaintiffs in paragraph 42 defendants claim to dispute. Defendants cannot dispute, and cite no evidence to dispute, that Chandra decided to go over to the band, which was a few stores down past Zen Palate, for a few minutes and then go eat dinner, either at Zen Palate or possibly another restaurant. Chandra Dep. pp. 32:22-33:1; 39:2-6; 42:12-25. Defendants assert these facts are disputed but cite no evidence

that creates a disputed issue. Defendants cite to two passages of Chandra's testimony; the first cited passage supports the facts as asserted by plaintiffs (*id*. p. 29:18-30), the second has nothing to do with the facts asserted (*id*. p. 44:4-6). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

43. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue; indeed, defendants' citations in paragraph 43 are yet another egregious example of defendants' repeated citation of testimony for something it does not say. Chandra testified that she stopped on the south sidewalk. Chandra Dep. 60:18-20. Officer Sam, as cited by defendants, simply testified --twice--that he *did not know* whether Chandra was on the street or the sidewalk when he saw her. Sam Dep. pp. 255: 21-256:24. 259:24-260:12. There is no dispute here; defendants have cited to no evidence indicating that Chandra was not on the sidewalk.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

44 and 46. Defendants assert that the facts asserted in paragraphs 44 and 46 are disputed but cite no evidence that creates a disputed issue. Paragraphs 44 and 46 address Chandra's decision to try and leave the area; defendants cite the same evidence in both paragraphs. Defendants have no knowledge of Chandra's actions, *see* Francis Mem., and cannot dispute that she decided to leave 16th Street. The testimony of Officer Sam as cited by defendants does not controvert the facts asserted in paragraphs 44 and 46; firstly most of his cited testimony concerns Celine Malanum and not Plaintiff Chandra; secondly Sam simply testified that he believed that everyone had an opportunity to leave--not that he personally saw Chandra engage in any conduct that would suggest that Chandra did not try to leave. Sam Dep. pp. 297:5-21. Indeed, Sam saw Chandra only one to two times before arresting her, and could not speak for where she was

located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. Defendants cite paragraphs 33-34, 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to turn back and/or leave, and that some individuals, other than Chandra, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 44 and 46. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Chandra asserts in paragraphs 44 and 46.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

    <u>47, 48, and 49</u>. Defendants assert that the facts in plaintiffs' paragraphs 47, 48, and 49 are disputed but cite no evidence that creates a disputed issue. Paragraphs 47, 48, and 49 discuss Chandra's initial attempts to leave 16th Street and her observations of others who were unable to leave the area; defendants cite the same evidence in all three paragraphs. Defendants have no knowledge of Chandra's actions, *see* Francis Mem., and cannot dispute that she attempted to leave 16th Street, and observed others who tried and failed to exit 16th Street. The cited testimony of Officer Sam does not controvert the facts asserted in plaintiffs' paragraphs 47, 48, and 49; the cited testimony discusses Sam's observations of people generally and individuals other than Chandra (Sam Dep. pp. 76:16-23, 230:7-12), and states that Sam simply believed that people had an opportunity to leave (*Id*. p. 298:10-15). Sam could not speak to Chandra's conduct; he saw Chandra only one to two times before arresting her, and could not say where she was located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. Defendants cite paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to

leave and that some individuals, other than Chandra, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 47, 48, and 49. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Chandra asserts in paragraphs 47, 48, and 49.  In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street.  *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

50. Although defendants assert that some individuals were permitted to leave the 16th Street area before arrests were made, it is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines, including Chandra. *See* Essig Dep. pp. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"); 755:2-4. Defendants cite only paragraphs 54-55 and 57 of their Rule 56.1 Statement; these paragraphs are misleading and unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally, these paragraphs do not directly address the facts stated in plaintiffs' paragraph 50, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

51. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the

exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest." It is therefore clear that the facts as stated by plaintiffs in paragraph 51 are undisputed; it has already been established as the law of the case that defendants have no knowledge of Chandra's specific actions. Unsurprisingly, defendants' citation to the testimony of Officer Sam does not establish that Sam had any knowledge of Chandra's actions prior to her arrest; according to Sam he saw Chandra only one to two times before arresting her, and could not speak to where she was located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. Defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals, does not raise any dispute about the uncontroverted fact that no officer has any personal knowledge specific to Chandra. Nor does defendants' quotation of Magistrate Judge Francis controvert the fact asserted; that Magistrate Judge Francis stated that defendants might make a legal argument that there was probable cause to arrest a plaintiff, despite the lack of knowledge about any of the specific actions of that plaintiff, does not create any factual dispute about any individual plaintiff's actions.  This fact should be deemed admitted, in accordance with the order of Magistrate Judge Francis, and because defendants have failed to specifically controvert the facts asserted in paragraph 51.

     <u>52, 53, 54</u>. Defendants assert that the facts in plaintiffs' paragraphs 52, 53, and 54 are disputed but cite no evidence that creates a disputed issue. Paragraphs 52, 53, and 54 discuss Chandra's continued attempts to leave 16th Street, her requests to officers, and her observations of others who were unable to leave the area; defendants cite the same evidence in all three paragraphs. Defendants have no knowledge of Chandra's actions, *see* Francis Mem., and cannot

dispute that she attempted to leave 16th Street, and observed others who tried to exit 16th Street but were not permitted to leave. Defendants' only citation is to paragraphs 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and that some individuals, other than Chandra, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 52, 53, and 54. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Chandra asserts in paragraphs 52, 53, and 54.  In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. pp. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

55. It is difficult to conceive how defendants, who have no knowledge of Chandra's actions, *see* Francis Mem., claim to dispute her initial impression that she was not going to be arrested. The portions of testimony cited by defendants do not call the facts in plaintiffs' paragraph 55 into dispute. Johnson's testimony that he told an unknown number of people to get on the sidewalk and to leave does not mention Chandra and does not controvert the asserted facts. Johnson 51:12-21; 55:15-19; 125:25-126:19. For the reasons outlined in plaintiffs' response to defendants' paragraphs 44, 46, 47, 48 and 49, *supra*, and 56, *infra*, Sam's testimony creates no dispute. The cited testimony Cortright Dep. p. 147:6-9 and Majmudar Dep. p. 124:15-18 does not address the facts asserted in any way.   Defendants also cite paragraphs 43-44 and 46-50 of their Rule 56.1 Statements, which essentially assert that people were free to leave and that some individuals, other than Chandra, were permitted to exit East 16th Street.  The broad

assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, the statements in these paragraphs do not controvert the facts in plaintiffs' paragraph 55 in any way and defendants provide no explanation of how any of these paragraphs might create a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

56. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. It is again difficult to understand how defendants can "dispute" Chandra's beliefs about whether she would be arrested when they have no knowledge of her actions prior to her arrest, *see* Francis Mem. The cited testimony of Officer Sam does not create any dispute; Sam cannot provide any information about Chandra's beliefs prior to her arrest as he allegedly saw Chandra only one to two times before arresting her, and could not speak to where she was located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

