therefore cannot dispute that Friedman did not see any vehicular traffic on 16th Street. For the reasons stated in paragraph 81, *supra* (for which defendants cited the same sources), none of the testimony cited by defendants calls this fact into question. Defendants' citation to Rule 56.1 paragraphs that make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 174. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

175. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and therefore cannot dispute the facts asserted. The facts asserted in plaintiffs' paragraph 170 are supported by Friedman's testimony at Friedman Dep. pp. 283:7-20; the portion of Friedman's testimony cited by defendants, *id.* pp. 343:14-344:6, is entirely consistent with the facts asserted when read in context (at *id.* p. 344:6-12 Friedman testifies that she wanted to leave before she got to 16th Street). The cited testimony of Rodriguez at N. Rodriguez Dep. 75:14-23 has no relation to the facts asserted in paragraph 175. Defendants citation to paragraphs 33-34, 38, 51, 54-55 and 57 of their Rule 56.1 statement does not put the facts asserted in plaintiffs' paragraph 175 in dispute; the facts asserted in defendants' cited paragraphs are unsupported, as outlined in Plaintiffs' Counterstatement; defendants do not explain how the (seemingly unrelated) paragraphs relate to, let alone specifically controvert, the facts asserted; and vague assertions regarding the "16th Street Parade" and other individuals do not address Freidman's uncontroverted testimony. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

176. *See* paragraph 17, *supra.*

177. Judge Francis' November 28, 2006 order states, "the defendants are deemed to have admitted that, with respect to each plaintiff in the MacNamara, Abdell, and Adams case (with the exception of plaintiff Chris Thomas), they cannot identify any member of the NYPD who has personal knowledge of individual conduct of that plaintiff which served as the basis for that plaintiff's arrest." It is therefore clear that the facts as stated by Plaintiffs in paragraph 177 are undisputed; it has already been established as the law of the case that defendants have no knowledge of Friedman's specific actions. Unsurprisingly, defendants' citation to the testimony of Officer Rodriguez does not establish that Rodriguez had any knowledge of Friedmann's actions, beyond the knowledge that she was present on 16th Street. Rodriguez testimony, when read in context, establishes that he claims he saw his five arrestees, whose names he could not remember and who he could not describe aside from one woman with a "some kind of painting or something just under her neck," (N. Rodriguez Dep. pp. 75:24-76:7; 6:22-25), "towards the front of the crowd"(id. p. 77:5-18). Rodriguez testified that when he first saw his five arrestees, some of the arrestees were on the sidewalk and some of them were on the street, and he was not sure which arrestee was in which location (id. p. 77:19-23); Rodriguez testified that all of his arrestees were on the sidewalk at the time that he went to arrest them (id. p. 78:4). See generally N. Rodriguez Dep. pp.73:15-79:11. Thus the testimony of Rodriguez does not establish that any member of the NYPD had any personal knowledge of Friedman's actions, aside from knowledge that Friedman was present on 16[th] Street on the sidewalk, which she concedes. Defendants' citation to twenty-five of their Rule 56.1 paragraphs, which make sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals, does not raise any dispute about the uncontroverted fact that no officer has any personal knowledge specific to Friedmann. Nor does defendants' quotation of Magistrate Judge Francis controvert the fact

asserted; that Magistrate Judge Francis stated that defendants might make a legal argument that

there was probable cause to arrest a plaintiff, despite the lack of knowledge about any of the

specific actions of that plaintiff, does not create any factual dispute about any individual

plaintiff's actions. This fact should be deemed admitted, in accordance with the order of

Magistrate Judge Francis, and because defendants have failed to specifically controvert the fact

asserted in paragraph 177.

178. Defendants assert these facts are disputed despite Friedman's clear and

unambiguous testimony supporting the facts as asserted by plaintiffs, *see* Friedman Dep. 267:6-

7; 287:4-11, and despite defendants lack of any knowledge of Friedman's actions, *see* Francis

Mem. Defendants misleadingly cite to a portion of Officer Rodriguez's testimony in which he

stated he observed his five arrestees "marching down the street," despite Rodriguez's clear

testimony two pages later at 77:19-78:5:

> Q. Were [the five arrestees] on the street or on the sidewalk?
>
> A. Well, it was a combination of both, a couple on the street and a couple on the
> sidewalk.
>
> Q. The one that you remember that had the design on her collarbone, was she in
> the street or on the sidewalk?
>
> A. I'm not sure.

It is obvious from reading the testimony in context that when Rodriguez stated that people were

"marching down the street," he did not mean literally *in* the street: his testimony that some of the

people he arrested were on the sidewalk is extremely clear. For a full picture of Rodriguez's

testimony *see generally* N. Rodriguez Dep. pp.73:15-79:11. Defendants cite no evidence that

creates a disputed issue. As defendants have failed to specifically controvert the fact asserted this

fact should be deemed admitted. Defendants' further citation to Rule 56.1 paragraphs that make

sweeping and generic allegations about the acts of the "16th Street Parade" and other individuals does not raise any dispute about the uncontroverted facts plaintiffs assert in paragraph 178. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

179, 180, 182, 183. Defendants assert that the facts asserted in paragraphs 179, 180, 182, and 183 are disputed but cite no evidence that creates a disputed issue of fact. Paragraphs 179, 180, 182, and 183 discuss Friedman's attempts to exit 16th Street and her inability to do so; defendants cite the same evidence in all four paragraphs. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and cannot dispute that she attempted to leave 16th Street but was unable to do so. Defendants only citation is to paragraphs 43-44 and/or 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and/or turn back and that some individuals, other than Friedman, were permitted to exit East 16th Street. The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs' paragraphs 179, 180, 182, and 183. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Friedman asserts in 179, 180, 182, and 183.  In addition, the undisputed facts show that individuals were not permitted to exit East 16th Street.  *See* Keegan Dep. p. 45:24-46:6; 48:8-18; 49:7-17.  As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

181. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and cannot dispute the facts asserted in paragraph 181. For the reasons outlined in paragraphs 177

and 178, *supra*, Rodriguez's testimony creates no dispute; he claims only to have seen the five

people he arrested toward the front of the crowd at some point prior to their arrest. Rodriguez did

not otherwise testify about the actions of any of the people he arrested, and made no mention at

all of Friedman. *See* N. Rodriguez Dep. pp.73:15-79:11. As defendants have failed to specifically

controvert the facts asserted these facts should be deemed admitted.

185. Defendants assert these facts are disputed but cite no evidence that creates a

disputed issue. Defendants have no knowledge of Friedman's actions, *see* Francis Mem., and

therefore cannot dispute the facts asserted in paragraph 185. Defendants only citation is to

paragraphs 46-50 of their Rule 56.1 statement, which essentially assert that people were free to

leave and that some individuals, other than Friedman, were permitted to exit East 16th Street.

The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as

outlined in detail in Plaintiffs' Counterstatement; moreover, defendants provide no explanation

of how any of these paragraphs create a disputed issue about the facts asserted in plaintiffs'

paragraph 185. Defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs

does not raise any dispute about the uncontroverted facts Friedman asserts in 185.  As defendants

have failed to specifically controvert the facts asserted these fact should be deemed admitted.

188. It is undisputed that no dispersal orders were given, for the reasons outlined in

paragraph 57, *supra*. Additionally, as defendants have no knowledge of Friedman's actions, *see*

Francis Mem., defendants cannot dispute Friedman's uncontroverted assertion that she did not

hear any order to disperse. As defendants have failed to specifically controvert the fact asserted,

this fact should be deemed admitted.

189. For the reasons stated in paragraph 188, *supra*, it is undisputed that no dispersal

orders were given. As defendants have no knowledge of Friedman's actions, *see* Francis Mem., it

is impossible for them to dispute Friedman's uncontroverted assertions in paragraph 189. The portions of testimony cited by defendants do not support a dispute, *see* paragraph 188 *supra* (addressing identical citations). Defendants' also cite paragraphs 46-50 of their Rule 56.1 statement, which essentially assert that people were free to leave and that some individuals, other than Friedman, were permitted to exit East 16th Street.  The assertions in these paragraphs of defendants' Rule 56.1 statement are unsupported, as outlined in detail in Plaintiffs' Counterstatement; additionally,  defendants' citation to the sweeping allegations in these Rule 56.1 paragraphs does not raise any dispute about the uncontroverted facts Friedman asserts in 189.  As defendants have failed to specifically controvert the facts asserted, these facts should be deemed admitted.