57. It is undisputed that no dispersal orders were given. In Defendants' Rule 56.1 Statement, filed on October 3, 2011, as well as in their Memorandum of Law in Support of the Motion for Partial Summary Judgment filed on the same date, defendants make no mention of any order to disperse. It is undisputed that Essig never gave any "dispersal orders." *See* Essig Dep. pp. 167:4-168:10; 731:24-732:15; 755:17-756:4.  Essig believed there was no need for a dispersal order. *See id*. at 742:2-744:17, 799:4-800:4.  Essig then directed Lt. Patrick Cortright and Lt. Lorenzo "Andy" Johnson to walk through the detained group to "tell people who weren't part of this to get into their homes and off the street," but it is undisputed that this was not a "dispersal order." *See id*. at 170:17-171:4. The portions of testimony cited by defendants do not create a dispute, indeed they support the uncontested facts as stated above. Essig testified that he

ordered people to "stop" without using a bullhorn, and did not know whether people could hear him. Essig Dep. pp. 112:16-113:6; 115:21-116:6. He stated "I don't recall the exact words…but in my mind I wanted the parade to stop, the music to stop…," *id.* p. 769-770:23-5, *see also* pp. 772-73; and that he did not remember using the word disperse, *see id.* pp. 783:12-786:2 ("I told them to stop. I wouldn't have told them to disperse because they were already under arrest); *id.* pp. 227:23-228:3 ("Was the group told that they would be arrested if they did not disperse? That's when I attempted to go out and tell them to stop and turn down the music, it was very difficult to hear"); 779:7-11 ("A. Right I believe I testified I was telling them to stop. Q. You don't recall ever telling them, actually using the word "disbursed," correct, you don't recall that? A. No, no. Q. Maybe you did, maybe you didn't, but you don't recall that? A. I don't recall"). Essig's cited testimony otherwise discusses his alleged instructions to Lieutenants Cortright and Johnson to go down East 16th Street and try and remove people who were not part of the protest. *See id.* pp. 138:7-15, 170: 4-20, 171: 12-17, 756:5-20, 760: 2-13. Johnson's testimony confirms that he told "a lot" of people to leave the area, but did not use a megaphone; he stated "I don't know if they could hear me or not." Johnson Dep. pp. 51:9-52:12; 53: 8-16; 58:4-11. Johnson did not know how many people he spoke to. *Id.* pp. 64:16-65:15.  Cortright also testified that he went up the block and told people to leave, but that he did not use a megaphone.  *See* Cortright Dep. pp. 58:8-9; 59:21; 60:20-22.  Dieckmann testified that when he arrived on the scene and got out of his car he started yelling at people to stop and go back to the park, but he did not use a megaphone, and could not tell whether people heard. *See* Dieckmann Dep. pp. 57:24-25; 59:20-60:3. Baity merely confirms that numerous supervisors were "saying to disperse from the block," but Baity didn't remember whether anyone used bullhorns and never himself gave an order to disperse. Baity Dep. pp. 45:21-47:13. Loftus likewise recalls hearing orders to leave the area, but

they were given through voice, not bullhorns, and he did not remember the specifics of what was said. *See* Loftus Dep. pp. 49:16, 50:12, 59:16-22. Sam similarly testified that supervisors were giving orders "somewhere on the block," he could not remember the supervisors having bullhorns, and Sam himself gave orders only to "anyone within reach." Sam Dep. pp. 87:3-89:13; 92:5-10. Bonacci heard an announcement made by voice without amplification. Bonacci Dep. p. 24:2-8. Sarrubbo recalls whiteshirts and Essig telling people to leave but he does not think either were using a bullhorn, and he could not recall Essig's exact words. Sarrubbo Dep. pp. 53:18-54:7; 63:5-19. N. Rodriguez testified that police formed a line on 16th Street and told approaching individuals to stop moving forward; that "they would not be allowed to proceed down the block and they had to turn around and leave," there is no mention of officers ordering the crowd to "disperse" or permitting anyone to pass the police line at Irving Place in order to leave the area, and there is no indication that any amplified orders were given. N. Rodriguez Dep. pp. 60:3-63:25. Arrestee Clifford merely noted that he personally was told at some point to leave by an officer with a white shirt; Clifford was near the press and was taking photographs with a camera. Clifford Dep. pp. 112-114. Brijbukhan's testimony is irrelevant as it relates to announcements supposedly made after lines had been formed, people had been stopped, and netting had been put up--he was holding the netting himself. Brijbukhan Dep. p. 41:13-43:19. The only officers who claim in their cited testimony that any instructions were given to the crowd over a bullhorn give testimony that is not time-specific and, to the extent they suggest that dispersal orders were given with a megaphone, cannot be credited given the wealth of evidence cited, by defendants, *supra*: when Franzo's claim that there was a dispersal order given is read in context rather than cited in isolation, it becomes clear that Franzo allegedly heard an announcement that occurred *after* the block had been sealed and police were prepared to make

arrests: Franzo could not say what had occurred before he arrived with his team, and stated that after the announcement, "almost the entire crowd" sat down--something that various plaintiffs and other officers allege occurred after the crowd was told it was under arrest and was ordered to sit. Franzo Dep. 38:22-40:25. Officer Chico, who arrived after the march had begun, testified that, though he was not present, he "knew" that orders were given by bullhorn before people began "moving northward;" his testimony is inconsistent with that of Essig and not based on any personal knowledge.  Chico Dep. p. 93:3-13. Pribetich's claim that Essig gave instructions over a bullhorn is contradicted by Essig himself. Pribetich Dep. p. 34:5-35:10. Connolly initially testified that the supervisors had bullhorns, Connolly Dep. p. 55:1-7, but later qualified his testimony, stating that "at least one" supervisor had a megaphone, but he couldn't recall who. *Id*. p. 57:12-18. The defendants' attempt to create a disputed fact by citing the vague testimony of these four officers cannot succeed: the record--based on the testimony of Essig and defendants' own witnesses, as cited by defendants--establishes that is undisputed that no dispersal orders were given.[3] Additionally, for the reasons noted in our replies to paragraphs 44, 45, 46, 47, 48, and 49, *supra*, defendants cannot dispute that Chandra did not hear any announcement to disperse. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

58. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. For the reasons outlined in paragraph 44, *supra*, defendants cannot dispute Chandra's assertion that if she had heard a dispersal order she would have dispersed: defendants have no knowledge of Chandra's actions, *see* Francis Mem.; the portions of testimony cited by

---

[3] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

defendants do not controvert the facts asserted, as none of the officers cited testified that he or she saw Chandra fail to leave after being instructed to do so; and defendants' citations to paragraphs 33-34, 43-44 and 46-50 of their Rule 56.1 statement point to assertions that are unsupported and do not raise any dispute about the uncontroverted facts Chandra asserts in paragraph 58. For the reasons stated in paragraph 57, *supra*, defendants cannot dispute that no dispersal order was given, and cannot dispute that Chandra did not hear any announcement to disperse. *See* paragraphs 44 and 57, *supra*. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

59. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Chandra's actions, *see* Francis Mem. The testimony of Officer Sam as cited by defendants does not controvert the facts asserted in paragraphs 59; Sam could not speak to Chandra's conduct prior to her arrest as he saw Chandra only one to two times before arresting her and did not remember where she was located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. Defendants' remaining citations to the testimony of other officers who claim that some individuals left 16th Street do not controvert the facts in plaintiffs' paragraph 59, as none of those officers speak about Chandra, or had any personal knowledge of her actions or whereabouts. Defendants' citation to paragraphs 43-44 and 46-50 of their Rule 56.1 statement does not raise any dispute about the uncontroverted facts Chandra asserts in paragraph 59 for the reasons stated in the response to paragraphs 47, 48, and 49, *supra*. In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

61. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Chandra's actions, *see* Francis Mem. The testimony of Officer Sam as cited by defendants does not controvert the facts asserted in plaintiffs' paragraphs 61; Sam could not speak to Chandra's conduct prior to her arrest; he saw Chandra only one to two times before arresting her and could not say where she was located or what she was doing. Sam Dep. pp. 255:21-257:24; 259:24-260:12. Defendants cite to paragraph 56 of their Rule 56.1 statement, which is completely unsupported by the facts: as outlined in Plaintiffs' Counterstatement it is clear that some properly credentialed members of the press were in fact arrested on East 16th Street. Moreover, defendants provide no explanation of how the blanket assertion in paragraph 56 of defendants' Rule 56.1 statement creates a disputed issue about the facts asserted in plaintiffs' paragraph 61, and defendants' citation to the sweeping allegations in this paragraph does not raise any dispute about the uncontroverted fact that Chandra attempted to get the attention of an officer but was ignored. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

62. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. The only citation is to a portion of Sam's testimony (Sam Dep. pp. 255:21-257:5), which does not speak to any of the facts asserted in plaintiffs' paragraph 62, but merely states that Sam saw Chandra before her arrest. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

70. Defendants do not dispute that Chandra was given a Desk Appearance Ticket (DAT) but dispute that Chandra had valid identification. Defendants cannot and did not dispute that the policy of the NYPD is to require that an arrestee have valid identification prior to issuance of a DAT. *See* Suero Dep. p. 196:10-199:6. The testimony of Sam as cited by defendants does not

call the facts asserted into question; Sam simply states that he did not fill out the form on which a person checked that Chandra's address was verified, it says nothing about her identification or lack thereof. Sam Dep. pp. 285:6-286:16. There is no evidence to dispute that Chandra had a valid identification on her person. Defendants' further statements in paragraph 70 are argument and do not dispute the facts. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

### Deepa Majmudar

73. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Plaintiff Majmudar testified that she had her valid driver's license on her person at the time of her arrest. Majmudar Dep. pp. 205:16-206:3. Officer Riggan testified that his paperwork indicated that Majmudar had a driver's license, Riggan Dep. p. 126:15-18, and that his usual way of verifying an arrestee's address is by checking for a valid New York State ID, *id*. p. 126: 12-4. Riggan's testimony that he could not recall whether the address Majmudar gave him and the address on her license were the same, see *id*. pp. 126:24-127:5, does not call into dispute the fact that Majmudar had her driver's license with her at the time of her arrest. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

78. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Defendants cite only to paragraphs 33-34 of their 56.1 statement, which essentially assert that people were free to "turn back" and decided to turn down 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs, which make sweeping and generalized assertions about many individuals,

create a disputed issue about the facts asserted in plaintiffs' paragraph 78. Indeed, defendants

acknowledge that the NYPD formed a line across Union Square East in paragraph 32 of their

Rule 56.1 statement. Moreover, the video evidence, which defendants cannot dispute, shows a

line of police officers directing the group east on East 16th Street. *See* Exhibits A and B to Moore

Declaration: Hall at 19:01:00-19:01:15, Swimberge at 28:00-28:50, Rothman at 30:50-31:45,

TARU 86 at 19:00:42-19:01:15, TARU 87 at 19:00:00-19:00:55, TARU 125 at 30:00-30:05. As

defendants have failed to specifically controvert the facts asserted these facts should be deemed

admitted.

   81. Defendants assert these facts are disputed but cite no evidence that creates a disputed

issue. As defendants have no knowledge of Majmudar's actions, *see* Francis Mem., they cannot

speak to when she was on or near East 16th Street, or her specific location, and therefore cannot

dispute that Majmudar did not see any vehicular traffic on 16th Street. None of the testimony

cited by defendants calls this fact into question. Walsh testified that she saw no cars on 16th

Street, Walsh 30:7-13. The testimony of Sperry does not discuss to whether there were or were

not cars or the road, but seems to insinuate that there were not. Sperry Dep. 104:19-21. Riggan

actually testified that he did not remember whether there were cars in the street. Riggan Dep. p.

94:4-9. The testimony of N. Rodriguez, when read in context, establishes only that Rodriguez

traveled in a police car going north on *Union Square East* sometime *before* people left the park.

Rodriguez Dep. pp. 42:20-46:13. Bizzarro's cited testimony does not speak to whether there

were actually cars in the road. Bizzaro Dep. 44:2-6. Sam's cited testimony does address the facts

in plaintiffs' paragraph 81 as it does not mention whether there were any cars in the street.  Sam

Dep. 307:19-308:6. The cited testimony of other individuals that they observed cars at various

times in various locations on Union Square East does not call into dispute the fact that Majmudar

did not observe any vehicles on 16th Street. (Walsh 30:14-21, 82:3-9; Essig 457:16-21; Connolly
Dep. 39:17-40:6; Cortright Dep. 56:8-13; Johnson 48:18). Defendants' citation to Rule 56.1
paragraphs that make sweeping and generic allegations about the acts of the "16th Street Parade"
and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in
paragraph 81. As defendants have failed to specifically controvert the facts asserted these facts
should be deemed admitted.

82. Although defendants assert that some individuals were permitted to leave the 16th
Street area before arrests were made, it is undisputed that at some point, Essig closed off East
16th Street between Union Square East and Irving Place with police lines, and arrested everyone
between those police lines, including Majmudar. *See* Essig Dep. 154:13-155:17; 162:4-7 ("once
we had the block frozen, the people who were on the block who didn't offer--who were on the
block, in the street, demonstrating, they were going to be arrested"), 755:2-4. Defendants cite
only paragraphs 54-55 and 57 of their Rule 56.1 Statement; these paragraphs are misleading and
unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally,
these paragraphs do not directly address the facts stated in plaintiffs' paragraph 82, and
defendants provide no explanation of how any of these paragraphs create a disputed issue. As
defendants have failed to specifically controvert the facts asserted these facts should be deemed
admitted.

83. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have
admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the
exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has
personal knowledge of individual conduct of that plaintiff which served as the basis for that
plaintiff's arrest." It is therefore clear that the facts as stated by Plaintiffs in paragraph 83 are

undisputed; it has already been establish as the law of the case that defendants have no knowledge of Majmudar's specific actions. Unsurprisingly, defendants' citation to the testimony of Officer Riggan does not establish that Riggan had any knowledge of Majmudar's actions. At Riggan Dep. p. 94:4-9, Riggan testified that "people were all over the place," but said nothing about Majmudar's conduct. Defendants' reference to Riggan's testimony at p. 145:15-17 is misleading as they cite to a portion of the testimony in which Riggan is attempting to recite what was written in his online booking sheet; in fact Riggan testified, consistent with Judge Francis' order, that he had not seen his five arrestees before they were assigned to him, *id*. p. 69:20-22, and that neither his supervisor nor any other officer told him anything about the arrestees, *id*. p. 70:6-12. Defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals, does not raise any dispute about the uncontroverted fact that no officer has any personal knowledge specific to Majmudar. Nor does defendants' quotation of Magistrate Judge Francis controvert the fact asserted; that Magistrate Judge Francis stated that defendants might make a legal argument that there was probable cause to arrest a plaintiff, despite the lack of knowledge about any of the specific actions of that plaintiff, does not create any factual dispute about any individual plaintiff's actions. This fact should be deemed admitted, in accordance with the order of Magistrate Judge Francis, and because defendants have failed to specifically controvert the facts asserted in paragraph 83.

84. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants cite a portion of Majmudar's testimony that does not controvert the facts asserted in plaintiffs' paragraph 84. As Majmudar's testimony at Majmudar Dep. pp. 85:23-

92:12 establishes the facts asserted and defendants cite no evidence that would dispute these facts, these facts should be deemed admitted.

85. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants cite a portion of Majmudar's testimony that does not controvert the facts asserted in plaintiffs' paragraph 85. Whether Majmudar asked the police at Irving Place if she could leave has nothing to do with whether Majmudar walked to the other side of 16th Street to see if she could leave the way she came in. As Majmudar's testimony at Majmudar Dep. pp. 92:9-93:7 establishes the facts asserted and defendants cite no evidence that would dispute these facts, these facts should be deemed admitted.

86 and 87. Defendants assert that the facts asserted in paragraphs 86 and 87 are disputed but cite no evidence that creates a disputed issue of fact. Paragraphs 86 and 87 discuss Majmudar's attempts to leave 16th Street and the refusal of officers to allow her to leave, defendants cite the same evidence in both paragraphs. Defendants have no knowledge of Majmudar's actions, *see* Francis Mem., and cannot dispute that she attempted to leave 16th Street but was not permitted to do so. Defendants only citation is to paragraphs 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and that some individuals, other than Majmudar, were permitted to exit East 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 86 and 87. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Majmudar asserts in paragraphs 86 and 87. In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan

Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

89. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Majmudar's actions, *see* Francis Mem. Riggen testified, consistent with Judge Francis' Order, that he had not seen his five arrestees before they were assigned to him, Riggen Dep. p. 69:20-22, and that neither his supervisor nor any other officer told him anything about the arrestees, Riggen Dep. p.70:6-12.  Riggen therefore had no knowledge of what any officer told Majmudar before she was arrested. The portion of Riggan's testimony cited by defendants, in which he is reciting what was written on his online booking form, does nothing to call the facts as stated into question. In addition, defendants do not explain how any of the seemingly unrelated Rule 56.1 paragraphs they cite (54, 55, and 57) relate to, let alone specifically controvert, the facts asserted. As defendants have failed to specifically controvert the facts asserted, these facts should be deemed admitted.

91. Defendants cite no evidence that creates a disputed issue regarding the fact that Majmudar never heard an order to disperse. Firstly, it is undisputed that no dispersal orders were given. In Defendants' 56.1 Statement, filed on October 3, 2011, as well as in their Memorandum of Law in Support of the Motion for Partial Summary Judgment filed on the same date, defendants make no mention of any order to disperse. Essig testified that he ordered people to "stop" without using a bullhorn, and did not know whether people could hear him. Essig Dep. pp. 112:16-113:6; 115:21-116:6. He stated "I don't recall the exact words...but in my mind I wanted the parade to stop, the music to stop...," *id*. p. 769-770:23-5, *see also* pp. 772-73; and that he did not remember using the word disperse, *see id*. pp. 783:12-786:2 ("I told them to stop. I wouldn't have told them to disburse because they were already under arrest); *id*. pp. 227:23-

30

228:3 ("Was the group told that they would be arrested if they did not disperse? That's when I attempted to go out and tell them to stop and turn down the music, it was very difficult to hear"); 779:7-11 ("A. Right I believe I testified I was telling them to stop. Q. You don't recall ever telling them, actually using the word "disbursed," correct, you don't recall that? A. No, no. Q. Maybe you did, maybe you didn't, but you don't recall that? A. I don't recall"). Essig's cited testimony otherwise discusses his alleged instructions to Lieutenants Cortright and Johnson to go down East 16th Street and try and remove people who were not part of the protest. *See id.* pp. 138:7-15, 170: 4-20, 171: 12-17, 756:5-20, 760: 2-13. Johnson's testimony confirms that he told "a lot" of people to leave the area, but did not use a megaphone; he stated "I don't know if they could hear me or not." Johnson Dep. pp. 51:9-52:12; 53: 8-16; 58:4-11. Johnson did not know how many people he spoke to. *Id.* pp. 64:16-65:15.  Cortright also testified that he went up the block and told people to leave, but that he did not use a megaphone.  *See* Cortright Dep. pp. 58:8-9; 59:21; 60:20-22.  Dieckmann testified that when he arrived on the scene and got out of his car he started yelling at people to stop and go back to the park, but he did not use a megaphone, and could not tell whether people heard. *See* Dieckmann Dep. pp. 57:24-25; 59:20-60:3. Baity merely confirms that numerous supervisors were "saying to disperse from the block," but Baity didn't remember whether anyone used bullhorns and never himself gave an order to disperse. Baity Dep. pp. 45:21-47:13. Loftus likewise recalls hearing orders to leave the area, but they were given through voice, not bullhorns, and he did not remember the specifics of what was said.  *See* Loftus Dep. pp. 49:16, 50:12, 59:16-22. Sam similarly testified that supervisors were giving orders "somewhere on the block," he could not remember the supervisors having bullhorns, and Sam himself gave orders only to "anyone within reach." Sam Dep. pp. 87:3-89:13; 92:5-10. Bonacci heard an announcement made by voice without amplification. Bonacci

Dep. p. 24:2-8. Sarrubbo recalls whiteshirts and Essig telling people to leave but at that time he does not think either were using a bullhorn, and he could not recall Essig's exact words. Sarrubbo Dep. pp. 53:18-54:7; 63:5-19. N. Rodriguez testified that police formed a line on 16th Street and told approaching individuals to stop moving forward; that "they would not be allowed to proceed down the block and they had to turn around and leave," there is no mention of officers ordering the crowd to "disperse" or permitting anyone to pass the police line at Irving Place in order to leave the area. N. Rodriguez Dep. pp. 60:3-63:25. Arrestee Clifford merely noted that he personally was told at some point to leave by an officer with a white shirt; Clifford was near the press and was taking photographs with a camera. Clifford Dep. pp. 112-114. Brijbukhan's testimony is irrelevant as it relates to announcements supposedly made after lines had been formed, people had been stopped, and netting had been put up--he was holding the netting himself. Brijbukhan Dep. p. 41:13-43:19. The only officers who claim in their cited testimony that any instructions were given to the crowd over a bullhorn give testimony that is not time-specific and, to the extent they suggest that dispersal orders were given with a megaphone, cannot be credited given the wealth of evidence cited, by defendants, *supra*: when Franzo's claim that there was a dispersal order is read in context rather than cited in isolation, it becomes clear that Franzo allegedly heard an order that occurred *after* the block had been sealed and police were prepared to make arrests: Franzo could not say what had occurred before he arrived with his team, and stated that after the announcement, "almost the entire crowd" sat down--something that various plaintiffs and other officers allege occurred after the crowd was told it was under arrest and was ordered to sit. Franzo Dep. 38:22-40:25. Officer Chico, who arrived after the march had begun, testified that, though he was not present, he "knew" that orders were given by bullhorn before people began "moving northward;" his testimony is inconsistent with

that of Essig and not based on any personal knowledge.  Chico Dep. p. 93:3-13. Pribetich's claim

that Essig gave instructions over a bullhorn is contradicted by Essig himself. Pribetich Dep. p.