193. As defendants do not dispute that Friedman was released around 7:00 PM on September 2, 2011 and given a Desk Appearance Ticket (DAT), those facts should be deemed admitted. Defendants cannot and do not dispute that the policy of the NYPD is to require a valid identification prior to issuance of a DAT. *See* Suero Dep. p. 196:10-199:6. The testimony of Rodriguez does not call the facts asserted into question. Rodriguez testified that he did not verify Friedman's address; he explained further, on the page that follows the portion of testimony cited by defendants, that that to verify an address he would call and ask a parent, or drive by the address. Rodriguez says nothing one way or the other about identification. N. Rodriguez Dep. pp. 141:7-145:25. There is no evidence to dispute that Friedman had a valid identification on her person. Defendants' further statements in paragraph 193 are argument and do not dispute the facts. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

### Concerning the Bastidas, Rigby, and Concepcion cases

Plaintiffs Betty Bastidas, Lauren Caspar, Gregg Ross, Jarel Walden, Jody Concepcion, and Theo Rigby incorporate the 56.1 Replies made by the other E. 16th Street plaintiffs in this consolidated litigation.  In addition, they provide the following Replies to the paragraphs specific to them, in paragraph numbers 196 to 324, below.  In each circumstance where Defendants simply cite to their 56.1 Statement in support of their 56.1 Counterstatement paragraphs, Plaintiffs respectfully refer the Court to RNC Plaintiffs' 56.1 Counterstatement paragraphs that are responsive to Defendants' cited 56.1 paragraphs.

### Plaintiff Betty Bastidas

196.  The assertion is not denied, and is therefore deemed admitted.  The fact that Plaintiff was performing her duties as a professional photojournalist at the time she was arrested and that the police did not take that into proper consideration prior to arresting her (and applied unconstitutional policies concerning "official" NYPD press passes at mass arrest locations during the RNC), is a material fact in a case in which probable cause is at issue.  *See*, Plaintiffs' November 3, 2011 Memorandum of Law in Opposition filed in the Bastidas, Rigby, and Concepcion cases concerning Defendants' RNC policies and practices with regard to the press.

197.  Admitted by Defendants.

198.  *See*, Reply to # 196, above.

199.  The assertion is not denied, and is therefore deemed admitted.  Pursuant to New York CPL § 160.10, and the NYPD's own regulations and practice, the possession of a driver's license and other identification is a material fact with regard to the issue of issuance of a summons or a desk appearance ticket.  Defendants do not dispute that Rigby was issued a DAT, and they cannot and do not dispute that the policy of the NYPD is to require that an arrestee have

a valid identification prior to issuance of a DAT. *See* Suero Dep. p. 196:10-199:6.  There is no

evidence to dispute that Ms. Bastidas had a valid identification on her person.  *See also*, RNC

Plaintiffs' briefs discussing Defendants' No Summons and Blanket Fingerprinting policy.

200.  The assertion is not denied, and is therefore deemed admitted.  This fact is material

because it illustrates that Ms. Bastidas was working as a professional photojournalist in the

Union Square area (unrelated, in fact, to any demonstration activity) on the day of her arrest, and

that she was drawn – like so many others – into the police trap on East 16th Street.  This fact

illustrates that Ms. Bastidas was engaged in entirely lawful conduct as a professional

photojournalist, and that she was not at any point acting collectively with any "group" of people

to do anything, let alone to disrupt traffic or to parade.

201.  Ms. Bastidas testified that she entered the block from Union Square Park *after* the

band had already entered the block, and that she did not see the band at all on Union Square East,

and first saw the band when she was mid-block on East 16th Street.  She also testified that she

walked north *in the park itself* (and *not* on Union Square East).  *See* Bastidas Dep. p. 129:6-

129:10 (Q. When was the first time that you were able to see the source of the music?  A. I think

probably when I got to 16th Street).  *See also* Bastidas Dep. pp. 129:24-130:14  (Q. What streets

did you travel onto [sic] follow the music?  A.  There's little streets in the park that leads to you

come out over here (indicating).  Q.  So you walked in Union Square Park north and then --   A.

Then I got out here (indicating).  Q.  You got out in the vicinity of?  A.  16th Street  Q.  And

Union Square East, that intersection?  A.  I believe there's a little entrance there.  That's where I

got out [of the park].  Q.  What happened next?  A.  I just walked to 16th Street.  And I got closer.

I got to the middle of 16th Street, and I started photographing the band that was playing.).  *See*

*also* Bastidas Dep. p. 131:10-131:17 (Q.  When you entered East 16th Street from Union Square

Park, did you see any police officers?  A.  No, I didn't.  I just walked right in.  I don't remember seeing any police.  Q.  Do you remember seeing a procession of people turning the corner onto East 16th Street?  A. No.).  *See also* Bastidas Dep. 148:13-148:24 (Q.  So just stop [sic] clear: You don't recall seeing a procession going up Union Square East and then turning onto 16th Street?  A. Correct … I didn't see a procession.  I didn't see a band walking towards --  A. You didn't see a group of people walking up Union Square East similar to what's depicted in this vehicle [sic]?  A.  Correct).  Defendants' 56.1 ¶¶ 16-17, and 21-25 have absolutely nothing to do with Ms. Bastidas, as she did not even see any of that activity (however characterized), which illustrates how unreasonable was Essig's assumption that everyone of the hundreds of people who were arrested on his order on East 16th Street had proceeded along Union Square East at the time the band(s) did.

202.  Admitted by Defendants.

203.  The assertion is not denied, and is therefore deemed admitted.  That police knew, or should have known, that a large number of the arrestees thought they had police permission to be doing what they were doing is a material fact in this case in which probable cause to arrest for parading without a permit is at issue.

204.  The assertion is not denied, and is therefore deemed admitted.  It is Defendants' response that raises immaterial facts, as a mere inconvenience to vehicular or pedestrian traffic is insufficient as a matter of law to provide probable cause to arrest for disorderly conduct subsection (5).  Further, Ms. Bastidas was not involved in any way with any taxi that was proceeding down E. 16th Street, and no police officer had (or could possibly have had) any personal knowledge that she had any such involvement, and there is no evidence that any taxicab was obstructed in any way by anyone under the meaning of the disorderly conduct statute.  *See*,

Bastidas dep. 159:1-9 (Q. Having watched this video, you see that there was, in fact, a taxicab driving down East 16th Street on the day of your arrest? A. I see it on the video. I don't recall seeing it when I was there. It's not something I remember). Further, whether or not a taxicab was, even assuming *arguendo*, ever obstructed is not material to the question of whether the police can lawfully arrest someone for obstructing a taxicab who had no involvement at any point with a taxicab.

205. The assertion is not denied, and is therefore deemed admitted. That there were pedestrians on the sidewalks watching what was going on - an entirely lawful, protected First Amendment activity - illustrates the unreasonableness of Essig's mass arrest order.

206. Defendants have no basis to dispute that Ms. Bastidas was not aware that there was any potential problem with her presence on E. 16th Street. Scores of other RNC Plaintiffs from E. 16th Street have made this same representation, and have sued the City for being trapped and arrested by the police on E. 16th Street for doing what they had no reason to believe was illegal (and which was not illegal), without ever having been given an order to disperse, and without ever having been given an opportunity to leave (even after specifically requesting to leave). Ms. Bastidas' testimony at 131:4-24 makes clear that the police lines she saw appeared to her to be impassable by the people on the block. When saw these police lines she – and hundreds of others – were already trapped. Ms. Bastidas also testified that she took care, as a professional photojournalist to "work the situation," and to not impede others. *See*, Plaintiffs' 56.1 Statement ¶¶ 210-211. Further, numerous people were directed by the police into East 16th Street by the police, so the police knew, or should have known, that they would not have had a reason to think that the police had not affirmatively granted permission for them to be in the street. Further still, the police line that went up at 7:02 p.m. at the western end of the block - very quickly after

people were directed onto East 16th Street by the police - itself prevented any vehicular traffic from entering the block.  *See*, Plaintiffs' 56.1 Statement ¶¶ 385-388, 390.