34:5-35:10. Connolly initially testified that the supervisors had bullhorns, Connolly Dep. p. 55:1-

7, but later qualified his testimony, stating that "at least one" supervisor had a megaphone, but he

couldn't recall who. *Id.* p. 57:12-18. The defendants' attempt to create a disputed fact by citing

the vague testimony of these four officers cannot succeed: the record--based on the testimony of

defendants' own witnesses, as cited by defendants--establishes that is undisputed that no

dispersal orders were given.[4]  Secondly, as defendants have no knowledge of Majmudar's

actions, *see* Francis Mem., defendants cannot dispute that Majmudar did not hear any

announcement to disperse. As defendants have failed to specifically controvert the fact asserted,

this fact should be deemed admitted.

      92. Defendants assert these facts are disputed but cite no evidence that creates a disputed

issue. Defendants have no knowledge of Majmudar's actions, *see* Francis Mem. Riggan's

testimony does not call the facts asserted into question: Riggan testified that he had not seen his

five arrestees, including Majmudar, before they were assigned to him, Riggan Dep. p. 69:20-22,

and that neither his supervisor nor any other officer told him anything about the arrestees, *id.* p.

70:6-12. Riggan further testified that he could not remember whether he handcuffed Majmudar

or whether she was already handcuffed when he first saw her, *id.* pp. 29:22-31:7. He therefore

cannot dispute that the officer who handcuffed Majmudar told her that she got caught in the

wrong place at the wrong time. The cited portion of Riggan's testimony (id. p. 145:15-17) is yet

another misleading attempt to make Riggan's testimony about what he wrote on the online

---

[4] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories,
one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a
court should not adopt that version of the facts for purposes of ruling on a motion for summary
judgment").

booking form appear to be testimony about what he observed Majmudar doing, which it was not--his testimony clearly establishes that he did not see Majmudar before she was assigned to him for arrest. Regardless, the cited portion of testimony has nothing to do with the facts asserted in paragraph 92. As defendants have failed to specifically controvert the facts asserted, these facts should be deemed admitted.

93. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Majmudar's actions, *see* Francis Mem., and cannot dispute that she observed people who attempted to leave but were prevented from doing so. Defendants only citation is to paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other than Majmudar, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 93. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Majmudar asserts in paragraph 93.  In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street.  *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

94. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Majmudar's actions, *see* Francis Mem. Defendants only citation is to paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other

than Majmudar, were permitted to exit East 16th Street; and paragraphs 54-55 and 57 of their

Rule 56. Statement, which essentially assert that Essig and Dieckmann made the decision to

arrest. The assertions in these paragraphs of defendants' Rule 56.1 statement are at least partially

unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide

no explanation of how any of these paragraphs create a disputed issue about the facts asserted in

plaintiffs' paragraph 93. Defendants' citation to the sweeping allegations in these Rule 56.1

paragraphs does not raise any dispute about the uncontroverted facts Majmudar asserts in

paragraph 93.  In addition, the undisputed facts show that individuals were not permitted to exit

East 16th Street.  *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to

specifically controvert the fact asserted this fact should be deemed admitted.

### Celine Malanum

104. Defendants assert these facts are disputed but cite no evidence that creates a

disputed issue. As defendants have no knowledge of Malanum's actions, *see* Francis Mem.,

defendants cannot speak to when she was on or near Union Square East, or her specific location;

defendants therefore cannot dispute that Malanum did not see any vehicular traffic on Union

Square East. None of the testimony cited by defendants calls this fact into question. The

testimony of Sperry does not discuss to whether there were or were not cars or the road, but

seems to insinuate that there were not. Sperry Dep. 104:19-21. Riggan actually testified that he

did not remember whether there were cars in the street. Riggan Dep. p. 94:4-9. The testimony of

N. Rodriguez, when read in context, establishes only that Rodriguez traveled in a police car

going north on Union Square East past 16th Street sometime *before* people left the park.

Rodriguez Dep. pp. 42:20-46:13. Bizzarro's cited testimony does not speak to whether there

were actually cars in the road. Bizzaro Dep. 44:2-6. Sam's cited testimony does not mention

whether there were any cars in the street. Sam Dep. p. 307:19-24. The cited testimony of other individuals that they observed cars at various times in various locations on Union Square East does not call into dispute the fact that Malanum herself did not observe any vehicles. (Walsh 30:14-21, 82:3-9; Essig 457:16-21; Connolly Dep. 39:17-40:6; Cortright Dep. 56:8-13; Johnson 48:18). Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 104. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

105. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. As defendants have no knowledge of Malanum's actions, *see* Francis Mem., defendants cannot dispute that Malanum did not hear any police officer give any instructions or warnings. Defendants' citations to the testimony of various officers claiming that either they or fellow officers were giving unamplified warnings to some people does not controvert Malanum's testimony that she did not hear any of these alleged warnings; indeed, both Inspector Essig and Officer Johnson testified that they did not know whether people could hear them. Essig Dep. pp. 112:16-113:6; Johnson Dep. pp. 51:9-52:12; 53: 8-16; 58:4-11. For the reasons outlined in paragraph 91, supra, it is undisputed that no dispersal orders were given, and undisputed that any warnings that were allegedly given were given by individuals without megaphones to some, but not all, of the individuals on 16th Street. *See* paragraphs 57 and 91, *supra* (addressing the same sources cited by defendants in paragraph 105). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

107. Defendants claim to dispute the facts stated in Plaintiffs' paragraph 107 but the citations and quotes provided by defendants do not dispute the facts asserted in any way. As

defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

109. Defendants assert that the facts are disputed but cite no evidence that creates a disputed issue regarding the fact as asserted. Plaintiffs' paragraph 109 simply asserts that the only people Malanum could say for certain that she personally saw in the streets were police officers. Neither the video evidence cited nor the paragraphs from Defendants' Rule 56.1 cited call this assertion into dispute; this fact should be deemed admitted.

110. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The citations of defendants do not put this fact, which is supported by Malanum's testimony at Malanum Dep. p. 244: 7-19, in dispute. Chandra testified that she did not see any police interacting with any of the people when she first go to Union Square Park, but police did interact with people after she was detained, Chandra 50-H p. 16:7-17:7; at her deposition Chandra expanded on her 50-H testimony by explaining that between the time she arrived and the time she was detained, she did observe police peacefully interacting with people, Chandra Dep. pp. 126:20-127:16. Observations by Malanum in the testimony cited by defendants that the police had blocked of Union Square East do not call the facts asserted in plaintiffs' paragraph 110 into dispute, nor does Grimshaw's cited testimony that the first time he heard police give any "orders" was after people started marching. Grimshaw 50-H 17:15-18:2. That Officers Johnson and Dieckmann claim to have told some individuals that the parade was not permitted and to stop does not call into dispute Malanum's assertion that she saw officers talking to people and the officers she saw did not appear to be concerned. Johnson Dep. 127-128:10-15; and Dieckmann Dep. 57:24-25. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

111. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants cite to several portions of testimony where Malanum and Chandra simply testified that they turned onto 16th Street (Malanum 50-H 9:19-10:13, Malanum Dep. p. 263:16-25, Chandra Dep. pp. 35:10-17, 116:17-25); these statements do not contradict the facts asserted, which are supported by Malanum's testimony at Malanum Dep. p. 248:4-251:19. Defendants cite to paragraphs 33-34 of their Rule 56.1 statement, which essentially assert that people were free to "turn back" and decided to turn down 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; additionally, the sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals in these paragraphs do not controvert the facts asserted in paragraph 111. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

112. Although defendants assert that some individuals were permitted to leave the 16th Street area before arrests were made, it is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines, including Malanum. *See* Essig Dep. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"), 755:2-4. Defendants cite only paragraphs 54-55 and 57 of their Rule 56.1 Statement; these paragraphs are misleading and unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally, these paragraphs do not directly address the facts stated in plaintiffs' paragraph 112, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As

defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

113. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest." It is therefore clear that the facts as stated by Plaintiffs in paragraph 113 are undisputed; it has already been established as the law of the case that defendants have no knowledge of Malanum's specific actions. Unsurprisingly, defendants' citation to the testimony of Officer Sam does not establish that Sam had any knowledge of Malanum's actions.  Sam testified that he saw Malanum only two to three times before arresting her. According to Sam, he saw Malanum on the first occasion in the street, and he observed her for only seconds, during which time she did nothing other than move away from him, Sam. Dep. pp. 250:2-19; 253:2-254:25. Sam testified that he saw Malanum on one or two additional occasions, but could not say on those occasions "exactly where it was, whether it was in the street or on the sidewalk." *Id*. p. 255:21-257:24. Sam therefore did not observe Malanum's actions prior to her arrest, aside from observing that she was on 16th Street. Defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals, does not raise any dispute about the uncontroverted fact that no officer has any personal knowledge specific to Malanum. Nor does defendants' quotation of Magistrate Judge Francis controvert the fact asserted; that Magistrate Judge Francis stated that defendants might make a legal argument that there was probable cause to arrest a plaintiff, despite the lack of knowledge about any of the specific actions of that plaintiff, does not create

any factual dispute about any individual plaintiff's actions.  This fact should be deemed admitted, in accordance with the order of Magistrate Judge Francis, and because defendants have failed to specifically controvert the fact asserted in paragraph 113.

114. Defendants cite no evidence that creates a disputed issue regarding the fact that Malanum never heard police directions or an order to disperse. Firstly, for the reasons outlined in paragraph 57, *supra*, it is undisputed that no orders to disperse were given. Secondly, as defendants have no knowledge of Malanum's actions, *see* Francis Mem., defendants cannot dispute that Malanum did not hear any announcement to disperse. *See* paragraph 105, *supra*. As defendants have failed to specifically controvert the facts asserted, these facts should be deemed admitted.

115. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. For the reasons outlined in paragraph 104, *supra*, defendants cannot dispute that Malanum did not see any vehicular traffic. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

116. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Malanum's actions, *see* Francis Mem., and therefore cannot possibly dispute the time at which Malanum became worried or that Malanum was not permitted to leave. Sam's cited testimony does not controvert the facts asserted by plaintiffs in paragraph 116; Sam testified that he saw Malanum on one occasion in the street for only seconds, Sam. Dep. pp. 250:2-19; 253:2-254:25, and on one or two additional occasions, but could not say on those occasions where she was or what she was doing. *Id*. p. 255:21-257:24. Defendants also cite paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other than

Malanum, were permitted to exit East 16th Street. The assertions in these paragraphs of

defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs'

Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs

create a disputed issue about the facts asserted in plaintiffs' paragraph 116. Defendants' citation

to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the

uncontroverted facts Malanum asserts in paragraph 116. In addition, the undisputed facts show

that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. p. 45:24-46:6;

48:8-18; 49:7-17. As defendants have failed to specifically controvert the fact asserted this fact

should be deemed admitted.

117. Plaintiffs acknowledge that Officer Sam claims to have seen Ms. Malanum standing

in "the street" at some point. Sam Dep. p. 250:12-14. Plaintiffs note, however, that Officer Sam

saw Malanum for only "seconds," *id.* p. 253:18-20, 253:21-254:25 and saw her "moving around"

but could not say in which direction she moved, other than away from him. Given this

testimony, Sam could not say why or for how long Malanum was allegedly in the street, or

whether, for example, Malanum was crossing the street from one sidewalk to the other at the

time that he allegedly saw her.

118. Defendants assert these facts are disputed but cite no evidence that creates a

disputed issue. Defendants have no knowledge of Malanum's actions, *see* Francis Mem. Sam's

cited testimony does not controvert the facts asserted by plaintiffs in paragraph 118. Sam

testified "at some point I do know that people did leave," without elaboration on how he "knew"

this or how many people he claims he saw exit 16th Street, Sam Dep. p. 70:17-18. Sam stated that

he didn't know whether people were asking permission to leave or were just leaving, noting "I

wasn't at the mouth of it, but I did notice that people were exiting, I don't know how they were

exiting or who gave permission…" *id*. p. 230:7-12, and further claimed that people were "afforded" the opportunity to leave, *id*. p. 298 10-15. None of this testimony controverts Malanum's assertion that she observed that people were not being permitted to exit through the barricade at Irving Street and 16th Street.   Defendants also cite paragraphs 43-44 and 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other than Malanum, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 118. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Malanum asserts in paragraph 118.  In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street.  *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

      119, 120 and 122. Defendants assert that the facts asserted in paragraphs 119, 120 and 122 are disputed but cite no evidence that creates a disputed issue of fact. Paragraphs 119, 120 and 122 discuss Malanum's observation of a barricade at Union Square East and her attempts to exit 16th Street; defendants cite the same evidence in both paragraphs. Defendants have no knowledge of Malanum's actions, *see* Francis Mem., and cannot dispute that she attempted to leave 16th Street, and observed others who tried to exit 16th Street but were not permitted to leave. Defendants' only citation is to paragraphs 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and that some individuals, other than Malanum, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule

56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 119, 120 and 122. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Malanum asserts in paragraphs 119, 120 and 122. In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

123. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Given the cited portions of Sam's testimony, it is unclear what, if anything, plaintiffs dispute about the facts asserted in paragraph 123. Sam's cited testimony (Sam Dep. 250:2-6, 253:23-254:8, 255:21-256:24, 159:24-260:2) does not relate in any way to the time of Malanum's arrest, but is testimony regarding to the 2-3 times Sam claims he saw Malanum, for seconds, somewhere on 16th Street before her arrest. As none of this testimony controverts the facts alleged in plaintiffs' paragraph 123, those facts should be deemed admitted.