207.  See reply to #s 204 and 206, above.  Further, Defendants fail to remotely explain how the actions of a professional photojournalist "approaching, standing in front, of and crouching in front of police lines and formations" that had hundreds of people trapped and under arrest on a City block, and taking photographs of same as per her profession, has anything to do with any violation of the law.  It is not alleged by any member of the NYPD, or by anyone else, that Ms. Bastidas ever obstructed anything they were doing.

208.  Defendants have no basis to dispute that Ms. Bastidas never heard any orders to disperse.  None of the cited materials indicates that Ms. Bastidas ever was given an order to disperse, and it is undisputed and admitted by Essig himself - who ordered the mass arrests - that he never gave any order to disperse, and did not know of any orders to disperse that were given. *See*, Plaintiffs' 56.1 statement at ¶¶ 354-355.  *See also*, Plaintiffs' 56.1 Counterstatement filed in Bastidas, Rigby, and Concepcion at ¶ 48.

209.  Ms. Bastidas testified at that she "saw people leaving and I was leaving, but there was a huge bottleneck of people trying to get to Union Square East.  Then all I heard and everybody got stopped at that point and everybody was like get down to the ground.  So nobody did anything except get to the ground."  Defendants leave out everything after the word "leaving" in their disingenuous quote, which entirely distorts what she was saying to suggest it means exactly the opposite of what she said).  The full quote makes clear that Ms. Bastidas saw people trying to leave, and she was similarly trying to leave the block, going back in the direction of Union Square Park after people were stopped by the police line at Irving Place, but no one was able to leave because of the other police line(s) at the Union Square East side of the

block, and that everyone was told to get on the ground by the police. *See*, Plaintiffs' 56.1 statement at ¶ 212-217. Ms. Bastidas was also clear that she remembered asking a police officer to leave the block. Bastidas Dep. pp. 156:9-157:6.

210. Concerning Plaintiff's photojournalistic activities on the block, and her movements around the block of East 16th Street in order to engage in such, *see* reply to #s 204, 206, and 207 above.

211. Concerning Plaintiff's photojournalistic activities on the block, and her movements around the block of East 16th Street in order to engage in such, *see* reply to #s 204, 206, and 207, above. Plaintiff's status as a professional photojournalist – and her visible work as such, with her credentials hanging from her neck, and taking photographs with a professional grade camera – is certainly material to the question of whether the Defendants had probable cause to arrest her for allegedly being a part of a "group" of hundreds of other people who were supposedly all acting in concert in order to parade and to obstruct traffic.

212. It is clear from the evidence that the police line at the Irving Place end of the block was building to building and impermeable as soon as it was put in place. *See*, RNC Plaintiffs' 56.1 Counterstatements at ¶¶ 36, 41-49.

213. It is clear from the evidence that the police line at the Union Square East end of the block was building to building and impermeable as soon as it was put in place. *See*, RNC Plaintiffs' 56.1 Counterstatements at ¶¶ 32, 45-49.

214. Defendants admit that Plaintiff was taking photographs of the police line or lines. *See also*, response to #s 212 and 213, above.

215. Defendants provide no evidence to dispute that the police got aggressive and started throwing people to the ground and violently arresting people.

66

216. The assertion is not denied, and is therefore deemed admitted.

217. The assertion is not denied, and is therefore deemed admitted.

218. Admitted by Defendants.

219. Defendants provide no evidence upon which to dispute that Ms. Bastidas was held in NYPD custody for approximately 40 hours, and it is therefore deemed admitted. Ms. Bastidas spent approximately 40 hours in custody because she was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies. These facts are clearly material to the issues at bar.

220. The assertion is not denied, and is therefore deemed admitted.

221. The assertion is not denied, and is therefore deemed admitted.

**Plaintiff Lauren Caspar**

222. Admitted by Defendants.

223. Defendants provide no evidence to suggest that Plaintiff was participating in any demonstration activity. All Defendants put forth is that Plaintiff was present on the sidewalk on the block of E. 16th Street at the time everyone on the block was arrested by the NYPD.

224. Part of the assertion is admitted by Defendants. The other part of the assertion is not denied, and is therefore deemed admitted.

225. Defendants have no basis to dispute that Ms. Caspar could not discern any organization among the band and the hundreds of people on the block.

226. The assertion is not denied, and is therefore deemed admitted. That police knew, or should have known, that a large number of the arrestees thought they had police permission to be doing what they were doing is a material fact in this case in which probable cause to arrest for

67

parading without a permit is at issue.

227.   Defendants provide no evidence to suggest why Ms. Caspar would have had any reason to think she was doing anything wrong on E. 16th Street, or to suspect that she would be trapped by the police along with hundreds of other people.  Scores of other RNC Plaintiffs from E. 16th Street have also said they had no reason to think they were doing anything that was contrary to what the police wanted them to do, and have sued the City for being trapped and arrested by the police on E. 16th Street for doing what they had no reason to believe was illegal (and which was not illegal), without ever having been given an order to disperse, and without ever having been given an opportunity to leave (even after specifically requesting to leave).  Further, numerous people were directed by the police into East 16th Street by the police, so the police knew, or should have known, that they would not have had a reason to think that the police had not affirmatively granted permission for them to be in the street.

228.   Plaintiffs provide no evidence sufficient to challenge Ms. Caspar's testimony that the only time she was ever not on the sidewalk was when she was lawfully crossing a street.  Officer Baity's testimony that is cited by Defendants does not state that he ever saw Ms. Caspar in the street at all.  Baity simply theorizes, via his own *ipse dixit*, that everyone who was on the block would have had to at some point been in the street, which not only does not make any sense, but which also does not provide any evidence to contradict Ms. Caspar's testimony that she was only on the sidewalk.

229.   Plaintiffs provide no evidence sufficient to challenge Ms. Caspar's testimony that it was not difficult to navigate her way along the sidewalk on E. 16th Street from one end of the block to the other.  Officer Baity, her arresting officer, admits that he did not have any knowledge of who she was, or what she personally had ever done or not done, prior to being

assigned her as an arrestee along with four others by a supervising member of the NYPD.  *See*,

Baity dep. at 199:13-203:9; 245:5-246:2; 247:4-9, annexed as Exhibit 19 to the 11/23/11 Second

Supplemental Rothman Decl.  Defendants' citation of Ms. Caspar's testimony that it appeared to

her that the people who were in the roadway on E. 16th Street were - from her limited

perspective, and not knowing that many of them were directed onto the block by the police, and

not knowing that the police line at the western end of the block was itself keeping vehicular

traffic from entering the block – blocking vehicular traffic, has nothing to do with whether there

was probable cause to arrest her, since she was only on the sidewalk the entire time, and since no

member of the NYPD had any personal knowledge of anything she was or was not doing prior to

her arrest.  *See also*, Orders of Judge Francis concerning Defendants' lack of personal

knowledge, annexed as Exhibit 11 to the 10/3/11 Rothman Decl.

 230.  The assertion is not denied, and is therefore deemed admitted.  It is certainly

material that a member of the NYPD explicitly told Ms. Caspar that she could stand on the

sidewalk in the place where she asked him if she was permitted to stand.

 231.  Defendants have no evidentiary basis to dispute the facts set forth in paragraph 231,

as no member of the NYPD has any personal knowledge of anything Ms. Caspar was doing prior

to her arrest.  *See*, # 229 above.  In particular, Defendants have no basis to dispute that Ms.

Caspar never heard any orders to disperse.  None of the cited materials indicates that Ms. Caspar

ever was given an order to disperse, and it is undisputed and admitted by Essig himself - who

ordered the mass arrests - that he never gave any order to disperse, and did not know of any

orders to disperse that were given.  *See*, Plaintiffs' 56.1 statement at ¶¶ 354-355.  *See also*,

Plaintiffs' 56.1 Counterstatement filed in *Bastidas, Rigby*, and *Concepcion* at ¶ 48.