124. Defendants do not dispute any fact other than the assertion that "the cages were black like charcoal," all other facts in plaintiffs' paragraph 124 should therefore be deemed admitted.

126. Defendants do not dispute that Malanum was released from Central booking with a Desk Appearance Ticket (DAT) at some time between 9:30 AM and 11:30 AM on September 2, 2011; those facts should therefore be deemed admitted. Defendants do not dispute that Malanum was issued a DAT, and they cannot and do not dispute that the policy of the NYPD is to require that an arrestee have a valid identification prior to issuance of a DAT. *See* Suero Dep. p. 196:10-

199:6. The testimony of Sam as cited by defendants does not call the facts asserted into question; Sam simply states that he did fill out portions of Malanum's DAT form, he says nothing about identification. Sam Dep. p. 193:4-12. There is no evidence to dispute that Malanum had a valid identification on her person. Defendants' further statements in paragraph 126 are argument and do not dispute the facts. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

### Danielle Walsh

132. It cannot be disputed that Ms. Walsh had no plans to attend protests during the RNC. Walsh's testimony that she did not plan to attend any events during the RNC or any protests, demonstrations or marches during the RNC could not be clearer. Walsh Dep. p. 12:21-13:2. Even defendants do not dispute that Walsh did not go to Union Square Park to attend an RNC event, but browsed with her friend in Virgin Records upon her arrival in the Union Square Park area (defendants do not dispute the facts alleged in plaintiffs' paragraph 133). Defendants' citation to Walsh's testimony that she was in the park after visiting the record store, that she wanted to leave, that she was with two friends, and that because she did not want to leave her friends she "just went" with them when they went "to see what was going on" and walked behind a band, does not controvert the facts asserted in plaintiffs' paragraph 132. *Id.* pp. 15:14-21:1. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

138.  Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. When read in context, the cited testimony of Walsh is consistent with, not contrary to, the facts asserted in paragraph 138. Indeed Walsh's cited testimony supports the facts as asserted by plaintiffs. *See* Walsh dep. pp. 15:14-21:12, Walsh 50-H 18:5-9. Defendants

also cite to paragraphs 12 and 21-24 of their Rule 56.1 statement, which make sweeping allegations about other individuals, the park, and the "16th Street Parade." The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement. In addition, these paragraphs do not speak to Walsh's conduct in any way, and defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 138. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts asserted in plaintiffs' paragraph 138. Defendants cannot dispute these facts, as they have no knowledge of Walsh's actions. *See* Francis Mem. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

140. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue When read in context, the cited testimony of Walsh is consistent with, not contrary to, the facts asserted in plaintiffs' paragraph 140—Walsh testified that she walked on the sidewalk aside from when she crossed Union Square East, which she did by climbing over a median. Walsh Dep. pp. 30:7-32:2. Defendants also cite to paragraphs 28-31 of their Rule 56.1 statement, which make sweeping allegations about other individuals and the "16th Street Parade." The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement. In addition, these paragraphs do not speak to Walsh's conduct in any way, and defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 140. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts asserted in plaintiffs' paragraph 140. Defendants cannot dispute these facts, as they have no knowledge of Walsh's actions. *See* Francis Mem. As

defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

141. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants are in no position to dispute that Walsh did not see any barriers before entering 16th Street, as defendants have no knowledge of Walsh's actions. *See* Francis Mem. Defendants cite to no source other than paragraph 32 of their 56.1 Statement. That the NYPD formed a line across Union Square East at some point, as asserted in defendants' paragraph 32, does not controvert that Walsh did not see any police barriers. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

142. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. As defendants have no knowledge of Walsh's actions, *see* Francis Mem., they cannot speak to when she was on or near East 16th Street, or her specific location; defendants therefore cannot dispute that Walsh did not see any vehicular traffic on 16th Street. For the reasons outlined in paragraph 81, *supra*, the testimony cited by defendants does not create any disputed issue. *See* paragraph 81, *supra* (discussing the same citations by defendants). Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 142. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

143. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. As defendants acknowledge that police formed a line at Irving Place and 16th Street, it is difficult to understand how defendants can "dispute" that Walsh observed this blockade. Defendants cite to nothing other than paragraphs 43-44 and 46-50 of their Rule 56.1

Statement, which generally assert that people were free to turn back and/or leave and that some individuals, other than Walsh, were permitted to exit 16th Street. These sweeping and generic allegations do not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 143. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

144. *See* response to paragraph 17, *supra*.

145. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest." It is therefore clear that the facts as stated by Plaintiffs in paragraph 145 are undisputed; it has already been established as the law of the case that defendants have no knowledge of Walsh's specific actions. Unsurprisingly, defendants' citation to the testimony of Officer Suero does not establish that Suero had knowledge of Walsh's actions. Suero testified that after netting went up around the people on 16th Street, he was "told to take five prisoners," Suero Dep. p. 85:10-20; that he "picked out the five females who were in front of [him]," based on proximity, *id*. pp. 88:15-18, 89:13-90:2; and that he did not know whether his arrestees were protestors, or how they came to be on 16th Street, *id*. p. 90:3-8. Suero also testified as follows:

> Q. Focusing for a minute on Danielle Walsh, your arrestee with the white hair, when was the first time you saw her?
>
> A. I saw her in 16th Street.
>
> Q. Where was she when you first saw her?
>
> A. Exactly? I don't recall exactly where she was. She was on 16th Street. I don't know.

Q. When you first saw her, was she on the street or on the sidewalk?

A. I don't recall exactly, where exactly I saw her on that date.

Q. You don't remember exactly?

A. I mean she was--her in particular, no. I don't remember her, no.

*Id*. pp. 153:24-154:16. Suero continued:

Q. Was she stationary or moving when you first saw her?

A. I don't recall. I don't' remember whether she was stationary or not.

Q. Was she on the south side of the north side of 16th Street when you first saw her?

A. I don't remember.

Q. Do you know how she came to be on 16th Street?

A. No, I do not.

Q. Do you know if she came out of one of the buildings on 16th Street?

A. No, I do not.

*Id*. pp. 155:9-156:3. Remarkably, defendants pull other portions of Suero's testimony out of context in an attempt to make his testimony that Walsh was part of a group appear to be testimony that he personally observed actions that led to her arrest. A reading of this testimony in context demonstrates that Suero's testimony, which is vague regarding timing, sometimes contradictory, and full of assumptions, establishes only that Walsh was on the sidewalk on 16th Street before she was arrested. *See id*. pp. 153:24- 164:12. In addition, defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals, does not raise any dispute about the uncontroverted fact that no officer has any personal knowledge specific to Walsh. Nor does defendants' quotation of Magistrate Judge Francis controvert the fact asserted; that Magistrate

48

Judge Francis stated that defendants might make a legal argument that there was probable cause to arrest a plaintiff, despite the lack of knowledge about any of the specific actions of that plaintiff, does not create any factual dispute about any individual plaintiff's actions. This fact should be deemed admitted, in accordance with the order of Magistrate Judge Francis, and because defendants have failed to specifically controvert the fact asserted in paragraph 145.