232. The assertion is not denied, and is therefore deemed admitted. Defendants have no evidentiary basis on which to state that Ms. Caspar was afforded an opportunity to leave the block.

233. The assertion is not denied, and is therefore deemed admitted.

234. Pursuant to New York CPL § 160.10, and the NYPD's own regulations and practice, the possession of a driver's license and other identification is a material fact with regard to the issue of issuance of a summons or a desk appearance ticket. *See* Suero Dep. p. 196:10-199:6. There is no evidence to dispute that Ms. Caspar had a valid identification on her person. *See also*, RNC Plaintiffs' briefs discussing Defendants' No Summons and Blanket Fingerprinting policy. Defendants citation to the DAT Investigation Worksheet gives no indication of what steps (if, indeed, any) were actually taken in order to "verify identification," and the document seems to indicate only that no steps at all were taken to try to verify "Defendant address," "Telephone," or "Employment / School." There is no evidence in the record to indicate that Ms. Caspar's driver's license was anything but a real, lawfully issued driver's license.

235. Admitted by Defendants.

236. The assertion is not denied, and is therefore deemed admitted. Ms. Caspar spent approximately 31 hours in custody because she was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies. These facts are clearly material to the issues at bar.

**Plaintiff Gregg Ross**

237. The assertion is not denied. That fact that Plaintiff went to the park with only an intention to "pass by" is material. Defendants attempt to claim in their defense that prior to the incident on August 31st, Plaintiffs intended to be disorderly.

238.   Admitted by Defendants.

239.   Factually the band and he both walked northward, Defendants' citations do not support that Ross "followed" the band.

240.   Ross testified that "When moving, when people were walking towards 16th Street, the impression that I got from the police presence was that it was some sort of an escort, and that when this intersection was cordoned off by a line of police, that was the indication that people should turn in that direction." Ross Dep. p.131:18-23.

241.   Ross claims Irving Place was cordoned off.  Paragraphs 35-49 of Defendants' 56.1 do not deny that at a point in time, police prohibited exit from 16th St. at Irving Place. Defendants' assertion as to whether or not Ross was on the sidewalk the entire time has no relevance to the fact asserted in Paragraph 241.

242.   See Plaintiffs' Reply to Paragraph 241, above.  The cited paragraphs of Defendants' 56.1 Statement do not contradict the assertions of this paragraph either relative to Ross' individual actions or the fact that exit at Union Square East was denied at a point in time.  In addition, the assertion concerning Ross' interaction at 16th St. is not relevant to the assertions of this paragraph.

243.   Admitted by Defendants.

244.   Neither the cited testimony of Baity nor the cited paragraphs of Defendants' 56.1 statement contradict the fact of this paragraph.  Aside from the fact that it is patently not believable, the testimony of Baity does not cover the same point of time as the fact of this paragraph as this fact occurred after the point in time when civilians were walking.  The cited paragraph from Defendants' 56.1 statement do not contradict that Plaintiff remained on the sidewalk or that at a certain point officers advanced, cleared civilians from the street, drove them

towards the buildings and directed them to sit.  Indeed, paragraph 52 is consistent with the assertion.

245.  Admitted by Defendants.

246.  Defendants' cited testimony is not specific enough to Plaintiff Ross to contradict Plaintiff's assertion that he heard no order to disperse.  Moreover, as previously stated throughout this Reply, Defendants' cited testimony does not establish that an order to disperse was given.

247.  Defendants' cited testimony is general in nature and is no way sufficiently specific or otherwise competent to contradict Ross' statement that he observed no vehicular traffic. Moreover, said testimony does not even attempt to establish that vehicular traffic existed during the time encompassed by the fact asserted in this paragraph.

248.  Officer Baity's testimony is not specifically directed to the time period referenced in this paragraph, and, moreover, the statement that pedestrians on the sidewalk could not walk down the sidewalk is patently false.  The 56.1 statements cited do not contradict the asserted fact that pedestrians were able to walk east and west as Ross did.  Paragraph 39's statement that "...Parade block[ed] vehicular and pedestrian traffic" does not contradict that pedestrians were able to walk east and west on 16th St.

249.  Admitted by Defendants.

250.  Officer Baity's testimony is not specifically directed to the time period referenced in this paragraph, and, moreover, the statement that pedestrians on the sidewalk could not walk down the sidewalk is patently false.  The 56.1 statements cited do not contradict the asserted fact that pedestrians were able to walk east and west as Ross did.  Paragraph 39's statement that "...Parade block[ed] vehicular and pedestrian traffic" does not contradict that pedestrians were able to walk east and west on 16th St.

251. Ross spent more than two days in custody because he was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies. These facts are clearly material to the issues at bar.

**Plaintiff Jarel Walden**

252. The assertion is not denied. That fact that Plaintiff went to the park with an intention only to "see what was going on" is material. Defendants attempt to claim in their defense that prior to the incident on August 31st, persons intended to be disorderly.

253. The fact is not denied. See Reply to #252, above.

254. Admitted by Defendants.

255. The noted facts are admitted by Defendants. With respect to Walden's walking on the sidewalk, Defendants' 56.1 Statement paragraphs do not contradict the asserted fact and paragraph 26 of Defendant's 56.1 admits that persons walked north on the sidewalk adjacent to Union Square East. The cited video does not show Walden walking with the band --in the testimony cited by Defendants, pp. 128;1-14; 129:2-22, Walden testified that in the video he was crossing the street, not walking with the band, and that he did not remember walking with the band in the street.

256. The non-disputed facts are admitted. As for Plaintiff's assertion that he turned right "due to a line officers", the cited paragraphs from Defendants' 56.1 Statement do not contradict the asserted fact. Plaintiff's supporting testimony states that "...it seemed like there was a line of police on Union Square East directing the band onto 16th St."

257. Admitted by Defendants.

258. Defendants' dispute related to the "chronology" is vague and should not be

considered but treating it as disputing that Plaintiff believed it was best to leave the block <u>when</u> he saw the police line, none of Defendants' cited evidence contradicts Plaintiff's assertion as to his timing, and Defendants do not attempt to specify how it does contradict the assertion.

259.  Defendants do not dispute the fact.  The fact shows that Plaintiff promptly took steps to leave the block as soon as it appeared that the police were no longer escorting the civilians.

260.  The cited paragraphs of Defendants' 56.1 statement do not contradict the general fact that at a point in time, police prohibited civilians from leaving the block at Irving Place, nor the specific fact that Plaintiff heard a woman prohibited from leaving the block.

261.  Admitted by Defendants.

262.  Defendants' cited paragraphs do not disprove the fact asserted.  They do not refer specifically to Plaintiff, moreover they do not contradict that at a point in time the police line moved towards the middle of the block.

263.  Defendants' cited paragraphs do not disprove the fact asserted.  They do not refer specifically to Plaintiff, moreover they do not generally contradict the fact that at a point in time, civilians could not leave the block.

264.  Defendants cite no factual basis to dispute the fact asserted.  The paragraphs asserted do not refer to plaintiff and they do not contradict that civilians were pushed against the buildings.

265.  Admitted by Defendants.

266.  See Plaintiff's Reply to #255 above.  There is no testimony, proof, or basis to believe that a civilian needed to walk in the street to be close enough to hear the band.

267.  Defendants have not cited any proof that Walden heard an order to disperse.

Moreover, defendants have not cited any order to disperse.

268.   Police knowledge that the civilians believed that they the civilians had permission to march is a material fact in this case in which probable cause to arrest for parading without a permit is at issue.

269.   The cited evidence does not contraindicate the asserted fact that Plaintiff remembers no traffic being blocked; indeed in the testimony cited, Plaintiff stated traffic would have been able to pass.

270.   Defendants' 56.1 statement paragraphs 30 and 31 are vague and should be ignored, and do not allege that no pedestrians could travel.  Moreover, evidence that civilians made passage more difficult do not contradict the fact asserted.

271.   Defendants' cited testimony from Plaintiff's deposition does not contradict the asserted fact.  The paragraphs from Defendants' 56.1 Statement do not contradict that asserted fact as they do not refer to the degree to which the particular sidewalk was packed prior to the time that the police closed off the block.