146, 147, 148, 149. Defendants assert that the facts asserted in paragraphs 146, 147, 148 and 149 are disputed but cite no evidence that creates a disputed issue of fact. Paragraphs 146, 147, 148 and 149 discuss Walsh's attempts to exit 16th Street and observations of other individuals who were not permitted to leave; defendants cite the same evidence in all four paragraphs. Defendants have no knowledge of Walsh's actions, *see* Francis Mem., and cannot dispute that she attempted to leave 16th Street and observed that others were not permitted to leave. Defendants only citation is to paragraphs 43-44 and/or 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other than Walsh, were permitted to exit East 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 146, 147, 148 and 149. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Walsh asserts in paragraphs 146, 147, 148 and 149. In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street. *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

150. Defendants cite no evidence that creates a disputed issue regarding the fact that "up to this point" Walsh did not hear police orders or directives. Firstly, for the reasons outlined in paragraph 57, *supra*, it is undisputed that no dispersal orders were given. Secondly, as defendants have no knowledge of Walsh's actions, *see* Francis Mem., defendants cannot dispute that Walsh, in her location and at this point in time, had not heard any police announcements. As defendants have failed to specifically controvert the fact asserted, this fact should be deemed admitted.

152. For the reasons outlined in plaintiffs' response to defendants' paragraphs 146, 147, 148 and 149, *supra*, defendants have failed to specifically controvert the facts asserted and these facts should be deemed admitted.

154. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The citation and quotation provided by defendants does not relate to the facts asserted, and defendants do not dispute elsewhere that people on 16th Street were placed into groups of five and assigned to arresting officers. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

156. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Walsh testified that she had her New York State ID at the time of her arrest. Walsh Dep. p. 64:1-12. The testimony of Officer Suero, cited by defendants, does not call this assertion into dispute; Suero's cited testimony is entirely unrelated to Walsh, as he is discussing the DAT forms he filled out for arrestees Loayza, Scherfer, and Lemmo. Suero Dep. pp. 196:10-199:22. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

**Emily Freidman**

164. As defendants do not dispute any of the facts as asserted in plaintiffs' paragraph 164, those statements should be deemed admitted. Defendants' statement that they "do not dispute" that Plaintiff Friedmann "intended on participating in the protests at Union Square" is a mischaracterization of the facts asserted by plaintiffs; Ms. Friedmann went to Union Square Park because people were gathering there, but had not "plan" to "participate" in any specific "protest."

167. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The cited portions of Friedman's testimony are entirely consistent with the facts asserted by plaintiffs in paragraph 167. Friedman's testimony, when read in context, supports the facts as asserted; see Friedman Dep. pp. 173:3-16, 234:19-237:4, 239:19-240:22; Friedman 50-H p. 7:5-9. Defendants cite to paragraphs 6, 12, and 14 of their Rule 56.1 statement, which make sweeping generalizations about other individuals, the park, and a general "plan," but make no reference to the conduct of Friedman. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement, and defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 167. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and their citation to these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Friedman asserts in paragraph 167.   As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

168. As defendants do not dispute any of the facts asserted in plaintiffs' paragraph 168, those facts should be deemed admitted. Plaintiffs' dispute defendants' add-on assertion that Friedman "followed" the band; the testimony cited by defendants (Friedman Dep. p. 239:10-22) does not establish any such fact.

169. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute that she walked up Union Square East on the sidewalk. Defendants' only citation is to paragraphs 26-31 of their Rule 56.1 statement. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraph 169; and defendants' citation to these sweeping allegations about the conduct of people other than Friedman does not raise any dispute about the uncontroverted facts Friedman asserts in paragraph 169. In addition, even if true, defendants assertions in these paragraphs do not call the facts as stated in plaintiffs' paragraph 169 into dispute: defendants paragraph 26 states that people proceeded north on Union Square East on both the sidewalk and in the roadway; Friedman's assertion that she walked up Union Square East on the sidewalk is entirely consistent with this paragraph. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

170. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute the facts asserted. The facts asserted in plaintiffs' paragraph 170 are supported by Friedman's testimony at Friedman Dep. p. 242:17-24; the portions of Friedman's testimony cited by defendants (*id*. pp. 278:7-14, 287:19-24, 291:14-19 and 343:14-344:6) are entirely consistent with the facts asserted when read in context (for example, at *id*. p. 344:6-12 Friedman testifies that it became overwhelming for her and she wanted to leave before she got to 16th Street). Defendants citation to paragraph 24 of their Rule 56.1 statement does not put the facts asserted in plaintiffs' paragraph 170 in dispute; the facts asserted in defendants' paragraph

24 are unsupported, as outlined in Plaintiffs' Counterstatement, and the vague assertion regarding "hundred of individuals" does not address Freidman's uncontroverted testimony. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

171. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute the facts asserted. The facts asserted in plaintiffs' paragraph 170 are supported by Friedman's testimony at Friedman Dep. pp. 250:15-251:6, 256:11-15; the portions of Friedman's testimony cited by defendants do not even address the facts asserted in plaintiffs' paragraph 171  (*id.* pp. 278:7-14, 287:19-24, 291:14-19 and 343:14-344:6), and are entirely consistent with the facts asserted. Defendants' citation to paragraphs 22 and 24 of their Rule 56.1 statement does not put the facts asserted in plaintiffs' paragraph 171 in dispute; the facts asserted in defendants' cited paragraphs are unsupported, as outlined in Plaintiffs' Counterstatement, and the vague assertions regarding the "16th Street Parade" and "hundred of individuals" do not address Freidman's uncontroverted testimony. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

172. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute the facts asserted. The facts asserted in plaintiffs' paragraph 172 are supported by Friedman's testimony at Friedman Dep. p. 244:12-20; the portions of Friedman's testimony cited by defendants (*id.* pp. 278:7-14, 287:19-24, 291:14-19 and 343:14-344:6) are entirely consistent with the facts asserted when read in context.  Defendants' citation to paragraphs 24 and 26-27 of their Rule 56.1 statement does not put the facts asserted in plaintiffs'

paragraph 172 in dispute; the facts asserted in defendants' cited paragraphs are unsupported, as outlined in Plaintiffs' Counterstatement, and the sweeping assertions regarding "hundreds of individuals" and "the 16th Street Parade" do not address Freidman's uncontroverted testimony. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

173. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute that she heard no police orders or directions.  Defendants' citations (Grimshaw 50-H 17:15-18:2; Johnson Dep. 127-128:10-15; and Dieckmann Dep. 57:24-25) do not controvert the asserted facts: whether Plaintiff Grimshaw heard orders given by officers at some point, Officer Johnson told some people on the street at some point that there was no permit, and Officer Dieckmann told some people on the street at some point to stop, is immaterial to whether Friedmann heard any orders. *See also* paragraph 150, *supra*. Defendants citation to paragraphs 32-33 of their Rule 56.1 statement does not put the facts asserted in plaintiffs' paragraph 173 in dispute; the facts asserted in defendants' cited paragraphs are unsupported, as outlined in Plaintiffs' Counterstatement, moreover the substance of those paragraphs does not address the facts asserted in plaintiffs' paragraph 173 and defendants do not explain how the paragraphs relate to, let alone specifically controvert, the facts asserted. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

174. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. As defendants have no knowledge of Friedman's actions, *see* Francis Mem., they cannot speak to when she was on or near Union Square East, or her specific location; defendants