272.   Defendants' cited paragraphs from Defendants' 56.1 Statement do not disprove the asserted fact.  The entire time that Plaintiff was on 16th St., police lines blocked vehicular traffic from entering.

273.   Admitted by Defendants.

274.   Walden spent two days in custody because he was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies.  These facts are clearly material to the issues at bar.

## Plaintiff Jody Concepcion

275.   Admitted by Defendants.

75

276. The assertion is not denied, and is therefore deemed admitted.

277. The assertion is not denied, and is therefore deemed admitted.

278. Admitted by Defendants.

279. Admitted by Defendants.  Defendants have no evidentiary basis upon which to rely to argue that a police officer escorting people in the roadway would not lead someone to believe that the people in the roadway had police permission to be there.

280. The assertion is not denied, and is therefore deemed admitted.  That police knew, or should have known, that a large number of the arrestees thought they had police permission to be doing what they were doing is a material fact in this case in which probable cause to arrest for parading without a permit is at issue.

281. Admitted by Defendants.

282. Admitted by Defendants.  Defendants' citations to Ms. Concepcion's testimony all say that she was only on the sidewalk.  Concerning Officer Baity's testimony, see reply to # 228 above.  The testimony cited by Officer Fernandez says nothing other than that Ms. Concepcion was on the sidewalk on E. 16th Street – it contains no personal observations by Officer Fernandez of Ms. Concepcion's individual conduct: only his purely conclusory statements that she was a part of "the group."

283. Admitted by Defendants.

284. Admitted by Defendants.

285. Admitted by Defendants.

286. Defendants provide no evidentiary basis upon which to dispute the facts in paragraph 286.  *See*, Orders of Judge Francis concerning Defendants' lack of personal knowledge, annexed as Exhibit 11 to the 10/3/11 Rothman Decl.

287.  See reply to # 286 above.

288.  The assertion is not denied, and is therefore deemed admitted.  It is certainly material that a line of riot-gear clad police officers instilled fear in Ms. Concepcion, and that reasonable and competent police officers would know that a significant percentage of the general population would be hesitant to approach a police line that was arrayed in such a manner because of fear.

289.  Defendants have no basis to dispute that Ms. Concepcion never heard any orders to disperse.  None of the cited materials indicates that Ms. Concepcion ever was given an order to disperse, and it is undisputed and admitted by Essig himself - who ordered the mass arrests - that he never gave any order to disperse, and did not know of any orders to disperse that were given. *See*, Plaintiffs' 56.1 statement at ¶¶ 354-355.  *See also*, Plaintiffs' 56.1 Counterstatement filed in *Bastidas, Rigby,* and *Concepcion* at ¶ 48.

290.  See reply to # 289, above.

291.  See reply to # 289, above.

292.  The assertion is not denied, and is therefore deemed admitted.

293.  Admitted by Defendants.

294.  The assertion is not denied, and is therefore deemed admitted.  That Ms. Concepcion spent approximately 48 hours in custody because she was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies, is clearly material to the issues at bar.

**Plaintiff Theo Rigby**

295.  The fact that Plaintiff was performing his duties as a professional photojournalist at the time he was arrested and that the police did not take that into proper consideration prior to

arresting him (and applied unconstitutional policies concerning "official" NYPD press passes at mass arrest locations during the RNC), is a material fact in a case in which probable cause is at issue. *See*, Plaintiffs' November 3, 2011 Memorandum of Law in Opposition filed in the Bastidas, Rigby, and Concepcion cases concerning Defendants' RNC policies and practices with regard to the press.

296.  As stated above, the fact that Plaintiff was not a part of a group, and did not intend to cause or be part of public disorder is a material fact in the case.

297.  See Reply to #295, above.

298.  The fact is a material preliminary fact not long in time prior to Plaintiff's arrest.

299.  The fact is a material preliminary fact not long in time prior to Plaintiff's arrest.

300.  The fact is a material preliminary fact not long in time prior to Plaintiff's arrest.

301. Defendants admit all of Plaintiffs' paragraph 301, except for the reason why Plaintiff went to the front of the group--the material fact that he went to find out what was going on, which is integral to his duties as a working photographer.  (See Plaintiff's paragraph 302.)

302.  Nothing in the deposition excerpt deposition contradicts the asserted fact since Defendants have not even attempted to establish that the period of time referred to in the excerpt is the same as the period of time of the asserted fact

303.  Nothing contained in the Defendants' 56.1 statement paragraphs or the other testimony contradicts the asserted fact, nor do Defendants claim the presence of vehicular traffic on 16th St.

304.  Defendants' 56.1 Statements do not deny that exit from 16th St. at Irving Place was closed at a point in time.

305.  Defendants' cited deposition excerpts do not contradict the asserted facts.  The

excerpts claim that Plaintiff was close to an unspecified incident which does not contradict the asserted fact that he took photographs at a particular incident.

306.  Admitted by Defendants.

307.  Defendants' 56.1 Statements do not contraindicate the asserted fact or otherwise disprove that Irving Place was blocked off at a point in time.

308.  See Reply to #307, above.  Defendants' evidence states no basis to contradict the asserted fact.

309.  The paragraphs cited by Defendants do not contradict the asserted fact.  The paragraphs do not refer to Rigby individually or contradict the fact generally.

310.  None of the excerpts cited by Defendants contraindicate that pedestrians could move on the sidewalks.

311.  Defendants do not contradict the asserted fact because neither witness claimed sufficient continued observation of Plaintiff to contradict that Plaintiff was knocked to the ground.

312.  The cited testimony does not contradict the asserted fact because it is not relevant to the asserted fact.

313.  The fact, manner and timing of the arrest is a material fact in a false arrest case.

314.  Admitted by Defendants.

315.  The asserted fact pertains to the information in the possession of the police prior to arresting a working professional photographer and is a material fact in the case.

316.  The asserted fact pertains to the information in the possession of the police prior to arresting a working professional photographer and is a material fact in the case.

317.  Defendants' cited facts do not contradict the asserted facts that the NYPD refused to recognize Rigby and other professional photographers such as Plaintiff Betty Bastidas.

318.  Defendants have not cited any proof that Rigby heard an order to disperse. Moreover, defendants have not cited any order to disperse.

319.  See Reply to #318, above.

320.  Police knowledge that the civilians believed that they the civilians had permission to march is a material fact in a case in which probable cause to arrest for parading without a permit is an issue.

321. The fact, manner and timing of the arrest is a material fact in a false arrest case.

322.  Admitted by Defendants.

323.  Pursuant to New York CPL § 160.10, and the NYPD's own regulations and practice, the possession of a driver's license and other identification is a material fact with regard to the issue of issuance of a summons or a desk appearance ticket.  Defendants do not dispute that Rigby was issued a DAT, and they cannot and do not dispute that the policy of the NYPD is to require that an arrestee have a valid identification prior to issuance of a DAT. *See* Suero Dep. p. 196:10-199:6.  There is no evidence to dispute that Rigby had a valid identification on his person.  *See also*, RNC Plaintiffs' briefs discussing Defendants' No Summons and Blanket Fingerprinting policy.

324.  Rigby spent 39-40 hours in custody because he was falsely arrested as part of the E. 16th Street mass arrests, and was subjected to the Defendants' no-summons and fingerprinting policies.  These facts are clearly material to the issues at bar.

**Plaintiff Kaitlyn Tikkun**

326. Defendants concede that no genuine issue of material fact exists with respect to this statement. Defendants nevertheless assert these facts are disputed but cite no evidence that creates a disputed issue. The testimony cited by defendants plainly states that plaintiff Tikkun's sole purpose in being at Union Square on August 31, 2004 was to accompany a friend who wanted to listen to a marching band, and that plaintiff and her friend followed the marching band out of Union Square Park. See Tikkun 10/10/2007 Dep. Tr. pp.9:25-10:17; 17:11-25. The testimony cited by defendants does not create a dispute as to whether plaintiff intended to participate in a parade – to the contrary, plaintiff explicitly states that she "had no intention or desire to be at any protest, demonstration, parade…" Tikkun Dep. Tr. 136:18-20. Defendants have cited to no evidence disputing the statement that plaintiff Tikkun did not intend to participate in a "parade." As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

328. Defendants concede that no genuine issue of material fact exists with respect to this statement. Defendants nevertheless assert these facts are disputed but cite no evidence that creates a disputed issue, citing only to paragraphs of Defendants' 56.1 Statement, to which plaintiff responded on November 3, 2011.

329. Defendants concede that no genuine issue of material fact exists with respect to this statement. Defendants nevertheless assert these facts are disputed but cite no evidence that creates a disputed issue, citing only to paragraphs of Defendants' 56.1 Statement, to which plaintiff responded on November 3, 2011. There is no evidence to dispute that plaintiff was trapped on E. 16th St. once NYPD officers set up a line of orange netting behind her across E. 16th St. at Union Square East, preventing her from leaving the area. *See* Tikkun 10/10/2007 Dep.

Tr. pp. 32:5-23 (plaintiff describes police put up orange netting across E. 16th Street as "terrifying" and "sealing off behind us" and states that at that point she felt "trapped."). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

330. Defendants' response to paragraph 330 is unintelligible and refers to a different paragraph of Plaintiffs' 56.1 statement. To the extent the evidence cited is intended to respond to the facts asserted in this paragraph, defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The undisputed evidence is that plaintiff wanted to leave and would have done so if permitted. Tikkun 10/10/2007 Dep. Tr. p. 138:9-10 (plaintiff would have dispersed had she heard an order to disperse.). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

331. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Defendants take plaintiff's statement that she did not recall *which state* issued the valid photo id she had on her on August 31, 2004 out of context. Upon review of the entirety of the relevant portions of the cited deposition testimony, the undisputed evidence shows that plaintiff had valid photo identification on August 31, 2004 and offered to show it to NYPD officers during the time she was NYPD custody.  Tikkun 10/10/2007 Dep. Tr. p. 15:22-17:6 ("I believe I had valid ID, I don't remember what states it was from at this time, I can't recall precisely what I was carrying…Yes, I do recall offering to provide identification."). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

333. Defendants do not dispute the fact that the charges against plaintiff were dismissed, but inexplicably assert, without citing to any evidence whatsoever, that plaintiff accepted an

Adjournment in Contemplation of Dismissal (ACD). In fact, documents produced by Defendants themselves confirm that Plaintiff refused an ACD and the charges were dismissed pursuant to a motion brought under New York Crim. Proc. L. § 30.30. (Ex. A to November 23, 2011 Ritchie Decl., documents produced at Tik (D) 00008-00009).

### Defendant James Essig

336. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts as asserted by plaintiffs in paragraph 336 are clearly supported by the testimony at Essig Dep. pp. 110:14-23; 102:15-21-4. The testimony cited by defendants (Essig Dep. pp. 100:10-101:6; 262:4-13) is entirely consistent with all of the facts in plaintiffs' paragraph 336. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

337. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Essig repeatedly testified to the facts as asserted in plaintiffs' paragraph 337: Essig pp. 167:19-24 ("They were going to be arrested when they exited the park without a permit, traveled northbound on Unions Square East into oncoming traffic, they were going to be arrested for disorderly conduct and parading without a permit"); *id.* p 268:7-22 ("Q. You saw these people leaving, a group of people leaving Union Square going into Union Square East. At that point, you your mind, you were going to attempt to place those people under arrest, is that right? A. Yes); *id* pp. 731:24-732:9 ("Q. At what point did you specifically decide that this group was going to be arrested? A. The group was going to be arrested when I knew they had no permit, they were parading without a permit. They exited the park and marched into oncoming traffic. They were going to be arrested for disorderly conduct and parading without a permit"); *id.* p. 744:7-17 ("The people were going to be arrested once they left Union Square and paraded

without a permit," so there would be no reason to give them an order to disburse); *id*. pp. 755:17-756:2 ("Q. So it didn't matter what they did on 16th Street when you got to 16th Street, you were going to arrest this whole group of people, correct, you already made your mind up about that, right? A. For parading without a permit and disorderly conduct. Q. You already made your mind up that they were all going to be arrested? A. Yes."). Defendants cite nothing other than paragraphs 33-34, 43-44, 46-50, 51, 54-55 and 57 of their Rule 56.1 Statement. Defendants' paragraphs 33, 34, 43, 44, 46, 47, 48, 49, 50, 51, and 57 do not relate to when Essig made the decision to arrest, and defendants do not explain how any of these paragraphs relate to, let alone specifically controvert, the facts asserted. As outlined in Plaintiffs' Counterstatement, the facts asserted in defendants' paragraphs 54 and 55 are misleading and unsupported by evidence; additionally the vague assertions in both paragraphs do not specifically controvert the facts asserted by plaintiffs in paragraph 337. As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

338. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts as asserted by plaintiffs in paragraph 338 are supported by the testimony at Essig Dep. pp. 100:7-9. The testimony cited by defendants (Essig Dep. pp. 100:10-101:6; 262:4-13) is entirely consistent with all of the facts in plaintiffs' paragraph 338. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

339. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts as asserted by plaintiffs in paragraph 339 are clearly supported by the testimony at Essig Dep. pp. 101:20-23 ("There was a line of cops impeding them from going northbound into traffic. And they made a right and went eastbound on 16[th] Street"); *id*. p.

84

263:22-264:4 ("They were diverting the group from going further northbound..."). Defendants only citation is to paragraphs 33 and 34 of their Rule 56.1 Statement. Defendants' paragraph 33 does not appear to controvert the facts asserted and defendants do not explain how the paragraph relates to, let alone specifically controverts, the facts asserted. As outlined in Plaintiffs' Counterstatement, the facts asserted in defendants' paragraphs 34 are unsupported by the evidence; additionally the vague assertions in that paragraph do not specifically controvert the facts asserted by plaintiffs in paragraph 339. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

340. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts in plaintiffs' paragraph 340 are plainly supported by the testimony at Essig Dep. pp. 760:22-761:15. The testimony cited by defendants does not bring these facts into dispute, as none of the cited testimony discusses whether Essig told the officers *who had formed a line across 16th Street at the Union Square East end of the block* that he intended to allow certain people to leave. As outlined in paragraph 57, *supra* (addressing the same citations by defendants), the testimony cited discusses whether and how Essig allegedly told some individuals to "stop," Essig's instructions to Lieutenants Johnson and Cortright and their subsequent actions, Dieckmann's alleged instructions to some individuals to stop and go back to the park, and the observations of officers Baity, Loftus, Sam, Bonacci, Sarrubbo, Rodriguez, Brijbukahan, Franzo, Chico, Pribetich, and Connolly regarding various orders they claim to have heard being given by supervisors. Clifford's testimony is that an officer in a white shirt told him to leave. None of the cited testimony states or suggests that Essig told the officers who had formed a line across 16th Street at the Union Square East end of the block that he intended to allow certain people to leave. Defendants also cite paragraphs 46-50 of their Rule 56.1 statement;

the assertions in these paragraphs do not address the facts asserted in plaintiffs' paragraph 340 and defendants do not explain how these paragraphs relate to, let alone specifically controvert, the facts asserted. Also, as outlined in Plaintiffs' Counterstatement, the facts asserted in defendants' paragraphs 46-50 are unsupported by evidence, and the vague assertions in those paragraphs do not specifically controvert the facts asserted by plaintiffs in paragraph 340. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

341. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. Essig unequivocally testified that he did not recall seeing moving traffic on 16th Street. Essig Dep. pp. 762:23-763:5. The testimony cited by defendants does not call this fact into dispute. Walsh's testimony actually supports the facts asserted by plaintiffs; *see* Walsh Dep. p. 30:7-13 (testifying that Walsh *did not* see car traffic on East 16th Street, though she saw traffic on Union Square East when crossing it). Sperry's testimony does not address either 16th Street or Sperry's observation traffic or lack thereof. Sperry Dep. p. 104:19-21. Riggan testified that he did not remember whether he saw any cars on the street. Riggan Dep. p. 94:5-15. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

342. Defendants assert that the facts in plaintiffs' paragraphs 342 are disputed but cite no evidence that creates a disputed issue. It is undisputed that Essig never gave any "dispersal orders." *See* Essig Dep. pp. 167:4-168:10; 731:24-732:15; 755:17-756:4. Essig believed there was no need for a dispersal order. *See id.* at 742:2-744:17, 799:4-800:4. Essig then directed Lt. Patrick Cortright and Lt. Lorenzo "Andy" Johnson to walk through the detained group to "tell people who weren't part of this to get into their homes and off the street," but it is undisputed that this was not a "dispersal order." *See id.* at 170:17-171:4. The portions of testimony cited by

defendants do not create a dispute, indeed they support the uncontested facts as stated above. Essig testified that he ordered people to "stop" without using a bullhorn, and did not know whether people could hear him. Essig Dep. pp. 112:16-113:6; 115:21-116:6. He stated "I don't recall the exact words…but in my mind I wanted the parade to stop, the music to stop…," *id*. p. 769-770:23-5, *see also* pp. 772-73; and that he did not remember using the word disperse, *see id*. pp. 783:12-786:2 ("I told them to stop. I wouldn't have told them to disburse because they were already under arrest); *id*. pp. 227:23-228:3 ("Was the group told that they would be arrested if they did not disperse? That's when I attempted to go out and tell them to stop and turn down the music, it was very difficult to hear"); 779:7-11 ("A. Right I believe I testified I was telling them to stop. Q. You don't recall ever telling them, actually using the word "disbursed," correct, you don't recall that? A. No, no. Q. Maybe you did, maybe you didn't, but you don't recall that? A. I don't recall"). Essig's cited testimony otherwise discusses his alleged instructions to Lieutenants Cortright and Johnson to go down East 16[th] Street to try and remove people who were not part of the protest, but makes no reference to any orders given by Essig. *See id*. pp. 138:7-15, 170: 4-20, 171: 12-17, 756:5-20, 760: 2-13. The cited testimony of Johnson and Cortright discussed the actions of Johnson and Cortright and does not mention any orders given by Essig. Johnson Dep. pp. 51:9-52:12; 53: 8-16; 58:4-11; 64:16-65:15; Cortright Dep. pp. 58:8-9; 59:21; 60:20-22. Dieckmann similarly testified about his own actions, not about any orders given by Essig. Dieckmann Dep. pp. 57:24-25; 59:20-60:3. Baity merely confirms that numerous supervisors were "saying to disperse from the block," but Baity didn't remember whether anyone used bullhorns and never himself gave an order to disperse. Baity Dep. pp. 45:21-47:13. Loftus likewise recalls hearing orders to leave the area, but they were given through voice, not bullhorns, and he did not remember the specifics of what was said.  *See* Loftus Dep. pp. 49:16,

50:12, 59:16-22. Bonacci heard an announcement made by voice without amplification. Bonacci Dep. p. 24:2-8. Sarrubbo claims he heard Essig telling people to leave but at that time he does not think Essig was using a bullhorn, and he could not recall Essig's exact words. Sarrubbo Dep. pp. 53:18-54:7; 63:5-19. N. Rodriguez testified that police formed a line on 16th Street and told approaching individuals to stop moving forward; that "they would not be allowed to proceed down the block and they had to turn around and leave," there is no mention of officers ordering the crowd to "disperse" or of Essig telling anyone to disperse. N. Rodriguez Dep. pp. 60:3-63:25. Clifford's testimony does not mention Essig or a general order to disperse. Clifford Dep. pp. 112-114. Brijbukhan's testimony is irrelevant as it relates to announcements supposedly made after lines had been formed, people had been stopped, and netting had been put up--he was holding the netting himself. Brijbukhan Dep. p. 41:13-43:19. Officer Chico does not mention any announcement made by Essig. Chico Dep. p. 93:3-13. The only officers who claim in their cited testimony that Essig addressed the crowd give testimony that is not time-specific and, to the extent they suggest that dispersal orders were given by Essig with a megaphone, cannot be credited given the wealth of evidence cited, by defendants, *supra,* and Essig's direct testimony to the contrary: Franzo could not say what had occurred before he arrived with his team, and did not identify Essig as a speaker of any announcement, Franzo Dep. 38:22-40:25. Pribetich's and Sam's claims that Essig gave instructions over a bullhorn and/or gave a dispersal order are contradicted by Essig himself. Sam Dep. 87:3-90-23; Pribetich Dep. p. 34:5-35:10. Connolly initially testified that the supervisors had bullhorns, Connolly Dep. p. 55:1-7, but later qualified his testimony, stating that "at least one" supervisor had a megaphone, but he couldn't recall who. *Id.* p. 57:12-18. *See also* paragraph 57, *supra* (addressing the same citations by defendants). Based on the testimony of defendants' own witnesses, as cited by defendants—it cannot be

disputed that no dispersal orders were given by Essig.[5] As defendants have failed to specifically controvert the fact asserted this fact should be deemed admitted.

343. Although defendants assert that some individuals were permitted to leave the 16th Street area before arrests were made, and that Essig asked Lieutenants Johnson and Cartright to tell remove certain individuals, it is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines. *See* Essig Dep. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"), 755:2-4. The portions of testimony cited by defendants do not call these facts into dispute, see paragraphs 57 and 342, supra (addressing the same citations by defendants). Defendants also cite paragraphs 43-44 and 46-50 of their Rule 56.1 Statement; these paragraphs are unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally, these paragraphs do not directly address the facts stated in plaintiffs' paragraph 343, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

345. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts asserted in plaintiffs' paragraph 345 are clearly established through the testimony at Essig Dep. pp. 112:16-113:6; 115:21-116:6. The sources cited by defendants do not controvert the facts asserted in any way; *see* paragraphs 57 and 342, *supra* (addressing the same citations made by defendants). Indeed many of the citations, including the citations to the

---

[5] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

testimony of Essig, support the facts as asserted in plaintiffs' paragraph 345. Defendants' also cite paragraphs 43-44 and 46-5; these paragraphs appear to have no relation to the facts asserted in plaintiffs' paragraph 345 and defendants do not explain how any of these paragraphs relate to, let alone specifically controvert, the facts asserted. Additionally, the sweeping assertions in these paragraphs do not specifically controvert the facts asserted by plaintiffs in paragraph 345. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

346. It is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines. *See* Essig Dep. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"), 755:2-4. Defendants cite only paragraphs 54-55 and 57 of their Rule 56.1 Statement; these paragraphs are misleading and unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. Additionally, these paragraphs do not directly address the facts stated in plaintiffs' paragraph 346, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

348. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue.  The facts asserted in plaintiffs' paragraph 348 are clearly established through the testimony at Essig Dep. pp. 112:16-113:6; 115:21-116:6; 144:2-14. The sources cited by defendants do not controvert the facts asserted in any way. *See* paragraph 345, *supra* (addressing the same sources cited by defendants); *see also* paragraphs 57 and 342, *supra* (addressing the

same citations by defendants). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

351. It is undisputed that Essig testified that at the time he was telling people to "stop," "nobody could hear" what Essig was saying. Essig Dep. pp. 120:3-11. Some of the portions of testimony cited by defendants do not call this fact into dispute in any way; *see e.g.* Johnson Dep. pp. 51-57:9-12; 62:13-18; 64-65:8-5, which do not address whether Johnson or anyone else was able to hear Essig's instructions. Other portions of testimony cited by defendants contain testimony that specific individuals, at some point, claim to have heard some instructions uttered by Essig, *see e.g.* Sam Dep. 87:3-90:23. As these portions of testimony are vague in addressing the time frame, they do not specifically refute the facts asserted by plaintiffs in paragraph 351. Moreover, it is undisputed that Essig never gave any order to disperse, *see* paragraph 57 *supra*, and any testimony that Essig gave such an order is directly contradicted by Essig's own testimony and cannot be credited. *See* Essig Dep. 781:2-782:21 (Essig testifying that statements in a criminal court information reading "Deputy Inspector James Essig...repeatedly [told] people in the group to disburse" were "not true"). Finally, whether "nobody" could hear Essig or "most people" could not hear Essig is an issue of semantics. It cannot be disputed that most of the large number of people present could not hear unamplified orders given by individual officers. *See* Essig Dep. 116:3-6 (Essig did not know whether people could hear his instructions); Johnson Dep. pp. 51:9-52:12; 53: 8-16; 58:4-11. (Johnson gave unamplified instructions to certain individuals to leave the area; "I don't know if they could hear me or not").

354. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts asserted in plaintiffs' paragraph 345 are clearly established through the Essig's testimony as cited by plaintiffs, and the sources cited by defendants do not controvert the

facts asserted in any way. *See* paragraph 345, *supra* (addressing the same sources cited by defendants); *see also* paragraphs 57 and 342, *supra* (addressing the same sources cited by defendants). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

355. Defendants assert these facts are disputed but cite no evidence that creates a disputed issue. The facts asserted in plaintiffs' paragraph 345 are clearly established through Essig's testimony as cited by plaintiffs, and the sources cited by defendants do not controvert the facts asserted in any way. *See* paragraph 345, *supra* (addressing the same sources cited by defendants); *see also* paragraphs 57 and 342, *supra* (addressing the same sources cited by defendants). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

357. As defendants do not dispute that there was a police line formed at the corner of East 16th Street and Irving Place, that fact should be deemed admitted. Defendants assert that remaining facts are disputed but do not explain what parts of the asserted facts are allegedly in dispute, and cite no evidence that creates a disputed issue. It is undisputed that Essig ordered police officers to hold a line at 16th Street and Irving Street, that officers responded by "shoring up" their line, and that the people walking down 16th Street stopped when they saw that line of police officers. Essig Dep. pp. 110:2-15; 121:22-24. Defendants' only citations are to paragraphs 43-44 and 46-50 of their Rule 56.1 statement; these paragraphs do not address the facts asserted in plaintiffs' paragraph 357 and defendants provide no explanation of how any of these paragraphs create a disputed issue. Additionally defendants' cited paragraphs are unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

360. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. The facts asserted in plaintiffs' paragraph 360 are supported by the testimony at Essig Dep. pp. 154:13-155:17; 162:4-7 ("once we had the block frozen, the people who were on the block who didn't offer--who were on the block, in the street, demonstrating, they were going to be arrested"); 295: 19-25 ("Q. At that point, setting aside people who were in the discretion of police officers or supervisors allowed to leave, setting aside that group of people, everyone else between those two lines was to be arrested? A. Yes); 307:10-308:17 ("Once we had our lines established, people inside were going to be arrested..."); 489:8-11 ("At some point...the block was sealed, and everybody in that area was going to be arrested); 755:2-4. Defendants' only citations are to paragraphs 43-44 and 46-50 of their Rule 56.1 statement; the vague assertions in these paragraphs do not controvert the facts asserted in plaintiffs' paragraph 360 and defendants provide no explanation of how any of these paragraphs create a disputed issue. Additionally defendants' cited paragraphs are unsupported by the evidence, as outlined in detail in Plaintiffs' Counterstatement. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

363. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 19, 29, 31, 38, 54-55 and 57 of their Rule 56.1 statement. These paragraphs, which are at least partially unsupported by the evidence as outlined in Plaintiffs' Counterstatement, make vague assertions about the actions of a "group" or the "16th Street parade," and make no mention of the conduct of any particular individual. The paragraphs therefore do not controvert the facts asserted in plaintiffs' paragraph 363, and defendants provide no explanation of how any of these paragraphs create a disputed issue. As

defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

### Defendant Gerald Dieckmann

370. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 32-33 of their Rule 56.1 statement. Defendants' cited paragraphs are completely consistent with the facts asserted in plaintiffs' paragraph 370, and defendants provide no explanation of how either of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

371. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 32-33 of their Rule 56.1 statement. Defendants' cited paragraphs are completely consistent with the facts asserted in plaintiffs' paragraph 371, and defendants provide no explanation of how either of these paragraphs create a disputed issue. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

372. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 33-34 of their Rule 56.1 statement. These paragraphs are unsupported by the evidence as outlined in Plaintiffs' Counterstatement. Additionally, the sweeping assertions in these paragraphs regarding "participants in the 16th Street parade" do not controvert the facts asserted in plaintiffs' paragraph 372. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

373. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. The facts as asserted by plaintiffs are plainly supported by the testimony at

Dieckmann Dep. pp. 91:3-92:8. Defendants' only citations are to paragraphs 51, 54-55 and 57 of their Rule 56.1 statement. Defendants' cited paragraphs are completely consistent with the facts asserted in plaintiffs' paragraph 373, and defendants provide no explanation of how any of these paragraphs create a disputed issue. In addition the Defendants' cited paragraphs are unsupported by the evidence as outlined in Plaintiffs' Counterstatement. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

375. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 29 and 39-40 of their Rule 56.1 statement. The vague assertions in defendants' paragraphs 29, 39 and 40 do not specifically address whether Dieckmann saw civilian vehicular traffic at the corner of 16th Street and Union Square East, and defendants provide no explanation of how any of these paragraphs create a disputed issue. In addition the Defendants' cited paragraphs are unsupported by the evidence as outlined in Plaintiffs' Counterstatement. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

376. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 39 and 51 of their Rule 56.1 statement. The vague assertions in defendants' paragraphs 39 and 51 do not address the subject matter of the facts asserted by plaintiffs in paragraph 376 and do not controvert any of plaintiffs' facts; defendants provide no explanation of how either of these paragraphs might create a disputed issue. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

377. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 43-44 and 47-48 of their Rule 56.1

statement. Defendants' cited paragraphs are unsupported by the evidence as outlined in Plaintiffs' Counterstatement. In addition, the vague assertions in defendants' paragraphs 43-44 and 47-48 do not specifically controvert the facts asserted in plaintiffs' paragraph 377, and defendants provide no explanation of how any of these paragraphs supposedly create a disputed issue. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

378. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. Defendants' only citations are to paragraphs 43-44 and 46-50 of their Rule 56.1 statement. Defendants' cited paragraphs are unsupported by the evidence as outlined in Plaintiffs' Counterstatement. Moreover, the vague assertions in defendants' cited paragraphs do not address whether or when Dieckmann knew that people were going to be arrested or the content of Dieckmann's alleged conversation with Essig; defendants' cited paragraphs therefore do not controvert any of plaintiffs' facts, and defendants provide no explanation of how either of these paragraphs supposedly create a disputed issue. As defendants have failed to specifically controvert the facts asserted these fact should be deemed admitted.

380. As defendants do not dispute that at some point the entire block of East 16th Street between Union Square East and Irving Place was closed off by police, that fact should be deemed admitted. Defendants assert that the remaining facts asserted are disputed but cite no evidence that creates a disputed issue. The facts in plaintiffs' paragraph 380 are plainly supported by the testimony at Dieckmann Dep. p. 155:8-16. It is undisputed that at some point, Essig closed off East 16th Street between Union Square East and Irving Place with police lines, and arrested everyone between those police lines. *See* paragraph 346, *supra*. Defendants' only citations are to paragraphs 51, and 54-57 of their Rule 56.1 Statement; these paragraphs are

misleading and not supported by the evidence, as outlined in Plaintiffs' Counterstatement. In addition, none of defendants' cited paragraphs speak to Dieckmann's intentions regarding arrests once the block was closed off; they therefore do not controvert the facts asserted in plaintiffs' paragraph 380. As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted

382. Defendants assert that these facts are disputed but cite no evidence that creates a disputed issue. The sources cited by defendants do not controvert the facts asserted in any way; *See* responses to defendants' paragraphs 57 and 342, *supra* (addressing the same citations by defendants). As defendants have failed to specifically controvert the facts asserted these facts should be deemed admitted.

Dated:        November 23, 2011
              New York, NY

                          Respectfully submitted,

                          JONATHAN C. MOORE, Esq.
                          GIDEON ORION OLIVER, Esq.
                          ELIZABETH LOGEMANN, Esq.

                          Beldock Levine & Hoffman, LLP
                          99 Park Avenue - 16th Floor
                          New York, New York    10016
                          (212) 277-5850

                          *Counsel for the Plaintiff Class in MacNamara*